REDACTED VERSION

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAP, INC. | : CASE NO. 303CV350(MRK) |
| | : |
| VS. | : |
| | : |
| RITZ REALTY CORP. and | : |
| AVALONBAY COMMUNITIES, INC. | : FEBRUARY 1, 2005 |

## DEFENDANT AVALONBAY COMMUNITIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.   INTRODUCTION**

Defendant AvalonBay Communities, Inc. ("AvalonBay") respectfully submits this Memorandum of Law in support of its Motion for Partial Summary Judgment. As more fully set forth below, AvalonBay is entitled to partial summary judgment denying Plaintiff's request for injunctive relief and specific performance because there is no genuine issue of material fact that the Plaintiff will not suffer any irreparable harm from the development that it seeks to enjoin. Plaintiff operates over 3,500 retail auto parts stores, and the store at issue constitutes a negligible portion of Plaintiff's business. Any commercial losses that Plaintiff claims it will suffer if the development proceeds cannot possibly threaten its business viability. Moreover, if the development were in fact to cause Plaintiff damages, Plaintiff should be able to calculate such damages with reasonable precision, thereby providing it with an adequate remedy at law. Accordingly, AvalonBay is entitled to judgment as a matter of law denying Plaintiff's claims for injunctive relief and specific performance in Paragraphs a, b, and c of the Prayer for Relief.

## II. FACTS

Plaintiff ADAP, Inc. ("ADAP") (n/k/a AutoZone Northeast, Inc. and d/b/a AutoZone), a subsidiary wholly owned and controlled by AutoZone, Inc. ("AutoZone"), considers itself the nation's leading specialty retailer of automotive parts and accessories. (Local Rule 56(a)(1) Statement ¶ 2; AutoZone Form 10-K, filed October 27, 2004 ("10/27/04 10-K") at 5.) As of November 20, 2004, AutoZone owned and operated 3,448 retail stores in the United States and an additional 64 stores in Mexico. (Local Rule 56(a)(1) Statement ¶ 3; AutoZone Form 10-Q, filed December 20, 2004 ("12/20/04 10-Q") at 11.) AutoZone has 27 stores in Connecticut alone. (Local Rule 56(a)(1) Statement ¶ 4; 10/27/2004 10-K at 5.) AutoZone is a multi-billion dollar enterprise with net sales for its fiscal year ending August 2004 totaling $5,637,025,000, an operating profit of $998,706,706 and an after-tax net income of $566,202,000. (Local Rule 56(a)(1) Statement ¶ 5; 10/27/04 10-K at 18.) In its most recent financial quarter ending November 20, 2004, AutoZone achieved net sales of $1,286,203,000, an operating profit of $216,313,000, and an after-tax net income of $122,523,000. (Local Rule 56(a)(1) Statement ¶ 6; 12/20/04 10-Q at 3.)

On February 17, 1998, AutoZone acquired ADAP, which was doing business in six northeastern states as Auto Palace, an automotive parts and accessories chain. (Local Rule 56(a)(1) Statement ¶ 6; AutoZone Form 10-Q, filed March 31, 1998 at Note E.) Upon its acquisition of ADAP, AutoZone assumed control and operation of 112 Auto Palace stores. (Local Rule 56(a)(1) Statement ¶ 8; AutoZone's 1998 Annual Report at 3.) AutoZone took over the name and format of these stores. (Local Rule 56(a)(1) Statement ¶ 9; AutoZone Form 10-K,

filed November 25, 1998 at 11.)[1] One such store, located in Riverview Plaza at 24 Belden Avenue in Norwalk, Connecticut, is at the center of this action.

Ten months prior to its acquisition by AutoZone, ADAP had leased a portion of Riverview Plaza, consisting of approximately 5,680 square feet located at the southwest portion of Riverview Plaza (the "Leased Premises"), from Defendant Ritz Realty Corp. ("Ritz"). (Local Rule 56(a)(1) Statement ¶ 10; Rule 26(f) Report dated May 28, 2003, Statement of Undisputed Facts ("Rule 26(f) Report") at ¶¶ I, K.) The lease dated April 17, 1997 (the "Lease") contains an initial term of ten years, followed by two successive five year renewal terms. (Local Rule 56(a)(1) Statement ¶ 11; Amended Complaint ("Am. Compl.") at ¶ 25.)

