REDACTED VERSION

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAP, INC. | : CASE NO. 303CV350(MRK) |
| | : |
| | : |
| VS. | : |
| | : |
| RITZ REALTY CORP. and | : |
| AVALONBAY COMMUNITIES, INC. | : FEBRUARY 1, 2005 |

### DEFENDANT AVALONBAY COMMUNITIES, INC.'S
### LOCAL RULE 56(a)(1) STATEMENT

In support of its Motion for Partial Summary Judgment and pursuant to Rule 56(a)(1) of the Local Civil Rules of the United States District Court for the District of Connecticut, Defendant AvalonBay Communities, Inc. ("AvalonBay") respectfully submits this statement of material facts as to which AvalonBay contends there is no genuine issue to be tried:

1. Plaintiff ADAP, Inc. (n/k/a AutoZone Northeast, Inc. and d/b/a AutoZone) is a wholly owned and controlled subsidiary of AutoZone, Inc. ("AutoZone"). (Deposition testimony of James O. McClain, AutoZone's inside counsel, given on August 26, 2003, at 6:14-19; AutoZone's Form 10-K, filed October 27, 2004 ("10/27/04 10-K") at Ex. 21.1.) Copies of the pages of the McClain deposition transcript referenced in this statement are attached hereto as Exhibit A. A copy of AutoZone's 10/27/04 10-K is attached hereto as Exhibit B.

2. AutoZone regards itself as the nation's leading specialty retailer of automotive parts and accessories. See Ex. B. (10/27/04 10-K) at 5.

3. As of November 20, 2004, AutoZone operated 3,448 retail stores in the United States and 64 additional stores in Mexico. (AutoZone's Form 10-Q dated December 20, 2004 ("12/20/04 10-Q") at 11.) A copy of AutoZone's 12/20/04 10-Q is attached hereto as Exhibit C.

4. AutoZone has 27 stores in Connecticut. See Ex. B. (10/27/04 10-K) at 5.

5.  For its fiscal year ending 2004, AutoZone had net sales of $5,637,025,000, an operating profit of $988,706,706, and an after-tax net income of $566,202,000. (AutoZone's 2004 Annual Report, filed October 28, 2004 at 18.) A copy of AutoZone's 2004 Annual Report is attached hereto as Exhibit D.

6.  For its most recent financial quarter, ending November 20, 2004, AutoZone had net sales of $1,286,203,000, an operating profit of $216,313,000, and an after-tax net income of $122,523,000. See Ex. C. (12/20/04 10-Q) at p. 3.

7.  On February 17, 1998, AutoZone acquired ADAP, which was doing business in six northeastern states as Auto Palace, an automotive parts and accessories chain. (AutoZone's Form 10-Q dated March 31, 1998 ("3/31/98 10-Q") at Note E.) A copy of AutoZone's 3/31/98 10-Q is attached hereto as Exhibit E.

8.  Upon the closing of its acquisition of ADAP, AutoZone assumed control and operation of 112 Auto Palace stores. (AutoZone's 1998 Annual Report, filed November 2, 1998 at 3.) A copy of AutoZone's 1998 Annual Report is attached hereto as Exhibit F.

9.  AutoZone took over the name and format of all of ADAP's Auto Palace stores. (AutoZone's Form 10-K dated November 25, 1998 ("11/25/98 10-K") at 11.) A copy of AutoZone's certified 11/25/98 10-K is attached hereto as Exhibit G.

10. On or about April 17, 1997, ADAP and Ritz entered into a written lease ("Lease") pursuant to which ADAP leased a portion of Riverview Plaza, consisting of approximately 5,680 square feet located at the southwest portion of the property (the "Leased Premises"). (Rule 26(f) Report dated May 28, 2003, Statement of Undisputed Facts at ¶¶ I, K) A copy of the Rule 26(f) Report is attached hereto as Exhibit H.

11. The Lease contains an initial term of ten years, followed by two successive renewal terms each of five years. (AutoZone's Amended Complaint ("Am. Compl.") at ¶ 25.) A copy of AutoZone's Amended Complaint is attached hereto as Exhibit I.

