UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADAP, INC. | : | CASE NO. 3:03 CV 350 (MRK) |
| VS. | : | |
| RITZ REALTY CORP. AND | : | |
| AVALON BAY COMMUNITIES, INC. | : | NOVEMBER 2, 2004 |

## AMENDED COMPLAINT ON CONSENT

### PARTIES

1. The plaintiff, AutoZone Northeast, Inc., formerly known as ADAP, INC. ("ADAP"), is a New Jersey corporation with a principal place of business located in Memphis, Tennessee.

2. The defendant, Ritz Realty Corp. ("Ritz"), is a Connecticut corporation with a principal place of business located in Norwalk, Connecticut.

3. The defendant, AvalonBay Communities, Inc. ("AvalonBay"), is a Maryland corporation with a principal place of business located in Alexandria, Virginia.

### JURISDICTION AND VENUE

4. The controversy involves primarily equitable relief the monetary value of which exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5. Venue is properly placed in the United States District Court of the District of Connecticut because it is the judicial district in which a substantial part of the events giving rise to the claim occurred.

1

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 by reason of diversity of citizenship and the monetary value of the claim underlying this controversy.

## THE ESSENTIAL UNDERLYING FACTS

**Riverview Plaza**

7. Ritz is the owner of that certain piece or parcel of real property known as "Riverview Plaza" located at located 24 Belden Avenue, Norwalk, Connecticut.

8. Riverview Plaza is a mixed retail and office complex consisting of four (4) buildings - two (2) retail buildings, a multi-story office tower and a stand-alone structure.

9. The first retail building, occupied by various tenants, is located immediately adjacent to Belden Avenue and contains approximately 28,894 square feet.

10. The second retail building is vacant and is located to the rear of the first retail building from Belden Avenue. It formerly housed a Pathmark grocery store.

11. The office tower contains approximately 42,162 square feet.

12. The fourth building contains an off-track betting parlor.

13. The retail buildings have immediately adjacent parking for its customers, employees and invitees in a large open lot.

14. Access to the retail buildings and the open parking lot is from entrances and exits on Cross Street and Belden Avenue.

15. Parking for the office tower and its tenants, employees and invitees is located primarily in an underground parking garage.

16. Parking for the off-track betting parlor is separate from the retail and office buildings.

17. Access to the underground parking garage and off-track betting parlor is from Burnell Boulevard.

**AutoZone Lease**

18. On or about April 17, 1997, ADAP and Ritz entered into a written lease ("Lease") for ADAP to exclusively occupy a portion Riverview Plaza consisting of approximately Five Thousand Six Hundred Eighty (5,680) Square Feet (the "Leased Premises").

19. ADAP operates AutoZone on the Leased Premises – a seller of automobile and light truck parts, chemicals and accessories.

20. The Leased Premises is located in an endcap location of the first retail building of Riverview Plaza - closest to the access way from Belden Avenue.

21. The AutoZone store has frontage along the open parking lot and Belden Avenue.

22. AutoZone has a large sign on the front of its store that is visible from the open parking lot, Cross Street and Belden Avenue.

3

23. Off street parking for the Leased Premises is located in two (2) locations: 1) The entrance driveway immediately adjacent to the Leased Premises; and 2) The open parking lot in front of the Leased Premises.

24. As a result, customers, employees and invitees of AutoZone enjoy easily accessible off street parking.

25. The lease provides ADAP, among other rights, use and occupancy of the Leased Premises for an initial term of ten (10) years commencing not later than October 1, 1997, followed by two (2) successive renewal terms each of five (5) years.

26. ADAP and Ritz agreed in Article 1 of the lease as follows:

> Landlord agrees that at all times during the term of this lease, adequate roadways and passageways shall be provided at the building for passage by motor vehicles and on foot between the leased premises, the parking areas and the public streets, and highways adjoining the building. Landlord further agrees that Exhibit A is a complete and accurate representation of the layout of the building, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements shown thereon, now completed or under construction or planned for [Riverview Plaza], as well as of the locations of the store enterprises noted thereon and that the layout thereof, as shown on Exhibit A will be adhered to in the development of [Riverview Plaza] and/or any subsequent expansion and/or alteration thereof so as to maintain the relative position of the buildings, the parking areas, the roadways and passageways, and the spaces of the tenants, all as shown on Exhibit A. Landlord agrees that there shall be no change whatever in the location, shape or dimensions of the premises hereby demised, and no substantial change in [Riverview Plaza] layout which would in any manner or to any degree adversely or materially affect the accessibility to the leased premises from the parking areas or the visibility of tenant's signs or storefront, without tenant's prior written consent in each instance, which consent shall not be unreasonably withheld. Landlord further agrees not to place any

4

free-standing buildings, kiosks, planters, trees, shrubs, stairs or other obstructions any place in front of the leased premises so as to affect the accessibility to or the visibility of the leased premises without first obtaining tenant's written consent, which consent shall not be unreasonably withheld or delayed.

