UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAP, INC. | : CASE NO. 303CV350(MRK) |
| | : |
| | : |
| VS. | : |
| | : |
| RITZ REALTY CORP. and | : |
| AVALONBAY COMMUNITIES, INC. | : FEBRUARY 25, 2005 |

**DEFENDANT AVALONBAY COMMUNITIES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ADAP INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant AvalonBay Communities, Inc. ("AvalonBay") respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment and Memorandum in Support of Summary Judgment of Plaintiff ADAP, Inc. (d/b/a AutoZone) ("AutoZone") dated February 1, 2005. In support of its opposition, AvalonBay submits herewith its Local Rule 56(a)(2) Statement together with the exhibits attached thereto.

**I.   INTRODUCTION**

Through its Motion, AutoZone seeks: (1) a declaratory judgment that the proposed AvalonBay development constitutes a breach or anticipatory breach of AutoZone's Lease with Ritz Realty Corp. ("Ritz"); and (2) a decree granting specific performance of the Lease in favor of AutoZone. As set forth more fully below, there exist numerous genuine issues of material fact precluding the grant of summary judgment. These factual issues include construction logistics, the specifics of the proposed development and the nature and degree of the physical changes to be made to Riverview Plaza, the attributes of Riverview Plaza and the AutoZone store as they currently exist (including visibility and parking), the impact of the development on the AutoZone store, and whether AutoZone's withholding of consent to the development is reasonable.

In its papers, AutoZone recites certain of the lease provisions and puts forth a litany of subjective characterizations and opinions, which it deems undisputed material facts, without any meaningful analysis of the relevant lease language or acknowledgment of the disputed material facts that must be resolved to adjudicate its claims of breach. Skirting over these fundamental factual issues, AutoZone simply asserts that the construction of the development will constitute a breach of the Lease. The reality is that the Lease neither absolutely bars the activities that AutoZone claims violate the Lease nor affords AutoZone the unfettered right to preclude additional development of Riverview Plaza. Rather, the Lease contemplates additional development of the site and provides that AutoZone <u>may not unreasonably withhold its consent to such development</u>—a standard that AutoZone fails to address and that itself presents genuine issues of material fact.

Finally, in terms of its request for a decree of specific performance, AutoZone fails to acknowledge that it must establish irreparable harm and lack of an adequate remedy of law to obtain such relief. In its Motion for Summary Judgment dated February 1, 2005, AvalonBay has requested that this Court deny AutoZone's requests for injunctive relief and specific performance on the grounds that, given its $5 billion annual revenues and more than 3,000 auto parts stores, AutoZone cannot establish irreparable harm as a matter of law, and has an adequate remedy at law. Assuming *arguendo* that AvalonBay's motion were not granted, then AvalonBay submits that a full factual hearing would be needed on the issue of irreparable harm, and specific performance could not enter as a matter of law as requested by AutoZone.

**II.     STANDARD FOR SUMMARY JUDGMENT**

The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact to be tried and that the facts as to which there is no such issue

warrant judgment as a matter of law.  M.C.I. Telecommunications Corp. v. Southern New England Tel. Co., 27 F. Supp. 2d 326, 331 (D. Conn. 1998); Fed. R. Civ. P. 56(c).  If, as to any issue on which summary judgment is sought, "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Samander v. Flemmig, 20 F. Supp. 2d 343, 344 (D. Conn. 1998) (citation omitted).  Moreover, "all reasonable inferences and any ambiguities must be drawn in favor of the non-moving party."  Id. at 345 (citing Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990)).

