UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADAP, INC. | : | CASE NO. 303CV350(MRK) |
| | : | |
| VS. | : | |
| | : | |
| | : | |
| RITZ REALTY CORP. and | : | |
| AVALONBAY COMMUNITIES, INC. | : | FEBRUARY 25, 2005 |

## DEFENDANT AVALONBAY COMMUNITIES, INC.'S
## LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Local Rule 56(a)(2) of the Local Rules of Civil Procedure for the United

States District Court for the District of Connecticut, defendant AvalonBay Communities, Inc.

("AvalonBay") hereby responds to the Local Rule 56(a)(1) Statement submitted by plaintiff

ADAP, Inc. (d/b/a AutoZone) ("AutoZone") in support of its Motion for Summary Judgment

dated February 1, 2005.

**I.      AvalonBay's Responses to Plaintiff's Statement of Undisputed Material Issues of
         Fact**

1.      Ritz Realty Corp. ("Ritz") is the owner of that certain piece or parcel of real

property known as "Riverview Plaza" located at 24 Belden Avenue, Norwalk, Connecticut

("Premises").  See complaint ¶ 7 and Ritz' answer (admission).

**Response:**      Admitted.

2.      AvalonBay Communities, Inc. ("AvalonBay") submitted plans ("Plans") to

construct two (2) apartment buildings on the Premises.  Exhibit A (Plans) and Robbins 149:5 –

149:9.

**Response:**      Admitted.

3.    The Norwalk Planning and Zoning Commission granted site plan approval of the Plans.  See complaint ¶ 38 and answers (admissions) thereto.

**Response:**    Admitted.

4.    Riverview Plaza presently has retail space with a large open field parking area immediately adjacent to it, has excellent visibility from all surrounding roads and is easily accessible from points of ingress and egress from Belden Avenue and Cross Street.  Exhibit A, page PK0056 and PK0074 and Exhibit B.

**Response:**    Admitted that Riverview Plaza has a surface parking lot on the portion of Riverview Plaza abutting Belden Avenue and Cross Street.  Plaintiff's assertions that the parking area is "large" and "easily" accessible from Belden Avenue and Cross Street, and that the retail space at Riverview Plaza has excellent visibility from all surrounding roads, are subjective characterizations, not facts, and therefore are neither admitted, nor denied; however, to the extent a response is required, such characterizations are denied.  For example, the view of AutoZone's storefront is obstructed for drivers traveling on Cross Street and Belden Avenue in certain locations.  Deposition testimony of Mark Robbins, former Development Director for AvalonBay Communities, given on September 27, 2004 (Robbins Dep.) at 85:17 – 86:20, 96:13-97:19, 100:5-100:19, 101:16-102:2, copies of which are attached hereto as Exhibit A; see also Response to ¶8.

5.    On or about April 17, 1997, ADAP and Ritz entered into a written lease ("Lease") for ADAP to exclusively occupy a portion of Building #1 of Riverview Plaza consisting of approximately Five Thousand Six Hundred Eighty (5,680) Square Feet (the "Leased Premises").  Exhibit A and Affidavit of James O. McClain ¶6.

**Response:**     Admitted that ADAP and Ritz entered a lease as described, with the qualification that the Lease is found at Exhibit C to Plaintiff's Local Rule 56(a)(1) Statement. In addition, it is denied that the lease contains the document stamped JM00369. See Affidavit of Eric Berliner (Berliner Affidavit), ¶4 (attached to Ritz's Local Rule 56(a)(2) Statement).

6.     The Leased Premises is located in the corner location, or "end cap", of Building #1 - closest to the access way from Belden Avenue. Exhibit A, page PK0056 and PK 0074 and Exhibit B.

**Response:**     Admitted.

7.     The AutoZone store has frontage along the open parking lot and Belden Avenue. Exhibit A, page PK0056 and PK0074 and Exhibit B.

**Response:**     Admitted.

8.     AutoZone has a large sign on the front of its store that is visible from the open parking lot, Cross Street and Belden Avenue. Exhibit B.

**Response:**     Admitted that AutoZone has signage on the front of its store which is visible from the open parking lot, and portions of Belden Avenue and Cross Street. However, views of the signage are obstructed from certain locations on Cross Street and Belden Avenue. Exhibit A (Robbins Dep.) at 86:15 – 87:2, 96:13-97:19, 100:5-100:11,101:16-102:2; Berliner Affidavit, ¶ 17 and Attachment 3.

9.      The lease provides the lessee, among other rights, use and occupancy of the

Leased Premises for an initial term of ten (10) years commencing not later than October 1, 1997,

followed by two (2) successive renewal terms each of five (5) years.  Exhibit A, Articles 4 and 5.

**Response:**     Admitted, with the qualification that the lease is Exhibit C to Plaintiff's Local

Rule 56(a)(1) Statement.