AutoZone has operated the Leased Premises as one of over 3,000 AutoZone stores since February 26, 1998. (Local Rule 56(a)(1) Statement ¶ 12; Email from John Newsom of AutoZone to several AutoZone employees, dated February 26, 1998.) In this litigation, AutoZone produced profit and sales figures for its Riverview Plaza location for fiscal years 2000 through 2004. (Local Rule 56(a)(1) Statement ¶ 13; Store 5156 Profit & Loss Summaries.)

**REDACTED**

..[2] (Local Rule 56(a)(1) Statement ¶ 14; Store 5156 Profit & Loss

---

[1] The entity ADAP is now known as AutoZone Northeast, Inc., a New Jersey corporation wholly-owned and controlled by AutoZone. (Local Rule 56(a)(1) Statement ¶ 1; 10/27/04 10-K at Ex. 21.1; Deposition testimony of James O. McClain, AutoZone's in-house counsel, given on August 26, 2003 at 6:14-19.) Copies of the pages of the McClain deposition transcript referenced in this memorandum are attached to the Local Rule 56(a)(1) Statement as Exhibit A.

[2]  . (Local Rule Statement ¶ 15; Deposition testimony of Alex Oliphant, given on September 30, 2004 (the "Oliphant Dep.") at 112:8-114:13.) Copies of the pages of the Oliphant deposition transcript referenced in this memorandum are attached to the Local Rule 56(a)(1) Statement as Exhibit L.

Summaries at 11; Oliphant Dep. at 92:24-93:1.)

**REDACTED**

(Id.)[3]

Riverview Plaza includes an office building, two retail buildings (one of which is currently vacant), and a building operated as an off-track betting facility. (Local Rule 56(a)(1) Statement ¶ 20; Am. Compl. at ¶¶ 8-10.) A surface parking lot is located on the portion of Riverview Plaza abutting Belden Avenue and Cross Street, and has entrances and exits to both of those roadways. (Local Rule 56(a)(1) Statement ¶ 21; Am. Compl. at ¶ 14.) Riverview Plaza also contains an underground parking garage with access to Burnell Boulevard. (Local Rule 56(a)(1) Statement ¶ 22; Am. Compl. at ¶¶ 15, 17.)

On or about October 17, 2001, AvalonBay contracted with Ritz to purchase part of the surface parking lot, as well as the vacant portion of Riverview Plaza formerly occupied by a Pathmark grocery store. (Local Rule 56(a)(1) Statement ¶ 23; Am. Compl. at ¶¶ 29-30.) On or about November 26, 2002, AvalonBay submitted a site plan application to the Norwalk Zoning Commission (the "Development Plan"). (Local Rule 56(a)(1) Statement ¶ 24; Rule 26(f) Report at ¶ N.) The Development Plan calls for the construction of two multi-story buildings, one over a portion of the surface parking lot and the other over the vacant retail building. (Local Rule

---

[3] **REDACTED**

. (Local Rule 56(a)(1) Statement ¶¶ 16-19; Store 5156 Profit & Loss Summaries at 1, 3, 5, 7; Oliphant Dep. at 75:13-76:14, 88:1-11, 89:7-14, 91:2-92:4, 112:8-114:13.)

56(a)(1) Statement ¶ 25; Am. Compl. at ¶ 32.) The project will create 312 residential apartment units, approximately 1,500 square feet of retail space and parking areas. (Local Rule 56(a)(1) Statement ¶ 26; Rule 26(f) Report at ¶ VII.O.)