12. Since February 26, 1998, AutoZone has operated the Leased Premises as an AutoZone store. (Email from John Newsom of AutoZone to several AutoZone employees, dated February 26, 1998, informing addressees that ADAP's Auto Palace store at Riverview Plaza had been converted to an Auto Palace store.) A copy of the February 26, 1998 email is attached hereto as Exhibit J.

13. In this litigation, AutoZone has produced profit and sales figures for its Riverview Plaza location for fiscal years 2000 through 2004. (AutoZone's profit and loss summaries for Store 5156 for fiscal years 2000 through 2004 ("Store 5156 Profit & Loss Summaries")). Copies of the Store 5156 Profit & Loss Summaries were marked as Exhibit 13 at the deposition of Alex Oliphant, AutoZone's Director of Research and Business Analysis, given on September 30, 2004 ("Oliphant Dep.") and are attached hereto as Exhibit K. Copies of the pages of the Oliphant deposition transcript referenced in this statement are attached hereto as Exhibit L.

14.

**REDACTED**

. See Ex. K (Store 5156 Profit & Loss Summaries) at 11; Ex. L (Oliphant Dep.) at 92:24-93:13.

15.

**REDACTED**

are then delivered to the customer's place of business. See Ex. L (Oliphant Dep.) at 112:8-114:13.

16. 

See Ex. K (Store 5156 Profit & Loss Summaries) at 7; Ex. L (Oliphant Dep.) at 91:2-92:4.

17. 

See Ex. K (Store 5156 Profit & Loss Summaries) at 5; Ex. L (Oliphant Dep.) at 89:7-14.

18. 

See Ex. K (Store 5156 Profit & Loss Summaries) at 3; Ex. L (Oliphant Dep.) at 88:1-11.

19. 

See Ex. K (Store 5156 Profit & Loss Summaries) at 1; Ex. L (Oliphant Dep.) at 75:13-76:14.

20. Riverview Plaza includes an office building, retail buildings (one of which is vacant), and a building operated as an off-track betting facility. See Ex. I (Am. Compl.) at ¶¶ 8-10.

21. A surface parking lot is located on the portion of Riverview Plaza abutting Belden Avenue and Cross Street and has entrances and exits to both of those roadways. Id. at ¶ 14.

22. There is an underground parking garage at Riverview Plaza, which has access to Burnell Boulevard. Id. at ¶¶ 15, 17.

23.  On October 17, 2001, AvalonBay contracted with Ritz to purchase part of the surface parking lot and the now vacant portion of Riverview Plaza, which was formerly occupied by a Pathmark grocery store. Id. at ¶¶ 29-30.

24.  On or about November 26, 2002, AvalonBay submitted a site plan application to the Norwalk Zoning Commission pertaining to Riverview Plaza (the "Development Plan"). See Ex. H (Rule 26(f) Report, Statement of Undisputed Facts) at ¶ N.

25.  The Development Plan calls for the construction of two-multi story buildings, one over a portion of the surface parking lot and the other over the vacant retail building. See Ex. I (Am. Compl.) at ¶ 32.

26.  The Development Plan will create 312 residential apartment units, approximately 1,500 square feet of retail space and parking areas. See Ex. H (Rule 26(f) Report, Statement of Undisputed Facts) at ¶ VII.O.

27.  On February 26, 2003, the Norwalk Zoning Commission approved AvalonBay's application. Id. at ¶ VII.R.

28.  AutoZone appeared before the Zoning Commission and objected to AvalonBay's application at the public hearing. Id. at ¶ VII.Q

29.  AutoZone did not appeal the Zoning Commission's approval to the Connecticut Superior Court. Id. at ¶ VII.S.

30.  AutoZone commenced the instant litigation by Complaint dated February 26, 2003, in which AutoZone alleged that consummation of the Development Plan would breach the Lease and adversely impact its business at Riverview Plaza. A copy of AutoZone's original Complaint is attached hereto as Exhibit M.

31. AutoZone's Complaint alleged anticipatory breach of contract, breach of contract, and breach of the covenant of good faith and fair dealing against Ritz, and tortious interference with contract against AvalonBay. See Ex. M (Compl.) at ¶ 45-50.