27. ADAP and Ritz agreed in Article 14 of the lease as follows:

Landlord agrees throughout the term of this Lease to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition and properly lighted and cleaned. The aforesaid obligations of Landlord shall include maintaining and at all times having adequate means of ingress and egress to and from accepted highways and public streets ...

All of the aforesaid obligations of Landlord shall be performed in accordance with good and accepted real estate practices throughout the term of this lease, Landlord recognizing that all of said common areas must be available at all times, in good and attractive order and condition, to serve Tenant's customers, employees and invitees.

    \*          \*          \*

Landlord acknowledges that due to the fact the Premises has no rear loading door or dock, Tenant must unload its deliveries of goods and products to the Premises through the front door via access from the parking area in front of the Premises. Landlord agrees that, notwithstanding anything in this Lease to the contrary or any rules and regulations now or hereafter established by Landlord for tenants of the shopping center, Tenant shall be permitted to load and unload its goods and products through the front door of the Premises.

B. Landlord agrees that throughout the term of this Lease it shall provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by Tenant's customers and invitees, which parking shall comply with all local ordinances and regulations applicable thereto including with respect to the required ratio parking spaces to area of the leased premises. If at any time during the term hereof the total parking area shall be decreased permanently by more than thirty-five percent (35%), than in such event Landlord shall designate and reserve for the exclusive use of Tenant's customers (including by cordoning off spaces to identify them as reserved for Tenant's

5

customers) fifteen (15) parking spaces within the cross-hatched area identified on Exhibit A hereto and Landlord shall enforce such parking restrictions as may be reasonably necessary to ensure the [exclusiveness] of such parking spaces. If Landlord shall fail to provide such parking or to enforce restrictions as are reasonably necessary to ensure such parking to Tenant's customers and such failure shall continue for thirty (30) days after notice from Tenant, then Tenant may, in lieu of the fixed annual rent herein specified, pay to Landlord a reduced rent equal to three (3%) percent of its gross sales from the leased premises, plus all utilities it is required to p[ay under this Lease, until such time as the situation is remedied by Landlord; provided, however, that if such failure shall continue for more than ninety (90) days after such notice, then Tenant may cancel and terminate this Lease upon written notice to Landlord of such termination. Landlord further agrees that it will use reasonable efforts to limit access to parking in the parking areas of the Shopping Center to patrons of the Shopping Center and will establish and use reasonable efforts to enforce such parking restrictions as may be necessary in order for that to occur.

28. The Leased Premises make for a desirable destination for ADAP's customers and is profitable for ADAP, providing it with a competitive advantage over other auto parts stores in the vicinity.

### AvalonBay's Proposed Development

29. Upon information and belief, Ritz has entered into contract for the purchase and sale of a portion of Riverview Plaza with AvalonBay.

30. Upon information and belief, AvalonBay is the contract buyer of the real property consisting of the open parking lot and the area formerly the Pathmark grocery store.

31. By application dated November 26, 2002 ("Application"), AvalonBay submitted a site plan review application to the Norwalk Zoning Commission ("Proposed Development").

6

32. The Proposed Development consists of construction of two (2) new multi-story buildings, one in the area now used as an open parking lot and the other in the area formerly housing the Pathmark grocery store.

33. The Proposed Development will result in the:

    a. Addition of 312 residential units;

    b. Addition of 1,500 square feet of retail space;

    c. Reduction of parking spaces in the open parking lot.

34. AvalonBay has represented that the Proposed Development will take approximately twenty-one (21) months to complete.

35. During construction, parking will be altered and the existing open field parking lot will be closed or largely inaccessible to customers, employees and invitees of AutoZone.