**III.   ARGUMENT**

    **A.   The Lease Contemplates Further Development Of Riverview Plaza**

The import of AutoZone's actions from the outset of this matter is a contention that the Lease is a complete barrier to further development of Riverview Plaza.  To the contrary, the Lease clearly contemplates such development.  Future development is addressed in multiple provisions of the Lease, including Article I (referencing "the development of the Shopping Center and/or any subsequent expansion and/or alteration thereof"), Article 3 (referencing the Shopping Center, "as presently planned or as it may be expanded or altered"), and Article 14 (establishing that AutoZone is not responsible to share in "costs for construction of additional common areas, buildings or parking areas, or costs for the expansion of existing common areas, buildings or parking areas", and further providing 15 reserved parking spaces for AutoZone in the event that the total parking area is decreased permanently by more than 35%).

AutoZone claims that the construction of the development will violate Articles 1 and 14 of the Lease.  Article 1 of the Lease states, in relevant part, as follows:

> Landlord further agrees that Exhibit A is a complete and accurate representation of the layout of the building, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements shown thereon, now completed or under construction or planned for the Shopping

> Center, as well as of the locations of the store enterprises noted thereon and that the layout thereof, as shown on Exhibit A will be adhered to in the development of the Shopping Center and/or any subsequent expansion and/or alteration thereof so as to maintain the relative positions of the buildings, the parking areas, the roadways and passageways, and the spaces of the tenants, all as shown on Exhibit A. Landlord agrees that there shall be no change whatever (sic) in the location, shape or dimensions of the premises hereby demised, and no substantial change in the [Riverview Plaza] layout which would in any manner or to any degree adversely or materially affect the accessibility to the leased premises from the parking areas or the visibility of Tenant's signs or storefront, without Tenant's prior written consent in each instance, <u>which consent shall not be unreasonably withheld</u>.
>
> Landlord further agrees not to place any free-standing buildings, kiosks, planters, trees, shrubs, stairs or other obstructions any place in front of the leased premises so as to affect the accessibility to or the visibility of the leased premises without first obtaining Tenant's written consent, <u>which consent shall not be unreasonably withheld or delayed</u>.

(Lease, Art. 1 (emphasis added).) In addition, Article 25(k) provides that "[w]henever under this Lease provision is made for either party to obtain the written consent or approval of the other party, <u>such consent or approval shall not be unreasonably withheld</u>, conditioned or delayed."

(Lease, Art. 25(k) (emphasis added).)

Article 14 of the Lease provides as follows regarding parking, access to streets and loading:

> A.   Landlord has constructed all parking area, driveways, entrances and exits, service drives, lighting, truckways, loading docks and doors . . . package pick-up stations, pedestrian sidewalks and ramps, landscaped areas, exterior stairways, and other areas and improvements as shown on Exhibit A hereto (the "common areas"). All of said common areas shall be for the general use, in common, of tenants, their agents, employees, customers and invitees. Tenant, its agents, employees, customers and invitees are hereby granted the right to use all of said common areas for their intended purposes. Landlord agrees throughout the term of this Lease to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition and properly lighted and cleaned. The aforesaid obligations of Landlord shall include maintaining and at all times having adequate means of ingress and egress to and from accepted highways and public streets, the prompt repairing and restriping when required of the parking areas, the maintenance and repair of all curbing and directional markers, the cleaning and repair of the sidewalks, the prompt removal of snow and ice,

landscaping, security, common area utility usage and adequate lighting during all hours of darkness that Tenant shall be open for business.

All of the aforesaid obligations of Landlord shall be performed in accordance with good and accepted real estate practices throughout the terms of this Lease, Landlord recognizing that all of said common areas must be available at all times, in good and attractive order and condition, to serve Tenant's customers, employees and invitees.

* * * *

Landlord acknowledges that due to the fact the Premises has no rear loading door or dock, Tenant must unload its deliveries of goods and products to the Premises through the front door via access from the parking area in front of the Premises. Landlord agrees that notwithstanding anything in this Lease to the contrary or any rules and regulations now or hereafter established by the Landlord for tenants of the Shopping Center, Tenant shall be permitted to load and unload its goods and products through the front door of the Premises. Tenant shall use reasonable efforts to minimize any inconvenience to customers of the Shopping Center that may result from or as a result of its unloading through the front door of the Premises.