10.     ADAP and Ritz agreed in Article 1 of the lease as follows:

> Landlord agrees that at all times during the term of this lease,
> adequate roadways and passageways shall be provided at the
> building for passage by motor vehicles and on foot between the
> leased premises, the parking areas and the public streets, and
> highways adjoining the building.  Landlord further agrees that
> Exhibit A is a complete and accurate representation of the layout
> of the building, parking areas, access roads, loading docks,
> passageways and other common areas and facilities and
> improvements shown thereon, now completed or under
> construction or planned for [Riverview Plaza], as well as of the
> locations of the store enterprises noted thereon and that the layout
> thereof, as shown on Exhibit A will be adhered to in the
> development of [Riverview Plaza] and/or any subsequent
> expansion and/or alteration thereof so as to maintain the relative
> position of the buildings, the parking areas, the roadways and
> passageways, and the spaces of the tenants, all as shown on Exhibit
> A.  Landlord agrees that there shall be no change whatever in the
> location, shape or dimensions of the premises hereby demised, and
> no substantial change in [Riverview Plaza] layout which would in
> any manner or to any degree adversely or materially affect the
> accessibility to the leased premises from the parking areas or the
> visibility of tenant's signs or storefront, without tenant's prior
> written consent in each instance, which consent shall not be
> unreasonably withheld.  Landlord further agrees not to place any
> free-standing buildings, kiosks, planters, trees, shrubs, stairs or
> other obstructions any place in front of the leased premises so as to
> affect the accessibility to or the visibility of the leased premises
> without first obtaining tenant's written consent, which consent
> shall not be unreasonably withheld or delayed.

**Response:**     Admitted.

11.    ADAP and Ritz agreed in Article 14 of the lease as follows:

> Landlord agrees throughout the term of this Lease to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition and properly lighted and cleaned. The aforesaid obligations of Landlord shall include maintaining and at all times having adequate means of ingress and egress to and from accepted highways and public streets …

> All of the aforesaid obligations of Landlord shall be performed in accordance with good and accepted real estate practices throughout the term of this lease, Landlord recognizing that all of said common areas must be available at all times, in good and attractive order and condition, to serve Tenant's customers, employees and invitees.

> *                    *                    *

> Landlord acknowledges that due to the fact the Premises has no rear loading door or dock, Tenant must unload its deliveries of goods and products to the Premises through the front door via access from the parking area in front of the Premises. Landlord agrees that, notwithstanding anything in this Lease to the contrary or any rules and regulations now or hereafter established by Landlord for tenants of the shopping center, Tenant shall be permitted to load and unload its goods and products through the front door of the Premises.

> B. Landlord agrees that throughout the term of this Lease it shall provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by Tenant's customers and invitees, which parking shall comply with all local ordinances and regulations applicable thereto including with respect to the required ratio parking spaces to area of the leased premises. If at any time during the term hereof the total parking area shall be decreased permanently by more than thirty-five percent (35%), than in such event Landlord shall designate and reserve for the exclusive use of Tenant's customers (including by cordoning off spaces to identify them as reserved for Tenant's customers) fifteen (15) parking spaces within the cross-hatched area identified on Exhibit A hereto and Landlord shall enforce such parking restrictions as may be reasonably necessary to ensure the [exclusiveness] of such parking spaces. If Landlord shall fail to provide such parking or to enforce restrictions as are reasonably necessary to ensure such parking to Tenant's customers and such

failure shall continue for thirty (30) days after notice from Tenant,
then Tenant may, in lieu of the fixed annual rent herein specified,
pay to Landlord a reduced rent equal to three (3%) percent of its
gross sales from the leased premises, plus all utilities it is required
to pay under this Lease, until such time as the situation is remedied
by Landlord;  provided, however, that if such failure shall continue
for more than ninety (90) days after such notice, then Tenant may
cancel and terminate this Lease upon written notice to Landlord of
such termination.  Landlord further agrees that it will use
reasonable efforts to limit access to parking in the parking areas of
the Shopping Center to patrons of the Shopping Center and will
establish and use reasonable efforts to enforce such parking
restrictions as may be necessary in order for that to occur.

**Response:**     Admitted.

12.     At present, there exist 262 parking spaces in the open field lot.  Exhibit C,

JM00369.

**Response:**     Admitted as to the existence of 262 parking spaces, but denied that the Lease

contains JM00369.  See Response to ¶5.

13.     The Lease dedicated at least fifteen (15) parking spaces ("Reserved Parking

Area") to AutoZone if parking were reduced in the open lot by more than 35%.  Exhibit C,

Article 14(B), JM00369 (Highlight Original).

**Response:**     Denied.  The Lease provides that the Landlord shall designate and reserve fifteen

parking spaces for the exclusive use of Tenant's customers if parking is reduced <u>permanently</u> by

more than 35%.  Lease, Article 14(B) (emphasis added).

14.     On October 17, 2001 Ritz entered into a contract ("Contract") for the purchase

and sale of a portion of the Premises to AvalonBay.  AvalonBay is the contract buyer of the

portion of the Premises including the open parking lot.  See complaint ¶ 29 and 30 answers

(admissions) thereto.  Exhibit B.

**Response:**     Admitted.

15.     Pursuant to the Contract, AvalonBay had the right to conduct due diligence and to terminate the Contract "… for any other reason whatsoever, or for no reason …".  Exhibit B, ¶ 4.1(b).

**Response:**     Admitted that the Contract provided for such a right prior to the end of the due diligence period.

16.     On or about October 31, 2001 and during the due diligence period, AvalonBay was provided a copy of the plaintiff's Lease.  Exhibit E and Valente Dep. 94:12 – 94:25.

**Response:**     Admitted.

17.     On or before October, 2001, Day, Berry & Howard LLP commenced to represent AvalonBay Communities, Inc. in the purchase and sale of a portion of the premises referred to as "Riverview Plaza" in Norwalk, Connecticut.