On February 26, 2003, the Norwalk Zoning Commission approved AvalonBay's application. (Local Rule 56(a)(1) Statement ¶ 27; Rule 26(f) Report at ¶ VII.R.) AutoZone appeared before the Zoning Commission and objected to the application. (Local Rule 56(a)(1) Statement ¶ 28; Rule 26(f) Report at ¶ VII.Q.) AutoZone did not appeal the Zoning Commission's approval to the Connecticut Superior Court. (Local Rule 56(a)(1) Statement ¶ 29; Rule 26(f) Report at ¶ VII.S.) AutoZone commenced the instant litigation by Complaint dated February 26, 2003, in which AutoZone alleged that consummation of the Development Plan would breach the Lease and adversely impact its business at Riverview Plaza. (Local Rule 56(a)(1) Statement ¶ 30; Complaint ("Compl.").) AutoZone's Complaint alleged anticipatory breach of contract, breach of contract, and breach of the covenant of good faith and fair dealing against Ritz, and tortious interference with contract against AvalonBay. (Local Rule 56(a)(1) Statement ¶ 31; Compl. at ¶¶ 45-50.) AutoZone sought injunctive relief and money damages. (Local Rule 56(a)(1) Statement ¶ 32; Compl. at 11.) AutoZone applied for a temporary injunction, which this Court denied without prejudice on December 1, 2003. (Local Rule 56(a)(1) Statement ¶ 33; 12/1/2003 Order at ¶ 1.) AutoZone has not pursued its claim for a temporary injunction. (Local Rule 56(a)(1) Statement ¶ 34.) On July 15, 2004, AutoZone served on the Defendants a Damage Analysis in which it claimed money damages of $850,000. (Local Rule 56(a)(1) Statement ¶ 35; Plaintiff's Damages Analysis.) Subsequently, AutoZone withdrew its Damage Analysis on October 8, 2004 (Local Rule 56(a)(1) Statement ¶ 36; Plaintiff's Withdrawal of Damages Analysis.)

On November 2, 2004, AutoZone filed its Amended Complaint. The Amended Complaint alleges anticipatory breach of contract and breach of contract against both Ritz and AvalonBay, and breach of the covenant of good faith and fair dealing against Ritz. (Local Rule 56(a)(1) Statement ¶ 38; Am. Compl. at ¶¶ 43-45.) AutoZone dropped from the Amended Complaint its claim for money damages. (Local Rule 56(a)(1) Statement ¶ 39.) AutoZone alleges that it lacks an adequate remedy at law because, if the Development Plan proceeds, it will suffer irreparable harm from loss of convenient parking, loss of access from common areas, loss of visibility, business interruption and disruption during construction and inability to load and unload deliveries of goods, particularly during construction. (Local Rule 56(a)(1) Statement ¶ 40; Am. Compl. at ¶ 41.) AutoZone seeks a decree directing Ritz and AvalonBay (to the extent that AvalonBay has or does acquire an interest in the real property described in the Lease) to specifically perform the Lease, a temporary restraining order preventing the Defendants from violating the Lease or taking any action to violate the Lease, a temporary and permanent injunction preventing the Defendants from violating the Lease or taking any action to violate the Lease, and a declaratory judgment that the Development Plan violates the Lease. (Local Rule 56(a)(1) Statement ¶ 41; Am. Compl. at Prayer for Relief ¶¶ a-d.) AutoZone also seeks legal costs as provided for under the Lease. (Local Rule 56(a)(1) Statement ¶ 42; Am. Compl. at Prayer for Relief ¶ e.)



(Local Rule 56(a)(1) Statement ¶ 43; Oliphant Dep. at 14:12-17:6, 208:3-16.)



(Local Rule 56(a)(1) Statement ¶ 44; Oliphant Dep. at 189:8-21).



(Local Rule 56(a)(1) Statement ¶45; Deposition testimony of William Gilmore given on October 29, 2003 at 99:9-20.)[4] Terry McKee, AutoZone's Director of Real Estate, testified that it was his "assumption" that there would be significant business interruption and disruption during construction. (Local Rule Statement ¶ 46; Deposition testimony of Terry McKee, given on September 3, 2003 at p. 218: 1-20).[5]



(Local Rule 56(a)(1) Statement ¶ 47; Oliphant Dep. at 185:10-21.)

(Local Rule 56(a)(1) Statement ¶ 48; Oliphant Dep. at 185:2-186:25.)

(Local Rule 56(a)(1) Statement ¶ 49; Oliphant Dep. at 204:9-205:3.)

---

[4] Copies of the pages of the Gilmore deposition transcript referenced in this memorandum are attached to the Local Rule 56(a)(1) statement as Ex. Q.

[5] Copies of the pages of the McKee deposition transcript referenced in this memorandum are attached to the Local Rule 56(a)(1) statement as Ex. R.