32. AutoZone's Complaint sought injunctive relief and money damages. Id. at 11.

33. AutoZone applied for a temporary injunction, which this Court denied without prejudice on December 1, 2003. A copy of the Court's December 1, 2003 Order denying AutoZone's application for a temporary injunction is attached hereto as Exhibit N.

34. Since December 1, 2003, AutoZone has not pursued its claim for a temporary injunction.

35. On July 15, 2004, AutoZone served on the Defendants a Damage Analysis in which it claimed money damages of $850,000. A copy of AutoZone's Damage Analysis is attached hereto as Exhibit O.

36. AutoZone subsequently withdrew its Damage Analysis on October 8, 2004. A copy of Plaintiff's withdrawal of its Damage Analysis is attached hereto as Exhibit P.

37. On November 2, 2004, AutoZone filed its Amended Complaint. See Ex. I (Am. Compl.).

38. AutoZone's Amended Complaint alleges anticipatory breach of contract and breach of contract against both Ritz and AvalonBay, and breach of the covenant of good faith and fair dealing against Ritz. Id. at ¶¶ 43-45.

39. AutoZone dropped from the Amended Complaint its claim for money damages.

40. In its Amended Complaint, AutoZone alleges that it lacks an adequate remedy at law because, if the Development Plan proceeds, it will suffer irreparable harm from loss of convenient parking, loss of access from common areas, loss of visibility, business interruption

and disruption during construction and inability to load and unload deliveries of goods, particularly during construction. Id. at ¶ 41.

41.  AutoZone seeks a decree directing Ritz (and AvalonBay to the extent that it has or does acquire an interest in the real property described in the Lease) to specifically perform the Lease, a temporary restraining order preventing the Defendants from violating the Lease or taking any action to violate the Lease, a temporary and permanent injunction preventing the Defendants from violating the Lease or taking any action to violate the Lease, and a declaratory judgment that the Development Plan violates the Lease. Id. at Prayer for Relief, ¶¶ a-d.

42.  AutoZone also seeks legal costs under the Lease. Id. at Prayer for Relief, ¶ e.

43.  During his deposition testimony as a Rule 30(b)(6) witness designated by AutoZone, Alex Oliphant, AutoZone's Director of Research and Business Analysis, testified that he was not aware of any investigation or analysis undertaken by AutoZone concerning the potential impacts of the proposed development on the Norwalk AutoZone store. See Ex. L (Oliphant Dep.) at 14:12-17:6, 208:3-16.

44.  Although Mr. Oliphant testified that he believes that there will be some impact on sales if the development proceeds, he conceded that this is an assumption and that "I don't have any facts at this time to back that up." Id. at 189:8-21.

45.  

(Deposition testimony of William Gilmore, given on October 29, 2003, at 99:9-20.) Copies of

the pages of the Gilmore deposition transcript referenced in this statement are attached hereto as Exhibit Q.

46.  Terry McKee, AutoZone's Director of Real Estate, testified that it was his "assumption" that there would be significant business disruption during construction. (Deposition testimony of Terry McKee, AutoZone's director of real estate, given on September 3, 2003, at 218:11-20.) Copies of the pages of the McKee deposition transcript referenced in this statement are attached hereto as Exhibit R.

47. 

. See Ex. L (Oliphant Depo.) at 185:10-21.

48. 

Id. at 185:22-186:25.

49. 

Id. at 204:9-205:3.

50.    Id. at 85:12-86:23, 237:14-238:19.

51.



Q.

[REDACTED]

A.

Id. at 188:4-189:2.

                       DEFENDANT,
                       AVALONBAY COMMUNITIES, INC.

By_____
    Joseph L. Hammer (ct00446)
    David M. Bizar (ct20444)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, CT  06103-3499
    Tel:  (860) 275-0100
    Fax:  (860) 275-0343
    E-mail: jlhammer@dbh.com
            dmbizar@dbh.com

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was sent this 1st day of February, 2005, via first class mail, postage prepaid to:

Bruce L. Elstein, Esq.
Elstein & Elstein
1087 Broad Street
Bridgeport, CT  06604-4294
Phone:  (203) 367-4421
Fax:      (203) 366-8615


Andrew L. Houlding, Esq.
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT  06103-3101
Phone: (860) 493-3468
Fax:     (860) 724-3921

_____
Joseph L. Hammer