36. During construction, there will be significant business interruption and disruption.

37. After construction, there will be significant reduction in accessibility, visibility and parking.

38. On February 26, 2003, The Norwalk Zoning Commission approved the Application of AvalonBay.

39. ADAP has consistently objected to the Proposed Development.

**Breaches of Lease**

40. The Proposed Development will result in Ritz breaching the Lease with ADAP in one or more of the following ways:

7

a. Failing to maintain Riverview Plaza and the layout of the buildings, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements in the same or similar condition as that set for in the Lease;

b. Failing to maintain the locations of the store enterprises noted in the Lease and adhering to the layout thereof in the development of Riverview Plaza and/or any subsequent expansion and/or alteration thereof so as to maintain the relative position of the buildings, the parking areas, the roadways and passageways, and the spaces of the tenants;

c. Failing to maintain the Riverview Plaza layout with no substantial change;

d. Adversely or materially affecting the accessibility to the Leased Premises from the parking areas;

e. Adversely or materially affecting the visibility of AutoZone's signs or storefront;

f. Adding free-standing buildings, trees, shrubs or other obstructions in front of the Leased Premises so as to affect the accessibility to or the visibility;

g. Failing to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition;

8

    h.    Failing to maintain all of the common areas so as to be available at all times, in good and attractive order and condition, to serve AutoZone's customers, employees and invitees;

    i.    Failing to permit the AutoZone store to load and unload its goods and products through the front door of the Leased Premises;

    j.    Failing to provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by AutoZone's customers and invitees, in compliance with all local ordinances and regulations applicable thereto including with respect to the required ratio parking spaces to area of the Leased Premises;

    k.    Failing to designate and reserve for the exclusive use of AutoZone's customers (including by cordoning off spaces to identify them as reserved for AutoZone's customers) fifteen (15) parking spaces within the area identified in the Lease.

41.    If the Proposed Development is allowed to proceed, ADAP will suffer irreparable harm including, but not limited to, loss of convenient parking, loss of access from common areas, loss of visibility, business interruption and disruption during construction and inability to load and unload deliveries of goods, particularly during construction.

42. ADAP lacks an adequate remedy at law for reasons including, but not limited to, inability to use and enjoy the Leased Premises as set forth in the Lease.

### FIRST COUNT (ANTICIPATORY BREACH OF CONTRACT)

43. The actions of Ritz and Avalon constitute an anticipatory breach of ADAP's contract rights under the Lease.

### SECOND COUNT (BREACH OF CONTRACT)

44. The actions of Ritz and Avalon constitute a breach of ADAP's contract rights under the Lease.

### THIRD COUNT
### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

45. Ritz breached the duty it had to ADAP to act in good faith and to deal fairly.

WHEREFORE, the plaintiff demands:

    a. A decree directing the defendants, Ritz and Avalon (to the extent that it has or does acquire an interest in the real property described in the lease) to specifically perform the Lease;

    b. A temporary restraining order preventing the defendants and their agents, servants, attorneys and/or employees from violating the Lease or from taking any action to violate the Lease in connection with the Leased Premises including all common areas located at 24 Belden Avenue, Norwalk, Connecticut;

10

c. A temporary and permanent injunction preventing the defendants and their agents, servants, attorneys and/or employees from violating the Lease or from taking any action to violate the Lease in connection with the Leased Premises including all common areas located at 24 Belden Avenue, Norwalk, Connecticut;

d. A declaratory judgment declaring that the Proposed Development violates the Lease of ADAP;

e. Legal costs as provided for under the Lease;

f. Such other relief as the Court may deem proper in law or in equity.

THE PLAINTIFF
ADAP, INC. D/B/A AUTOZONE

By: _____
Bruce L. Elstein, Esq.
Elstein and Elstein, P.C.
1087 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 367-4421
Facsimile: (203) 366-8615
Fed. Bar No. ct 01250
Email: belstein@elstein-law.com

## CERTIFICATION

I hereby certify that a copy of the foregoing has on this November 2, 2004, been mailed via First Class, postage prepaid to:

Andrew L. Houlding, Esq.
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT 06103
Telephone # (860) 493-3468
Federal Bar No. CT12137

Joseph L. Hammer, Esq.
Day, Berry & Howard, LLP
City Place I
Hartford, CT 06103-3499
Telephone # (860) 275-0100
Federal Bar No. CT00446

Bruce L. Elstein
Fed. Bar No. ct 01250

\\Server\Common\AUTOZONE\Adap v. Ritz(Avalon)\AZ-5156Norwalk Amended Complaintdoc.doc