B.   Landlord agrees that throughout the term of this Lease it shall provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by Tenant's customers and invitees, which parking shall comply with all local ordinances and regulations applicable thereto, including with respect to the required ratio parking spaces to area of the leased premises. If at any time during the term hereof the total parking area shall be decreased permanently by more than thirty five percent (35%), then in such event Landlord shall designate and reserve for the exclusive use of Tenant's customers (including by cordoning off spaces to identify them as reserved for Tenant's customers) fifteen (15) parking spaces within the cross-hatched area identified on Exhibit "A" attached hereto and Landlord shall enforce such parking restrictions as may be reasonably necessary to ensure the exclusiveness of such parking spaces. If Landlord shall fail to provide such parking or to enforce restrictions as are reasonably necessary to ensure such parking to Tenant's customers and such failure shall continue for thirty (30) days after notice from Tenant, then Tenant may, in lieu of the fixed annual rent herein specified, pay to Landlord a reduced rent equal to three (3%) percent of its gross sales from the leased premises, plus all utilities it is required to pay under this Lease, until such time as the situation is remedied by the Landlord; provided, however, that if such failure shall continue for more than ninety (90) days after such notice, then Tenant may cancel and terminate this Lease upon written notice to Landlord of such termination. Landlord further agrees that it will use reasonable efforts to limit access to parking in the parking areas of the Shopping Center to patrons of the Shopping Center and will establish and use reasonable efforts to enforce such parking restrictions as may be necessary in order for that to occur.

-5-

\* \* \* \* \* \*

(Lease, Art. 14.)  In short, the Lease anticipates further development of Riverview Plaza and forbids AutoZone from unreasonably withholding its consent to such development.

It is axiomatic that courts must attempt to give meaning to every word in a contract. Downs v. National Casualty Co., 146 Conn. 490, 495, 152 A.2d 316 (1959).  The meaning of the phrase "which consent shall not be unreasonably withheld" must be given its plain and ordinary meaning.  See Tallmage Brothers, Inc. v. Iroquois Transmission System, Inc., 252 Conn. 479, 746 A.2d 1277 (2000).  The language of the Lease unambiguously shows that Ritz and ADAP contemplated when they entered into the Lease that Ritz could construct further improvements on the Riverview Plaza property, including buildings and landscaping, during the Lease term. Moreover, the Lease does not afford AutoZone an absolute veto power over such construction. Rather, the Lease requires AutoZone to consent to such changes unless AutoZone can demonstrate a reasonable basis to withhold its consent.

> **B.    The Determination Of AutoZone's Claims Of Breach Of Lease Involves Genuine Issues Of Material Fact That Preclude The Granting Of Summary Judgment**
>
> **1.    Whether the physical changes to be implemented to Riverview Plaza constitute a breach of lease involves disputed material facts.**

AutoZone maintains that construction of the development will result in a breach of Article 1 and/or Article 14 of the Lease in eleven ways, including:  failing to maintain Riverview Plaza and the layout of buildings, parking areas, access roads, loading docks and common areas in the condition required by the Lease; adversely or materially affecting the accessibility of the Leased Premises from the parking areas and the visibility of AutoZone's signs or storefront; failing to permit AutoZone to unload goods through its front door; failing to maintain sufficient parking areas in compliance with local ordinances and regulations; and failing to delegate 15

parking spaces for AutoZone's exclusive use within the area identified in the Lease. Adjudication of these claims requires a fact-specific and intensive inquiry, and the determination of numerous genuine issues of material fact relating to both existing and proposed conditions at Riverview Plaza.

AutoZone mischaracterizes as undisputed material facts and includes in its Local Rule 56(a)(1) Statement a plethora of opinions, conclusory and unsupported statements, and disputed material facts, including the following:

- Characterizations of the current quality and degree of visibility of the AutoZone storefront and sign from various locations, including Cross Street and Belden Avenue, and the degree of impact to such visibility from the development. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶¶ 8, 34-39.)