**Response:**     Admitted.

18.     Submitted herewith as Exhibit F and Exhibit G are letters dated January 29, 2002 and February 7, 2002 respectively from Allen Roberts, of Day, Berry & Howard LLP.

**Response:**     Admitted.

19.     Those letters are genuine, authentic and accurate copies of the letters sent on the dates set forth therein.

**Response:**     Admitted.

20.     The letters were prepared and sent at or about the date(s) set forth therein.

**Response:**     Admitted.

21.     AvalonBay identified the terms of plaintiff's Lease, and in particular, Article 1 thereof, as providing a potential basis for objecting to the Proposed Development. Exhibit F.

**Response:**     AvalonBay admits that in the letters addressed to Ritz, AvalonBay's real estate counsel raised the issue of whether the Lease would give tenants a potential basis for objecting to the Proposed Development, but denies any suggestion that AvalonBay believed that any such objection or the withholding of consent to the Proposed Development by AutoZone would be reasonable.

22.     By application dated November 26, 2002 ("Application"), AvalonBay submitted a site plan review application with the Norwalk Zoning Commission ("Proposed Development"). See complaint ¶ 31 and answers (admissions) thereto.

**Response:**     Admitted.

23.     The Proposed Development consists of construction of two (2) new multi-story buildings, one in the area now used as an open parking lot and the other in an area formerly housing a Pathmark grocery store. See complaint ¶ 32 and answers (admissions) thereto.

**Response:**     Admitted.

24.     AvalonBay does not intend to make any structural additions to the building where AutoZone is located, but intends on making "improvements" to the exterior thereto. Exhibit A, page PK0062.

**Response:**     Admitted that the plan approved by the Norwalk Zoning Commission does not call for any structural additions to the building where AutoZone is located and provides for improvements to the exterior of the building.

25.     The "improvements" consist of façade renovations and the addition of trees and landscaping along Belden Avenue.  Exhibit A, page PK0062.

**Response:**     Admitted that the improvements consist of façade renovations.  Denied that the approved landscaping plan calls for the planting of trees or landscaping along the portion of Belden Avenue abutting the façade of the AutoZone store.  Plaintiff's Exhibit A[1], page PK 0069 (Site Plan Application).

26.     The Proposed Development will result in the:

    a.      Addition of 312 residential units;

    b.      Addition of 1,500 square feet of retail space;

    c.      Reduction of parking spaces in the open parking lot;

    d.      Installation of landscaping trees along Belden Avenue.

See complaint ¶ 33 answers (admission) thereto.

**Response:**     a.      Admitted;

                     b.      Admitted;

                     c.      Denied.  Although the absolute number of parking spaces in the existing open parking lot will be reduced, the ratio of parking spaces to retail space (inclusive of the AutoZone space) will increase upon the completion of the Proposed Development.  Deposition testimony of Eric Berliner, President of Ritz Realty Corp., given on September 27, 2004 (Berliner Dep.) at 63:6 – 18, copies of which are attached hereto as Exhibit B .  Riverview Plaza

---

[1] Reference to Plaintiff's exhibits are to exhibits attached to Plaintiff's Rule 56(a)(1) Statement dated February 1, 2005.

currently consists of approximately 100,000 square feet of retail space with 262 surface parking spaces, or about one parking space for every 382 square feet of retail space.  Following construction, there will be 165 surface parking spaces to service approximately 40,000 square feet of retail space, or about one parking space for every 242 square feet of remaining retail space.  Exhibit B (Berliner Dep.) at 131:15 – 132:11.  These spaces will be located in the footprint of the existing lot and on the footprint of the old Pathmark space.  Deposition testimony of Peter Kastl, Perkins Eastman architect, given on October 22, 2003 (Kastl Dep.) at 96:1 – 25 and Kastl Dep. Ex. 16, copies of which are attached hereto as Exhibit C.  In addition, AutoZone will be provided fifteen parking spaces proximate to AutoZone's store for the exclusive use of its customers.  Exhibit B (Berliner Dep.) at 93:14 – 94:17.

       d.     Admitted that the plan includes such trees along Belden Avenue adjacent to the proposed building.

       27.     Beginning in January 2002, the plaintiff has continuously and strenuously objected to the Proposed Development.  Affidavit of James O. McClain ¶ 10.

**Response:**     Admitted.

       28.     AvalonBay has represented that the Proposed Development will take approximately eighteen to twenty-one (18 - 21) months to complete.  Exhibit H and Robbins 140:18 – 141:21.

**Response:**     Admitted.

       29.     During construction, parking will be altered and the existing open field parking lot will be closed or largely inaccessible to customers, employees and invitees of AutoZone.  Robbins 143:11 – 145:23 and Exhibit H.

**Response:**    Denied.  Although certain activities will take place in the parking lot, AvalonBay has developed phased construction plans to ensure that parking would remain available for Riverview Plaza's retail tenants throughout construction.  Exhibit C (Kastl Dep.) at 53:2-54:9 and Ex. 6; Exhibit B (Berliner Dep.) at 117:19 – 118:3.  For example, approximately 200 parking spaces in the portion of the existing parking lot closest to AutoZone, as well as the existing underground garage on the property, will be available the first seven months of construction. Exhibit A (Robbins Dep.) at 143:11 - 145:23.  Further, in response to discussions with AutoZone, AvalonBay modified the excavation plan for the basement to eliminate a portion of underground parking originally proposed, and has considered the dedication of 15 parking spaces for AutoZone in front of its store during the entire construction process.  AvalonBay also expressed a general willingness to work with AutoZone regarding parking logistics during construction.  Exhibit A (Robbins Dep.) 178:21-180:16.