 (Local Rule 56(a)(1) Statement ¶ 50; Oliphant Dep. at 85:12-86:23, 237:14-238:19.)

In short, AutoZone projects and monitors store performance closely, and any loss of sales volume occurring during or after construction of the proposed development would be detected promptly.

**REDACTED**

Q.

**REDACTED**

A.

(Local Rule 56(a)(1) Statement ¶ 51; Oliphant Dep. at 188:4-189:2.)

### III.   ARGUMENT

#### A.   Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).

"Once the moving party has met its burden, in order to defeat the motion the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial'". <u>Munck v.

New Haven Sav. Bank, 251 F. Supp. 2d 1078, 1081 (D. Conn. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)) "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. (internal quotations and citations omitted). "Additionally, a party may not rest on the 'mere allegations or denials' contained in his pleadings", Id. (quoting Goenaga, 51 F.3d at 18), or rely on conclusory statements in an effort to defeat summary judgment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

### B.    Requirements for Injunctive Relief

Injunctive relief is an extraordinary remedy. Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 85 (2d Cir. 2004). "It is well-established that 'to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" Doe v. Bridgeport Police Dep't, 198 F.R.D. 325, 334 (D. Conn. 2001) (quoting N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989)). In order to obtain a permanent injunction, the plaintiff must establish three elements: (1) that, absent injunctive relief, it will suffer irreparable harm; (2) it has no adequate remedy at law; and (3) actual success on the merits. Doe, 198 F.R.D. at 335; see also AvalonBay Cmtys., Inc. v. Orange, 256 Conn. 557, 566, 775 A.2d 284 (2001) ("A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law."). "Thus, the standard for a permanent injunction is essentially the same as for a preliminary injunction, except that the plaintiff must actually succeed on the merits." Dodge v. County of Orange, 282 F. Supp. 2d 41, 71 (S.D.N.Y. 2003) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987)).

To the extent that AutoZone attempts to frame its request for injunctive relief as specific performance, it must still establish irreparable harm in order to prevail. Federal courts look to state law to determine whether the relief of specific performance is available for breach of contract. See New Pac. Overseas Group (USA), Inc. v. Excal Int'l Dev. Corp., No. 99 Civ. 2436 (DLC), 1999 U.S. Dist. LEXIS 6386, at *11-12 (S.D.N.Y. May 5, 1999); Heathcote Assocs. v. Chittenden Trust Co., 958 F. Supp. 182 185-86 (D. Vt. 1997). Under Connecticut law, "specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract." Gager v. Gager & Peterson, LLP, 76 Conn. App. 552, 560, 820 A.2d 1063 (2003). Accordingly, "specific relief will be denied when…the legal remedy is regarded as adequate or the plaintiff is not subjected to irreparable harm by breach." Marquardt & Roche/Meditz & Hackett, Inc. v. Riverbend Exec. Ctr., Inc., 74 Conn. App. 412, 421 n.2, 812 A.2d 175 (2003). Thus, whether AutoZone chooses to label its requested relief as injunctive relief, or specific performance, the analysis, and the result, are the same.

> **C. AvalonBay Is Entitled to Partial Summary Judgment Denying AutoZone's Claims for Injunctive Relief and Specific Performance Because Any Harm AutoZone May Suffer Will Not Be Irreparable and AutoZone Has an Adequate Remedy at Law**
>
> > **1. AutoZone Cannot Establish that the Development Plan Poses a Threat to AutoZone's Business Viability**

An injunction generally is not appropriate to enforce a commercial contract, because money damages nearly always serve to provide the commercial party with an adequate remedy at law. See, e.g., Register.com, Inc. v. Verio, Inc. 356 F.3d 393, 404 (2d Cir. 2004) ("specific relief is not the conventional remedy for breach of contract"); United Retail Inc. v. Main St. Mall Corp., 903 F. Supp. 12, 14 (S.D.N.Y. 1995) ("In the contract setting, injunctive relief is the exception and not the rule…This is so because the injury must be one requiring a remedy of more than mere money damages."); USA Network v. Jones Intercable, Inc., 704 F. Supp. 488,