- Assertions regarding construction logistics and the degree of impacts on parking and AutoZone customers. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶¶ 29-31.)

- Assertions regarding the degree of business interruption and disruption during construction. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶ 32.)

- Claims as to the amount, character and location of parking after the development is constructed. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶¶ 40-43.)

- Comparisons of the nature and quality of interior traffic circulation and the relative distance of travel from surface parking spaces to the AutoZone front door before and after the construction of the development. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶¶ 44-47.)

- A comparison of the attributes and desirability of the Riverview Plaza site and the AutoZone store to autoparts retailers and AutoZone customers prior to and after construction of the development. (AvalonBay Local Rule 56(a)(2) Statement, § I, ¶¶ 48-57.)

As set forth in detail in AvalonBay's Local Rule 56(a)(2) Statement, AutoZone's claims present numerous genuine issues of material fact. Here are just a few examples. AutoZone's contentions as to the quality of visibility of its store from off-site ignore the fact that views of the store are currently obstructed for drivers in certain locations. (Rule 56(a)(2) Statement, § I, ¶¶ 8, 34-38.) AutoZone's claim that after the development is built 82 parking spaces will be shared between residential and retail and that the desirability of parking will decrease is simply wrong—a total of 165 spaces will be available to retail tenants during business hours, 15 spaces will be provided for the exclusive use of AutoZone customers, and the overall ratio of retail parking spaces to retail square footage will increase substantially. (Rule 56(a)(2) Statement, § I, ¶¶ 40, 55.) AutoZone's assertion that during construction the surface parking lot will be largely inaccessible to its customers and that there will be significant business interruption sidesteps the measures taken and offered by AvalonBay to maintain adequate parking for AutoZone customers throughout the project. (Rule 56(a)(2) Statement, § I, ¶¶ 29, 32.) Further, AutoZone's claim that it will no longer be able to load goods through its front door is belied by the creation of loading spaces on Belden Avenue and in the access drive abutting the sidewalk in front of the AutoZone store, which are shown on the site plans submitted by AutoZone with its papers. (Rule 56(a)(2) Statement, § II, ¶ 10.)

**2.     The issue of whether AutoZone has unreasonably withheld its consent also involves disputed material facts.**

AutoZone avoids any mention in its papers of the fact that the Lease provides that AutoZone may not unreasonably withhold its consent to additional development of and changes to Riverview Plaza.  Whether AutoZone's withholding of consent is reasonable in this case—the Defendants contend that it is not—must be determined in order to adjudicate AutoZone's breach claim.  This issue of reasonableness also involves genuine issues of material fact.

From the start, AutoZone demanded that the project be dropped.  AutoZone refused to enter a dialogue with AvalonBay as requested by AvalonBay in an effort to address AutoZone's concerns, and has paid little notice to the considerable steps taken by AvalonBay to resolve those concerns, including the provision of 15 dedicated parking spaces for AutoZone customers and the reduction of the corner of the new building closest to the AutoZone store.  (Rule 56(a)(2) Statement, § II, ¶¶ 12-15.)  Significantly, AutoZone to this day has not determined whether its business will be impacted by the project to support any commercial justification for withholding its consent.  In fact, the AutoZone Vice President who verified the original complaint conceded during his deposition that he was not familiar enough with the details of the proposed development to make a reasonable assessment of whether the store will be adversely impacted.  (Rule 56(a)(2) Statement, § II, ¶ 16.)