30.    During months one through seven, approximately two hundred (200) parking spaces at grade for retail customers and employees will exist in the "Western Lot".  Exhibit H and Robbins 143:11 – 145:23.

**Response:**    Admitted.  The "Western Lot," which is the portion of the existing surface parking lot closest to the AutoZone store, will remain open during the first phase of construction. Exhibit A (Robbins Dep.) at 144:9 - 15.

31.    During months eight through twenty-one, there will be no parking at grade. Exhibit H.

**Response:**    Denied.  During months eighteen through twenty-one, in addition to the underground parking available in garage 1, surface parking in the upper level of garage 2 (on the

existing Pathmark space) will be available to retail customers.  Exhibit A(Robbins Dep.) 146:8 -147:22.  In addition, AvalonBay has considered providing to AutoZone 15 dedicated spaces in front of its store during all phases of construction, and has expressed a willingness to work with AutoZone regarding parking logistics during construction.  Exhibit A (Robbins Dep.) at 178:21-180:16.

    32.    During construction, there will be significant business interruption and disruption. Robbins 143:11 – 145:23 and Exhibit H.

**Response:**    Denied.  AvalonBay has developed phased construction plans to ensure that AutoZone retail customers will be afforded sufficient parking and access to Riverview Plaza throughout construction.  Exhibit C (Kastl Dep.) at 54:5-9; Exhibit B (Berliner Dep.) at 117:19 -118:3.  In addition, AvalonBay has offered to work with AutoZone regarding parking logistics during construction, and has considered providing 15 dedicated parking spaces to AutoZone in front of its store during the entire construction phases.  Exhibit A (Robbins Dep.) at 178:21-180:16.

    33.    On February 7, 2002, AvalonBay admitted that there will be an impact upon tenants during construction.  Exhibit G.

**Response:**    Admitted that in a letter addressed to Ritz, AvalonBay's real estate counsel referenced impacts during construction, as well as efforts to be undertaken by AvalonBay to avoid disruption or adverse impacts to tenants.  AvalonBay denies, however, any suggestion that the February 7, 2002 letter constitutes an admission that construction would impact the tenants in a manner that would breach their lease rights.  Rather, AvalonBay committed to use all commercially reasonable efforts not to disrupt or adversely impact the tenants during all stages

of construction.  Plaintiff's Exhibit G (Letter from Allen Roberts of Day, Berry & Howard to Eric Berliner).  AvalonBay has developed the Riverview Plaza project with full contemplation of the tenants' interests that there be sufficient parking, access to the premises for their customers, and visibility.  Exhibit A (Robbins Dep.) at 54:11 - 56:19; 64:4 - 65:4.

34.    At present, travelers proceeding westerly on Cross Street who approach the intersection of Belden Avenue with the Premises on their left have a clear view across the open parking lot of the retail stores including AutoZone and its storefront sign.  Exhibit B.

**Response:**    Denied.  AvalonBay denies that the photographs included in Exhibit B establish that travelers proceeding westerly on Cross Street who approach the intersection of Belden Avenue have a clear and uninterrupted view across the parking lot of the AutoZone store and its storefront sign from all locations on Cross Street.  In certain locations, such travelers do not have a clear view of the storefront because of cars in the parking lot and trees along Cross Street which impact the view.  Exhibit A (Robbins Dep.) 85:17 - 86:22, 100:5 - 100:11, 101:16 - 102:2.

35.    At present, travelers proceeding southerly on Belden Avenue who approach the intersection with Cross Street with the Premises in front of them have a clear view across the open parking lot of the retail stores including AutoZone and its storefront sign.  Exhibit B.

**Response:**    Denied.  The photographs included in AutoZone's Exhibit B do not establish that there is a clear view of the AutoZone store for travelers proceeding southerly on Belden Avenue approaching the intersection with Cross Street.  In fact, certain obstructions of view are depicted in the photographs.

36.     If the Proposed development is built, there will be significant reduction in visibility.  Exhibit A, PK0055, PK0059, PK0062 and PK0069.

**Response:**     Denied.  Visibility of the AutoZone store from portions of Belden Avenue will not be affected by the Proposed Development.  Exhibit A (Robbins Dep.) 84:7 - 15.  In addition, visibility of the AutoZone store and its signage are currently obstructed for travelers from certain portions of Cross Street and Belden Avenue.  (See Responses to ¶¶ 8, 34, 35).  AvalonBay will be constructing signage along Cross Street, which will alert travelers on Cross Street to the presence of the AutoZone store.  Exhibit A (Robbins Dep.) at 84:19 - 86:22; Exhibit B (Berliner Dep.) at 73:3 – 12, 134:1 - 7.

37.     For travelers going westerly on Cross Street, there will no longer be any visibility of the AutoZone Store or its sign.  Exhibit A, PK0055, PK0059, PK0062 and PK0069.