491 (S.D.N.Y. 1989) ("In the contract setting, injunctive relief, both interlocutory and final, is the exception and not the rule.").[6]

Indeed, the Second Circuit has found irreparable harm arising from breach of a commercial agreement only in the most exceptional circumstances. Irreparable harm has been found to support an injunction in the contract setting when the very existence of a business is jeopardized by the breach. See Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1185-86 (2d Cir. 1995) (in order to obtain injunctive relief for breach of contract, plaintiffs must establish that lost profits resulting from breach "are of such magnitude as to threaten the viability of their businesses."); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970) (loss of right to continue business may support claim of irreparable injury where "the right to continue a business in which [plaintiff] had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms."); USA Network, 704 F. Supp. at 491 (injunctive relief may be warranted in the contract setting if the breach, left unrestrained, threatens the destruction or catastrophic impairment of an entire business) (citing John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 28-29 (2d Cir. 1978)).

The threat must be to the *entire* business; impairment of only a portion of the plaintiff's business is not enough to permit an injunction. See Norcom Elecs. Corp. v. CIM USA Inc., 104 F. Supp. 2d 198, 209 (S.D.N.Y. 2000) (citing Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37-38 (2d Cir. 1995)); New Pac. Overseas Group (USA), Inc. v. Excal Int'l Dev. Corp., No. 99 Civ. 2436 (DLC), 1999 U.S. Dist. LEXIS 6386, at *18 (S.D.N.Y. May 5, 1999).

---

[6] Under Connecticut law, a lease is a contract and treated as so. See Cent. New Haven Dev. Corp. v. La Crepe, Inc., 177 Conn. 212, 214-15, 413 A.2d 840 (1979).

Here, the prospective harms alleged by AutoZone are wholly speculative and supported by no more than conclusory statements and assumed worst-case scenarios. AutoZone has not performed any meaningful investigation or analysis of the potential impacts of the Development Plan on its Norwalk store.

**REDACTED**

"[Injunctive relief] should issue not upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent irreparable injury." USA Network, 704 F. Supp. at 491 (citing State of N.Y. v. Nuclear Reg. Comm'n, 550 F.2d 745 (2d Cir. 1977)). "Conclusory statements of loss represent an insufficient basis for a finding of irreparable harm." Litho Prestige v. News Am. Publ'g, Inc., 652 F. Supp. 804, 809 (S.D.N.Y. 1986). On this complete failure of proof alone, the Court is warranted in granting partial summary judgment in favor of AvalonBay denying AutoZone's request for injunctive relief and specific performance.

Moreover, assuming arguendo that if AutoZone had produced unassailable evidence that the Development Plan would so substantially disrupt the business operations of its Norwalk store that it would have to close its doors, AutoZone still could not show an entitlement to injunctive relief. AutoZone's business extends far beyond its Norwalk store. AutoZone currently consists of approximately 3,500 retail stores located throughout North America. The possibility that AutoZone's business will be disrupted at **one** of these corporate-owned stores, or even that the store might close, does not threaten AutoZone's business viability.

AutoZone alleges in the Amended Complaint that it lacks an adequate remedy at law because, if the Development Plan proceeds, it will suffer irreparable harm from loss of convenient parking, loss of access from common areas, loss of visibility, business interruption and disruption during construction and inability to load and unload deliveries of goods, particularly during construction. These claims are legally irrelevant, however. AutoZone is a public company which exists to maximize profit for its shareholders. Money damages would be adequate to redress AutoZone for any *commercial loss* caused by the improvements planned at Riverview Plaza. Accordingly, AutoZone cannot establish that it will be irreparably harmed by the Development Plan.

District courts within this Circuit have addressed strikingly similar claims for irreparable harm in two cases involving corporate chain retailers seeking injunctions pursuant to their commercial leases. In United Retail, Inc. v. Main Street Mall Corp., the defendant landlord operated a retail shopping mall in New Rochelle, New York. 903 F. Supp. 12, 13 (S.D.N.Y. 1995). The plaintiff tenant operated approximately 600 retail stores throughout the United States, one of which was located at the New Rochelle mall. Id. The landlord announced plans to redevelop the mall and informed the tenant that services to the mall would be "discontinued" and "closed to the public" during construction. Id. The tenant demanded that the landlord comply with the lease and sought injunctive relief to stop the development project. Id. The district court (B. Parker, J.) denied the injunction principally because the tenant's store at the New Rochelle mall was just one of 600 stores that the tenant operated throughout the country. Id. at 14. As a result, there was no threat that the landlord's act of developing the property would "wipe out [the plaintiff's] entire operation". Id. An award of damages was an adequate remedy in United Retail because, as is the case with AutoZone, the tenant could not show that any pecuniary loss

that would result from the development would, for example, jeopardize its solvency or require substantial changes in its company-wide operations. Id.