The Connecticut Supreme Court has held in the commercial lease context that a landlord who contractually retains the discretion to withhold its consent to the assignment of a tenant's lease must exercise that discretion in a manner consistent with good faith and fair dealing.  Warner v. Konover, 210 Conn. 150, 154-55, 553 A.2d 1138 (1989).  Thus, "[a]n unreasonable withholding of consent to an assignment of a lease of commercial premises is a breach of the covenant of good faith and fair dealing.  The good faith and fair dealing obligations between a

commercial landlord and tenant are mutual." Greenwich Plaza, Inc. v. Whitman & Ransom, 1996 WL 240458 (Conn. Super. Ct. March 19, 1996) (citing Konover, supra). In Speare v. Consolidated Assets Corp., 360 F.2d 882, 886 (2d Cir. 1966), a case involving New York law, the Second Circuit found that a landlord's agreement that it will not withhold unreasonably consent to a tenant's assignment of a lease is viewed as a covenant to permit assignment absent demonstration by the landlord of just cause. See also Toys "R" Us, Inc. v. NBD Trust Co. of Ill., 904 F.2d 1172, 1177 (7th Cir. 1990) (lease language that "[t]enant may not assign . . . the Demised Premises, without first obtaining Landlord's consent thereto, which consent shall not be unreasonably withheld", imposed a duty on the landlord "to consent, on a reasonable basis, to a sublease. . . ."); Farrendon Corp. v. Genesco, Inc., 822 F. Supp. 1576, 1579 (N.D. Ga. 1992) (observing that a survey of state law indicated that because "a [commercial] lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness, . . . a withholding of consent . . ., which fails the tests for good faith and commercial reasonableness, constitutes a breach of the agreement") (internal quotation marks omitted; citation omitted).

Determining the reasonableness of AutoZone's withholding of consent necessarily involves evaluating its conduct in light of principles of good faith and fair dealing and commercial reasonableness. Such a determination requires a detailed factual inquiry into the particulars of existing conditions at Riverview Plaza as well as of the development and construction plans, AutoZone's concerns, AutoZone's course of dealings with Ritz and Avalon Bay, and the objective impacts of the development on the operation of the AutoZone Store.[1]

---

[1] See generally Krevit v. A La Carte Foods, No. CVNH89033124, NH509, 1990 Conn. Super. LEXIS 2172, at *7 (Conn. Super. Ct. Feb. 23, 1990) (holding that a landlord's reasonable

Thus, the determination of the reasonableness of AutoZone's withholding of consent is fact-bound and cannot be disposed of through summary judgment. Other courts have denied summary judgment in similar circumstances. See e.g., BASCO, Inc. v. Buth-Na-Bodhaige, 198 F. 3d 1053, 1058 (8th Cir. 1999) (reversing district court's grant of summary judgment because each side presented "sufficient evidence" regarding whether the landlord unreasonably withheld its consent to a transfer "so that a jury will have to determine whether or not the consent was withheld unreasonably"); Nash v. Coram Healthcare Corp., No. 96 Civ. 0298, 1998 U.S. Dist. LEXIS 4592, at *3 (S.D.N.Y. Apr. 7, 1998) (finding "[g]iven the divergent accounts of the circumstances surrounding the proposed sale of stock and that both accounts are supported by evidence in the record, a genuine issue of fact exists with respect to whether [defendant's predecessor] reasonably, and in good faith, withheld its consent to the proposed sale [of restricted stock]. Because this issue goes to the heart of plaintiffs' breach of contract claim, the Court cannot resolve the action on a summary judgment motion."); Thompson Trading, Ltd. v. Allied Breweries Overseas Trading, Ltd., 748 F. Supp. 936, 942 (D.R.I. 1990) ("Where there exist disputed facts concerning the reasonableness of withholding consent to an assignment, that issue should be decided by the trier of facts."); see also Homa-Goff Interiors, Inc. v. Cowden, 350 So. 2d 1035, 1038 (Ala. 1977) (commercial lease provision that landlord would "not enter into any lease or other arrangement respecting the use of space on the ground floor, mezzanine and lower concourse of the building without the written consent of tenant, which consent shall not be unreasonably withheld" must be tried on a reasonable commercial standard, which "question, of course, becomes a question of fact to be determined by the jury.").