**Response:**     Denied.  See Response to ¶ 36.

38.     For travelers going southerly on Belden Avenue, there will no longer be clear visibility across an open field parking lot of the AutoZone Store or its sign.  Exhibit A, PK0055, PK0059, PK0062 and PK0069.

**Response:**     Denied.  This view is currently partially obstructed.  The existing pylon sign in front of the AutoZone store which obstructs the view will be removed.  The AutoZone storefront on Belden Avenue will remain visible and a pylon sign will be added at the corner of Cross Street and Belden Avenue.  Exhibit A (Robbins Dep.) at 84:7 – 15, 84:19 – 86:22; Plaintiff's Exhibit A at PK0055; Plaintiff's Exhibit B (photos).

-14-

39.    There will also be very substantial and numerous trees planted along Belden Avenue that will further block any remaining view cars may have had of the AutoZone store from the Belden/Cross intersection.  Exhibit A, PK0062 and PK0069.

**Response:**    Denied.  AvalonBay will landscape Riverview Plaza in accordance with Norwalk zoning requirements.  AvalonBay denies that Exhibit A establishes that "any remaining view" of the AutoZone store for drivers from the Belden/Cross intersection will be blocked.

40.    After the Proposed Development there will be 82 parking spaces shared between residential and retail.  Exhibit A, PK0057.

**Response:**    Denied.  AvalonBay and Ritz have contracted to provide 165 parking spaces to Riverview Plaza's retail tenants during business hours once construction is complete.  Plaintiff's Exhibit D (Amendment No. 2) at RR00044-45; Exhibit C (Kastl Dep.) at 89:4-14 and Ex. 16.

41.    The parking will be reduced by more than 35%.  Thus, AutoZone is entitled to the exclusive use of fifteen (15) spaces in the Reserved Parking Area.  Exhibit C.

**Response:**    Denied.  See Response to ¶ 26(c) above.

42.    The Proposed Development does not allow for any parking in the Reserved Parking Area.

**Response:**    Denied.  Retail parking spaces, including 15 spaces dedicated to the exclusive use of AutoZone's customers, will be located on the footprint of the existing surface parking lot in a location as convenient for AutoZone's customers as the current parking configuration.  Compare

-15-

Plaintiff's Exhibit C (Lease) at JM00365 with Plaintiff's Exhibit A (Site Plan Application) at PK0059.

43. The character of the parking will be changed from an open field to covered parking under a building with limited access. Exhibit A, PK0059, Exhibit B, JM00369.

**Response:** Admitted that the parking will be changed from an open field to covered parking at grade. Denied that there will be limited access as a result.

44. Presently, there are two (2) points of ingress and egress to the open field parking lot in Riverview Plaza. Exhibit A, PK0056.

**Response:** Admitted.

45. After the Proposed Development, there will remain the same access off the street; however, interior circulation will be dramatically changed. Exhibit A, PK0059.

**Response:** Admitted that access to the surface parking lot from the street will remain the same. Denied that interior circulation at Riverview Plaza will be dramatically changed and that internal circulation after development will not be convenient for retail customers. Interior circulation at Riverview Plaza will be enhanced by widening Burnell Boulevard and converting it into a two-way road, which will allow for full circular access around the shopping center. Exhibit A (Robbins Dep.) at 113:10 – 15; 147:23 – 148:3. In addition, traffic circulation will be enhanced by the creation of dedicated loading areas in front of the retail stores such that delivery trucks need not park in the fire lane. Plaintiff's Exhibit A (Site Plan Application) at PK0059.

46.    There will no longer be many drive aisles.  From Belden Avenue, there will be one (1) entry point to the parking closest to AutoZone.  It will be covered and under a building.  There are no close parking spaces.  The customer must travel down the aisle and around if no spaces are available rather than enjoy the many options a customer now has.  Exhibit A, PK0059.

**Response:**    AvalonBay denies that there will be no close parking spaces and any implication in Paragraph 46 that parking or interior circulation at Riverview Plaza will be inconvenient for retail customers following construction.  Retail parking spaces, including 15 spaces dedicated to the exclusive use of AutoZone's customers, will be located in an area as convenient to the AutoZone store as the present parking configuration.  Moreover, the surface parking in front of the AutoZone store will continue to be accessible from both Cross Street and Belden Avenue.  Compare Plaintiff's Exhibit C (Lease) at JM00365 with Plaintiff's Exhibit A (Site Plan Application) at PK0059.

47.    Further, once parked, the distance of travel from the parking space to the AutoZone front door will increase.  Further, the travel for the customer will be restricted to the driveway in which cars are entering – there will be no sidewalk or crossing areas for retail customers.  Exhibit A, PK0059

**Response:**    Denied.  Retail parking spaces, including those dedicated to the exclusive use of AutoZone's customers, will be located on the footprint of the existing parking lot in a location convenient for AutoZone's customers.  Compare Plaintiff's Exhibit C (Lease) at JM00365 with Plaintiff's Exhibit A (Site Plan Application) at PK0059.  AutoZone's statement that customers will have to travel a greater distance to the front door is without support and ignores the fact that current travel distance is not uniform but varies given the use by multiple retailers and their

-17-

customers of a common parking area.  Moreover, the Proposed Development is designed with

concrete, traffic-calming pavers to act as a large sidewalk and crossing area for pedestrians and

retail customers.  Exhibit A (Robbins Dep.) at 155:22 – 157:5; Plaintiff's Exhibit A (Site Plan

Application) at PK0069.