Similarly, the district court in Optivision, Inc. v. Syracuse Shopping Center Associates, held that a national chain retailer could not establish irreparable harm because money damages could adequately redress any loss caused by the alleged breach of the retail tenant's lease. 472 F. Supp. 665, 685-86 (N.D.N.Y. 1979). Optivision sold optical goods at stores located throughout New York and Georgia, and affiliated stores in Maryland and Washington, D.C. Id. at 673. Optivision had a five-year lease, with an option to extend the term for an additional five years, for retail space at the Northern Lights Shopping Center near Syracuse. Id. at 670. The landlord leased a different retail unit at the Shopping Center to one of Optivision's competitors, and granted the competitor the right to be the exclusive optical retailer at the Shopping Center. Id. Pursuant to the competing store's exclusivity clause, the landlord sought to remove Optivision from the Shopping Center location. Id. Optivision asserted that it had exercised its renewal option and sought to enjoin the landlord from removing it from the premises. Id. The Court ruled that even if Optivision were correct that the landlord's actions would violate its lease, Optivision could not demonstrate irreparable harm because there was no evidence that the landlord's actions would drive Optivision out of business. Id. at 685-86. Because Optivision operated a number of other retail outlets, the continued operation of Optivision as a business was not threatened. Id.

United Retail and Optivision are consistent with decisions from other courts within the Second Circuit refusing to find irreparable harm in circumstances where the harm arising from a prospective breach of contract pertains to one, relatively discrete business activity of a larger entity. In Litho Prestige v. News America Publishing, Inc., for example, the plaintiff was a

commercial printer with total revenues of $179 million (Canadian) annually. 652 F. Supp. 804, 807 (S.D.N.Y. 1986). Under the contract at issue, the plaintiff printed a popular magazine for $6.5 million (Canadian) annually, representing less than 4% of its total revenues. Id.[7] Upon the magazine publisher's purported termination of the contract, the plaintiff sought injunctive relief, alleging that losing the business it had with the defendant would result in irreparable harm. Id. at 807-08. The Court held, however, that the plaintiff could not establish irreparable harm because there was no serious contention that the loss of 4% of its business would threaten the ability of the plaintiff to continue in business or even seriously cripple plaintiff. Id; Cf. Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1105 (S.D.N.Y. 1989) (irreparable injury established where plaintiff demonstrated that it would not be able to continue as a going concern if contract representing 90-95% of its business was terminated).

Likewise, in USA Network v. Jones Intercable, Inc., the plaintiff, a cable network reaching approximately 45 million cable subscribers nationwide, sued to enjoin a cable system operator from terminating a contract to provide the plaintiff's cable network to 830,000 subscribers in 21 states. 704 F. Supp. 488, 489-90 (S.D.N.Y. 1989). The Court found that the plaintiff had failed to establish irreparable harm because there could be no serious contention that the termination of the plaintiff's network from the defendant's systems, which serviced less than 2% of the plaintiff's viewers, would devastate or threaten the very existence of plaintiff's business. Id. at 491-92. Although defendant's termination caused a substantial disruption in the

---

[7] Litho Prestige, which was the party to the contract and the named plaintiff, was a division of Unimedia Group, Inc. Because Unimedia was seeking the injunction on Litho Prestige's behalf, the Court in Litho Prestige compared the impact of the contract breach to the extent of Unimedia's business. Id. at 805, 807.

plaintiff's business, the Court nonetheless ruled that the breach could not justify an injunction because it did not threaten the "destruction or catastrophic impairment of an ongoing business" so as to qualify as an exceptional circumstance warranting injunctive relief in enforcing the terms of a contract. Id. at 491 (citing John B. Hull, 588 F.2d at 28-29). "Mere disruptions in business, however, though perhaps substantial, do not fall within this exception." Id.; see also Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 763 (2d Cir. 1979) (no irreparable harm where piano manufacturer attempted to terminate its dealership contract with a retail seller that sold many brands of musical instruments); C-B Kenworth, Inc. v. Gen. Motors Corp., 675 F. Supp. 686, 687-88 (D. Me. 1987) (no irreparable harm where GMC truck sales accounted for less than five percent of total gross profits, because termination would not threaten its ability to continue in business).