---

diligence in seeking to mitigate damages must "be determined by an examination of the totality of circumstances").

### C.  AutoZone's Request For The Entry Of A Decree Of Specific Performance As A Matter Of Law Must Be Denied

AutoZone maintains that its request for a decree of specific performance is to be evaluated by balancing the equities, and it asks this Court to find the equities so far in AutoZone's favor that the Court enter a judgment of specific performance for AutoZone as a matter of law.  (Plaintiff's Memorandum at 16-18.)  AutoZone's claim is devoid of merit.

First, AutoZone's portrayal of Connecticut's specific performance standard is deficient. AutoZone relies principally upon Marquardt & Roche/Meditz & Hackett, Inc. v. Riverbend Executive Center, Inc., 74 Conn. App. 412, 812 A.2d 175 (2003) for its contention that a claim for specific performance is evaluated by a balancing of the equities.  However, AutoZone omits any reference to that case's mandate that "specific relief will be denied when . . . the legal remedy is regarded as adequate or the plaintiff is not subjected to irreparable harm by the breach."  Id. at 421 n.2.  As briefed in AvalonBay's Motion for Summary Judgment, AutoZone possesses an adequate remedy at law, and any harm which may befall it from the improvements planned for Riverview Plaza are not irreparable.  (See Defendant AvalonBay Communities, Inc.'s Memorandum of Law in Support of its Motion for Partial Summary Judgment dated February 1, 2005, at 10-18.)  See also Berman v. DePetrillo, No. 97-70, 1997 U.S. Dist. LEXIS 3966 (D. D.C. March 20, 1997) (noting that "the loss of a business opportunity is a purely economic injury, and economic loss alone, however substantial, does not constitute 'irreparable harm'"); Bristol-Myers Squibb Co. v. Shalala, 923 F. Supp. 212, 221 (D. D.C. 1996) (characterizing as "mere speculation" pioneer drug maker's claim that approval of generic drug would encroach on pioneer's market share and rejecting as "inconsequential" pioneer's claim that lost revenues would be irretrievable); Mead Johnson Pharm. Group v. Bowen, 655 F. Supp. 53, 56 (D.D.C. 1986) (finding that purported loss in market share was "pure speculation") aff'd,

838 F. 2d 1332 (D.C. Cir. 1988).  Thus, AutoZone's request for specific performance as a matter of law must be denied.

Second, assuming *arguendo* that this Court were not to grant Defendants' cross motions for summary judgment and hold that injunctive relief is <u>not</u> available to AutoZone as a matter of law, then a determination of the equities, whether AutoZone will be irreparably harmed and the adequacy of monetary damages, would be necessary.  Such a determination would involve genuine issues of material fact, including evidence not before the Court through AutoZone's motion, and AutoZone's summary request for specific performance must therefore be denied.

## IV.   CONCLUSION

For all of the foregoing reasons, AvalonBay respectfully submits that AutoZone's Motion for Summary Judgment must be denied in its entirety.

DEFENDANT,
AVALONBAY COMMUNITIES, INC.


By_____
Joseph L. Hammer (ct00446)
David M. Bizar (ct20444)
Day, Berry & Howard LLP
CityPlace I
Hartford, CT  06103-3499
Tel:  (860) 275-0100
Fax:   (860) 275-0343
E-mail: jlhammer@dbh.com
         dmbizar@dbh.com

**CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was sent this 25th day of February, 2005, via first class mail, postage prepaid to:

Bruce L. Elstein, Esq.
Elstein & Elstein
1087 Broad Street
Bridgeport, CT  06604-4294
Phone:  (203) 367-4421
Fax:      (203) 366-8615


Andrew L. Houlding, Esq.
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT  06103-3101
Phone: (860) 493-3468
Fax:     (860) 724-3921

 

_____
Joseph L. Hammer