48.    The existing site provides an ideal retail location on account of its location,

accessibility from major thoroughfares, accessibility from the parking lot to the store, excellent

visibility, and convenient customer friendly parking.  Exhibit I (Report of Robert Blank).

**Response:**    AvalonBay objects that Plaintiff's subjective characterizations and opinions are

not facts and therefore AvalonBay neither admits, nor denies them; to the extent that a response

is required, they are denied.  For example, with respect to the current location's desirability,

AutoZone considered leaving Riverview Plaza before it became aware of AvalonBay's proposed

development because AutoZone desired a larger retail space.  Deposition testimony of Shawn

Sheikhzadeh, AutoZone's Regional Manager, given on October 2, 2003  (Sheikhzadeh Dep.) at

28:14 – 30:17, copies of which are attached hereto as Exhibit D.  Indeed the Norwalk in-line

shopping center store is not a prototypical AutoZone store.  According to AutoZone's own

expert and real estate agent, Robert Blank, 90% of the deals he has closed for AutoZone involved

free-standing structures.  Deposition Testimony of Robert Blank, given on July 24, 2003 (Blank

Dep.) at 16:11 – 21, copies of which are attached hereto as Exhibit E.

49.    The Leased Premises has an end cap location with plentiful, unobstructed and

convenient open field parking. Exhibits A, B, C and I.

**Response:**    AvalonBay objects that Plaintiff's subjective characterizations and opinions are

not facts and therefore AvalonBay neither admits, nor denies them; to the extent that a response

is required, denied.  Moreover, AutoZone's statement is inconsistent with the fact that the lease

provides AutoZone with parking in a common parking lot shared by multiple retailers and their

customers.

50.    The parking is immediately adjacent to the Leased Premises.  Exhibits A, B, C

and I.

**Response:**    Admitted that the surface parking lot is adjacent to the Leased Premises.

However, not all parking spaces are close to the AutoZone store.  Many spaces are located a

significant distance from the store.  Given that AutoZone currently has no dedicated spaces and

shares the parking lot with numerous other tenants, the spaces closest to the store are not

necessarily available to AutoZone customers at any given time.  Plaintiff's Exhibit C (Lease, Art.

14) at JM 00365.

51.    Access to the parking spaces is excellent.  Exhibits A, B, C and I.

**Response:**    AvalonBay objects that Plaintiff's subjective characterizations and opinions are

not facts and therefore AvalonBay neither admits, nor denies them; to the extent that a response

is required, denied.  See Response to ¶ 50.

52.    The Leased Premises has:

    a.   Excellent visibility from Cross Street;

    b.   Excellent visibility from Belden Avenue;

    c.   Is located near Route 7;

    d.   Enjoys easy access from all directions;

    e.   Is located in an area close to population centers that utilize the retail
       center.

Exhibits A, B, C and I.

**Response:**    a.    AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.  See Responses to ¶¶ 8, 34.

b.    AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.  See Response to ¶¶ 8, 35.

c.    Admitted;

d.    AvalonBay objects that plaintiff's subjective characterization and opinion is vague and not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.

e.    AvalonBay objects that plaintiff's subjective characterization and opinion is vague and not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.

53.    The Proposed Development will negatively and adversely affect the desirability for AutoZone customers to frequent its store on account of:

a.  Reduced accessibility;

b.  Reduced visibility; and/or

c.  Reduced convenient parking.

Exhibits A, B, C and I.

**Response:**          a.          AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.  There will continue to be two points of ingress and egress from the southerly streets to Riverview Plaza.  Plaintiff's Exhibit A (Site Plan Application) at PK0056. Interior site circulation will be enhanced.  Exhibit A (Robbins Dep.) at 113:10 – 15; 147:23 – 148:3.

          b.          AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.  See Response to ¶¶ 8, 34-38.

          c.          AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.  See Response to ¶ 26(c).

54.          The benefit of the end cap location will be diminished on account of the placement of a new building adjacent to the store.  Exhibits A, B, C and I.

**Response:**          AvalonBay objects that plaintiff's subjective characterization and opinion is vague and not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.

55.          The desirability of parking will be diminished in at least the following ways:

          a.   No open field;
          b.   Obstructed parking;
          c.   Lack of convenient access to parking areas;
          d.   Lack of convenient access to the store from the parking areas.

Exhibits A, B, C and I.

**<u>Response</u>:**    Denied. The parking configuration under the Proposed Development will provide retail customers with convenient parking and access to the retail stores. See Responses to ¶¶ 26(c), 40, 42, 46-47, 53(a).

56.    Visibility will be significantly diminished in that a large building will be placed where the open parking field presently exists.

Exhibits A, B, C and I.

**<u>Response</u>:**    Denied. See Responses to ¶¶ 8, 34-38.

57.    The atmosphere of the shopping center will be altered in style and appearance making Riverview Plaza less desirable to a convenience auto parts retailer. Exhibits A and I.

**<u>Response</u>:**    AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it, to the extent a response is required, it is denied.