In short, the well-established principle that irreparable harm does not result from breach of a commercial contract unless the breach seriously threatens plaintiff's business viability applies squarely to this case. There simply is no scenario in which the Development Plan could threaten the viability of AutoZone's 3,500 store $5.5 billion operation. Therefore, as a matter of law, AutoZone cannot prove irreparable harm and is not entitled to injunctive relief.

2. **Any Loss Resulting from the Development Plan Could Be Readily Calculated and Redressed by Money Damages**

"The ability to compute monetary damages establishes that the harm which plaintiff would suffer is not irreparable in nature." Optivision, 472 F. Supp. at 685.



[REDACTED] Thus, if the Development Plan impacts AutoZone's sales to any degree, the amount of damages required to remedy AutoZone's losses will be readily identifiable, rendering AutoZone's legal remedy wholly adequate. See USA Network, 704 F. Supp. at 492-93 ("[A]n informed, perhaps rough, approximation of damages does not render the legal remedy inadequate. It is only where damages are clearly difficult to assess and measure that equitable relief is appropriate.") (internal quotation marks and citation omitted) (emphasis in original).

In Optivision, for example, Optivision's chairman testified that he was able to predict the approximate annual dollar volume of sales that Optivision would expect to receive under the conditions then prevailing at the Northern Lights Shopping Center. 472 F. Supp. at 685. As a consequence, it was possible to determine, with a reasonable degree of certainty, the damages Optivision would suffer if its lease was breached. Id.; see also Kmart Corp. v. First Hartford Realty Corp., 810 F. Supp. 1316, 1331 (D. Conn. 1993) (retailer seeking specific performance injunction had an adequate remedy at law by way of a claim for dollar damages for breach of lease because the value of its injury was capable of being quantified in dollars and enough information existed to determine damages); Cranbrook Ice Cream, Inc. v. Frusen Gladje Franchise, Inc., No. 88 CV 1829, 1988 U.S. Dist. LEXIS 7491, at *5 (E.D.N.Y. July 11, 1988) (irreparable harm not established because lost sales may be computed by reference to movant's previous sales performance); Safeway, Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439, 470 (E.D. Va. 2003) (damages ascertainable in case where retailer claimed that landlord's elimination of surface parking would adversely impact store sales or cause closing of store, because there was an abundance of sales and profit data available for the store, which provided

an excellent baseline from which it was possible to calculate actual damages). Based on Mr. Oliphant's testimony, AutoZone should be capable of calculating any damages resulting from the Development Plan with reasonable precision. See, e.g., Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992) ("In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. He need not prove the amount of loss with mathematical precision".). Consequently, AutoZone has an adequate remedy at law.

## IV.   CONCLUSION

For all of the foregoing reasons, AvalonBay respectfully requests that the Court grant its Motion for Partial Summary Judgment.

DEFENDANT,
AVALONBAY COMMUNITIES, INC.

By_____
Joseph L. Hammer (ct00446)
David M. Bizar (ct20444)
Day, Berry & Howard LLP
CityPlace I
Hartford, CT  06103-3499
Tel:  (860) 275-0100
Fax:  (860) 275-0343
E-mail: jlhammer@dbh.com
          dmbizar@dbh.com

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was sent this 1st day of February, 2005, via first class mail, postage prepaid to:

Bruce L. Elstein, Esq.
Elstein & Elstein
1087 Broad Street
Bridgeport, CT  06604-4294
Phone: (203) 367-4421
Fax:    (203) 366-8615


Andrew L. Houlding, Esq.
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT  06103-3101
Phone: (860) 493-3468
Fax:    (860) 724-3921

_____
Joseph L. Hammer