## II.    Disputed Issues of Material Fact Supporting AvalonBay's Opposition to Plaintiff's Motion for Summary Judgment

1.    AvalonBay disputes Plaintiff's characterization that travelers proceeding southerly on Belden Avenue and westerly on Cross Street have a clear view of AutoZone's storefront and signage. Such views are currently obstructed for drivers traveling on Cross Street and Belden Avenue when they are in certain locations. Exhibit A (Robbins Dep.) at 85:17 – 87:2, 96:13 – 97:19, 100:5 – 102:2; Plaintiff's Exhibit B (photos); Ritz Realty Exhibit (Berliner Affidavit), Attachment 3 (photos).

2.      AvalonBay disputes that the Proposed Development will reduce significantly the visibility of the AutoZone store.  In designing the development, AvalonBay has taken extensive steps to improve visibility from Cross Street.  Exhibit B (Berliner Dep.) at 74:18 – 75:12.  For example, AvalonBay will construct a large pylon sign along Cross Street to enable travelers on Cross Street to locate the AutoZone store.  Exhibit A (Robbins Dep.) at 84:19 – 86:22; Exhibit B (Berliner Dep.) at 73:3 – 12, 134:1 - 7.  The existing pylon sign impacting visibility from Belden Avenue will be removed.  No improvements are to be constructed between the Belden Avenue façade of the AutoZone store and the street.  Plaintiff's Exhibit A (Site Plan Application) at PK 0062.

3.      AvalonBay disputes that during construction parking will be inaccessible or inconvenient for retail customers at Riverview Plaza.  AvalonBay phased its construction plans to ensure that parking would remain available for Riverview Plaza's retail tenants throughout construction.  AvalonBay has considered the provision of 15 dedicated parking spaces to AutoZone during the entire construction process and has expressed a willingness to work with AutoZone regarding parking logistics during construction.  Exhibit C (Kastl Dep.) at 54:5 - 9, 58:8 - 59:12, 63:10 – 24 and Ex. 6; Exhibit B (Berliner Dep.) at 117:19 – 118:3; Exhibit A (Robbins Dep.) at 178:21 – 180:16.  Construction phasing could be accomplished in such a way that it always provides retail access to grade level parking.  Exhibit C (Kastl Dep.) at 62:25 – 63:9.

4.      AvalonBay disputes that during construction there will be significant business interruption and disruption.  AvalonBay's phased construction plan will provide retail customers with sufficient parking and access to Riverview Plaza throughout construction.  Exhibit C (Kastl Dep.) at 54:5-9.

-23-

5.     AvalonBay disputes that after the Proposed Development there will be only 82 parking spaces shared between residential and retail.  AvalonBay and Ritz have contracted to provide 165 parking spaces to Riverview Plaza's retail tenants during business hours once construction is complete.  Further, 15 spaces are to be provided for AutoZone's exclusive use. Plaintiff's Exhibit D (Amendment No. 2) at RR00044-45; Exhibit C (Kastl Dep.) at 89:4-14 and Ex. 16.

6.     AvalonBay disputes that the Proposed Development does not allow for the provision of 15 parking spaces for the exclusive use of AutoZone in accordance with Article 14 of the Lease and that there will not be any convenient parking spaces close to the AutoZone store.  Retail parking spaces, including 15 spaces dedicated to the exclusive use of AutoZone's customers, will be located proximate to the AutoZone store in an area currently utilized for parking and will be as convenient for AutoZone's customers as the current configuration. Compare Plaintiff's Exhibit C (Lease) at JM00365 with Plaintiff's Exhibit A (Site Plan Application) at PK0059.

7.     AvalonBay disputes that interior circulation at Riverview Plaza will not be convenient for retail customers after development.  Interior circulation at Riverview Plaza will be enhanced by widening Burnell Boulevard and converting it into a two-way road, which will allow for full circular access around the shopping center.  Exhibit A (Robbins Dep.) at 113:10 – 15; 147:23 – 148:3.  Also, the addition of dedicated loading spaces in front of the retail stores will enhance traffic circulation on site by eliminating the parking of delivery trucks in the fire lane.  Plaintiff's Exhibit A (Site Plan Application) at PK0059; Plaintiff's Exhibit C (Lease, Art. 14).

-24-

8.      AvalonBay disputes that AutoZone's existing site provides an ideal retail location.  AutoZone considered leaving Riverview Plaza before it became aware of AvalonBay's proposed development, in part because AutoZone desired a larger retail space.  Exhibit D (Sheikhzadeh Dep.) at 28:14 – 30:17.  Indeed, the Norwalk in-line shopping center store is not a prototypical AutoZone store.   According to AutoZone's own expert and real estate agent, Robert Blank, 90% of the deals he has closed for AutoZone involved free-standing structures.  Exhibit E (Blank Dep.) at 16:11 - 21.

9.      AvalonBay disputes that there will be no sidewalk or crossing areas for retail customers.  The Proposed Development is designed with concrete, traffic-calming pavers to act as a large sidewalk and crossing area for pedestrians and retail customers.  Exhibit A (Robbins Dep.) at 155:22 – 157:5; Plaintiff's Exhibit A (Site Plan Application) at PK0069.

10.     AvalonBay disputes AutoZone's contention that it will be unable to load goods through its front door.  Loading capabilities will be enhanced.  Exhibit A (Robbins Dep.) at 154:6 – 13, 182:16 – 185:9.  There will be dedicated loading spaces directly in front of the AutoZone store near the front door, as well as a loading area on Belden Avenue adjacent to the store.  Plaintiff's Exhibit A (Site Plan Application) at PK0059.  Means for loading and delivery will be maintained during construction as well.  Exhibit A (Robbins Dep.) at 182:16 – 185:9.

11.     Prior to signing their agreement for the purchase and sale of a portion of Riverview Plaza, AvalonBay and Ritz discussed the need to be in compliance with the tenants' leases and understood that any development needed to provide adequate parking, signage and visibility.  Exhibit B (Berliner Dep.) at 83:15 – 24.

-25-

12.    AvalonBay disputes that AutoZone's withholding of its consent to the Proposed Development has been reasonable.  From AvalonBay's provision of the preliminary plans to AutoZone in December, 2001, AvalonBay has offered to discuss the project and work with AutoZone in order to address any concerns of AutoZone.  AutoZone has been unresponsive in many instances and has summarily refused to enter a dialogue with AvalonBay.  Exhibit A (Robbins Dep.) at 70:4 – 71:5; Exhibit B (Berliner Dep.) at 78:3 – 79:12, Ex. 6.  Mr. McClain of AutoZone demanded from the outset that AvalonBay and Ritz cancel their plans.  Mr. McClain made this demand after spending no more than half an hour of his time considering the plans sent by Mr. Kinol.  Deposition testimony of James O. McClain given on August 26, 2003 at 121:10-14 and Ex. 4, copies of which are attached as Exhibit F.

13.    On April 18, 2002, AvalonBay presented AutoZone with a modified site plan, specifically designed to address AutoZone's concerns.  The plan:

- eliminated a sub-grade garage, in order to improve construction logistics
- provided AutoZone with 15 dedicated parking spaces
- included the installation of a new pylon sign
- set back and cut the corner of one apartment building to increase visibility of the AutoZone store
- provided new store fronts
- phased construction to maintain access and parking during construction
- designed the new parking field to wrap the retail space on two sides

Exhibit B (Berliner Dep.) at 121:6-7 and Ex. 15.

14.    To further address AutoZone's concerns, Mr. Robbins flew to Las Vegas to present AvalonBay's plans to AutoZone's Terry McKee.  Exhibit A (Robbins Dep.) at 111:20 – 112:2.  Mr. Robbins informed Mr. McKee of the modifications to the site plan and additional aspects of the project that would benefit AutoZone, including:

- the elimination of the Pathmark building, which previously demanded a majority of the parking field, to be replaced by additional parking to wrap the retail building with available parking in the front, on the side and below the retail space

- the enhancement and improvement of signage, bringing it closer to the intersection of Belden Avenue and Cross Street

- increased and enhanced circulation in the shopping area

- converting Burnell Boulevard in the rear of Riverview Plaza to a two-way road, which effectively creates full circular access around the shopping center

- enhancement of pedestrian access

- an increase in pedestrian traffic resulting from the creation of the river walk

- the addition of approximately 650 residential tenants, most of whom would own automobiles

Exhibit A (Robbins Dep.) at 111:20 – 114:21.

15.     Notwithstanding AvalonBay's modifications to the plans and offers to work with AutoZone, AutoZone has refused to give its consent to the development. Exhibit B (Berliner Dep.) Ex. 17 at 129:13-15.

16.     AutoZone still has not determined whether its business at Riverview Plaza will be impacted either during or after construction to support any commercial justification for withholding its consent.  During his deposition as a Rule 30(b)(6) witness designated by AutoZone, Alex Oliphant, AutoZone's Director of Research and Business Analysis, testified that he was not aware of any investigation or analysis undertaken by AutoZone concerning the potential impacts of the proposed development on the Norwalk AutoZone store.  Deposition testimony of Alex Oliphant given on September 30, 2004 at 14:12 – 17:6, 208:3-16, copies of which are attached hereto as Exhibit G.  William Gilmore, AutoZone's Vice President of Store Development, who verified AutoZone's original complaint, conceded during his deposition that

he was not familiar with enough of the details of the proposed development to make a reasonable assessment of whether there will be an adverse impact on the AutoZone store.  Deposition Testimony of William David Gilmore given on October 29, 2003 at 99:9 – 20, copies of which are attached hereto as Exhibit H.  Terry McKee, AutoZone's Director of Real Estate, testified that it was his "assumption" that there would be significant business interruption and disruption during construction.  Deposition testimony of Terry McKee given on September 3, 2003 at 218:11 – 20, copies of which are attached hereto as Exhibit I.

DEFENDANT,
AVALONBAY COMMUNITIES, INC.


By _____
        Joseph L. Hammer (ct00446)
        David M. Bizar (ct20444)
        Day, Berry & Howard LLP
        CityPlace I
        Hartford, CT  06103-3499
        Tel:  (860) 275-0100
        Fax:   (860) 275-0343
        E-mail: jlhammer@dbh.com
                dmbizar@dbh.com

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY that a copy of the foregoing was sent this 25th day of February, 2005, via first class mail, postage prepaid to:

Bruce L. Elstein, Esq.
Elstein & Elstein
1087 Broad Street
Bridgeport, CT  06604-4294
Phone:  (203) 367-4421
Fax:     (203) 366-8615


Andrew L. Houlding, Esq.
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT  06103-3101
Phone: (860) 493-3468
Fax:     (860) 724-3921


_____
Joseph L. Hammer