COPY

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

------------------------------

ADAP, INC.

   -vs-                              No. 303 CV 350(AWT)

RITZ REALTY CORP. and
AVALON BAY COMMUNITIES, INC.

------------------------------

      The deposition of PETER KASTL,

taken on behalf of the Plaintiff,

pursuant to Notice and Federal Rules

of Civil Procedure, before Stephen F.

Bernfeld, a Notary Public of the State

of Connecticut, on the 22nd day of

October, 2003, at 10:10 a.m, at the

law offices of Elstein & Elstein, P.C,

1087 Broad Street, Bridgeport,

Connecticut.

STEPHEN F. BERNFELD
Licensed Professional Reporter
5  Three Trees Lane
Trumbull, CT 06611-1729
(203) 268-5693
License #SHR.285

```
 1    A P P E A R A N C E S :

 2        For the Plaintiff:

 3            ATTY. BRUCE L. ELSTEIN
                  Elstein & Elstein, P.C.
 4                1087 Broad Street - Suite 401
                  Bridgeport, CT 06604
 5
          For the Defendant, Ritz Realty Corp:
 6
              ATTY. ANDREW L. HOULDING
 7                Rome, McGuigan & Sabanosh, P.C.
                  One State Street
 8                Hartford, CT 06103

 9        For the Defendant, AvalonBay Communities, Inc:

10            ATTY. JOSEPH HAMMER
                  Day, Berry & Howard, LLP
11                CityPlace 1
                  Hartford, CT 06103-3499
12

13    S T I P U L A T I O N S :

14          It is hereby stipulated and agreed by

15    and between the attorneys for the respective

16    parties hereto, that all defects as to Notice,

17    Service, Proof of the authority of the Notary

18    are hereby waived.

19          It is further stipulated and agreed that

20    all objections, except as to form, are reserved

21    until the time of trial.

22          It is further stipulated and agreed that

23    the deposition, after it has been transcribed,

24    the deponent may read and sign the transcript

25    before any competent authority.
```

```
 1             and mark them.
 2             (MARKED PLAINTIFF'S EXHIBIT 6 FOR IDENTIFICATION)
 3        Q    6 is PK 0021, 22, and 23.
 4             Showing you what we marked Exhibit 6, we just
 5   identified.  Who prepared that?
 6        A    Perkins Eastman.
 7        Q    Did you have involvement in its preparation?
 8        A    Not directly.  In discussions about it.  But,
 9   I didn't draw them, I didn't work out the preliminary
10   diagrams for this.
11        Q    When was it prepared?
12        A    I don't know.
13        Q    Do you have an approximation of the date?  Was
14   it in the spring of 2002, in the spring of 2003?
15        A    This is after that is set, and that is set.
16   This might have been summer or fall of '02.  More
17   likely, fall.
18        Q    What does that document depict?
19        A    Construction phasing.
20        Q    Did the construction of the project as to have
21   two buildings built, building 1 and building 2?
22        A    Yes.
23        Q    And the reason it was prepared, to show how it
24   would be accomplished in various phases?
25        A    Yes.
```

```
 1       Q    And which sections of which properties would
 2   be built and where construction vehicles would stage and
 3   where construction would be performed?
 4       A    Yes.
 5       Q    What was the purpose that that was prepared
 6   for in approximately fall of 2002?
 7       A    To study ways -- to verify if there was a way
 8   to economically phase the construction and keep parking
 9   available for the office and retail.
10       Q    Did you speak with anybody at AvalonBay about
11   a need to keep parking available for existing retail
12   tenants?
13           MR. HAMMER:  Object to the form.
14       Q    To the Riverview Plaza?
15       A    Yes.
16       Q    Who did you speak with?
17       A    That would have been primarily Mark Robbins.
18       Q    And what did he tell you about that issue?
19       A    Nothing in particular, other than we needed to
20   start thinking about phasing for this.
21       Q    And the first time that he came to you,
22   expressing the need to begin thinking about it, was
23   approximately when in the process?
24       A    Well, as I say, my guess is that this was
25   summer, fall of '02.
```

1  building was built. They would simply move on to the
2  second building in a continuous process. The total time
3  period to build this project could be 14 to 16 months.
4      Q   I think what you're saying is that there's
5  overlap between the phases.
6          Am I correct?
7      A   Yes. Yes.
8      Q   So, can you look at each phase as depicted in
9  Exhibit 6 and tell me approximately how long each phase
10 will take, knowing that we can't just simply add them up
11 to determine the total?
12     A   Well, this starts with showing demolition
13 of the supermarket and the existing garage, and
14 replacement with the new garage and surface parking.
15 That could be eight months, something like that. Six.
16     Q   Six months?
17     A   Something of that order.
18         This particular sequence then had the first
19 block to be built up here forward. That is about half
20 of building 1. You could probably complete that in
21 another ten months. Those numbers are a little soft,
22 because in this kind of project you start moving people
23 in one part of the building before it's entirely
24 complete at the other end of the building.
25         And then, this one divides into two parts,

a part 3A that is the completion of building 1, and then a 3B that is the construction of building 2, and it shows the phasing of the parking, so there's always some parking garage available with capacity to accommodate the residential and the commercial uses that are there.

Q  Am I correct that phase 1 and phase 2 may be constructed, for some portion, simultaneously?

A  They might be.

Q  Phase 1 would be demolition of the Pathmark building and construction of the underground surface parking?

A  Yes.

Q  And phase 2 would be the construction of building 1 in the area bordering Belden Avenue?

A  Correct.

Q  Construction staging area would be the remaining area of the parking lot as it presently exists, to the east of the construction on building number 1?  Except for an entrance and exit ramp?

A  Correct.

Q  And looking at page 2 of Exhibit 6.

Describe for me where cars would park for retail customers if phase 1 and phase 2 were being built simultaneously?

A  In the garage space below the level that you

```
 1    plan -- and I'm not promising anything about how it's
 2    ultimately going to be done.  Under this plan, this
 3    parking would be available if it was obstructed over
 4    here.
 5         Q    Okay.  Before obstructed by the --
 6         A    By construction.
 7         Q    By construction of building 1?
 8              MR. HAMMER:  Just for the clarity of the
 9         record.  I think the witness, just to clarify,
10         you were pointing to the surface parking to be
11         established over the old Pathmark space, and
12         then referring to a garage to be constructed
13         under the new building 1.
14              THE WITNESS:  Correct.
15         Q    So that, there would always be, during phases
16    1 and phase 2, ground-level parking available for
17    existing retail as depicted in Exhibit 6?
18         A    Yes.
19         Q    So, do you agree that phase 2 work can't start
20    until the phase one work is finished?
21              MR. HAMMER:  I object to the form.
22         A    Well, it can.
23              You might not want it to, for purposes of
24    retail convenience.
25         Q    But if phase 2 work begins, then there will be
```

1    the possibility of no grade-level parking for some
2    period of time?
3              MR. HAMMER:  I object to the form.  You
4         haven't defined what aspect of phase 2 work
5         you're referring to in that question.
6    A    The phasing of construction could be
7    accomplished in such a way that it always provided
8    retail access to grade-level parking or it could be
9    organized in such a way that it doesn't.
10   Q    And, what's shown in Exhibit 6, you can't tell
11   one way or the other; it's not definitive enough.
12        Is that true?
13             MR. HAMMER:  I object to the form.
14   A    Just read what it said.  "Phase one, existing
15   garage and supermarket to be demolished and replaced
16   with new garage and surface parking."  While at the same
17   time, you have the existing parking lot available for
18   retail and office.  There is, let's remember, under the
19   office building and retail, an undisturbed parking
20   garage.  Then, what's labeled as phase 2 here shows a
21   building to be built in a parking lot north of the
22   retail, and it depicts an available parking area east of
23   the retail in the old Pathmark site and accessible by
24   two aisles, one from Cross and one from Belden.
25             What's labeled phase 3 is shown as including

1  retail again?
2      A   Yes, parking layout proposed in Exhibit 10 and
3  the parking.
4      Q   In terms of the differences between the layout
5  in Exhibit 12, in terms of the number of spaces for
6  existing retail, are they the same?
7      A   The table shows both at 165.
8      Q   In terms of the distribution of the parking
9  between that under building 1 and that under building 2,
10 is that the same or different under those two documents?
11     A   It appears to be the same.
12         Both show 87 under building 2, both show 165
13 as a total. And I haven't added up what's shown
14 internally here under building 1.
15     Q   In terms of the traffic pattern between
16 Exhibit 10 and Exhibit 12, with the ground level parking
17 under building 1, is it the same or different?
18     A   In Exhibit 12, the gate has been moved deeper
19 into the garage.
20     Q   In other respects, the traffic pattern is the
21 same?
22     A   Yes.
23     Q   On both Exhibit 10 and 12, it shows loading at
24 the corner of Belden Avenue for the existing retail
25 building near the entranceway.

1   change, between the two variations?
2   For the existing retail.
3   A    The sum of Avalon retail and Ritz retail
4   stayed the same. Where 78 and 8 equals the 86 over
5   here.
6   Q    I see. So, one was combined with the two. I
7   see.
8   Was there any change in the number of spaces
9   under building 1, between Exhibits 12 and 15, for
10  ground-level parking?
11  A    No.
12  Q    Can you describe any differences with respect
13  to retail parking between Exhibits 12 and 15, for the
14  ground-level parking?
15  A    There don't appear to be any.
16  Q    As far as you can tell, would the only
17  difference be the removal of the notation of "AutoZone
18  parking only"?
19  A    Yes.
20  The real difference between these two is the
21  size of the basement garage under building 1.
22  Q    Okay. I'm not interested in that right now.
23  A    Yes, I know.
24  MR. ELSTEIN: Let's mark this.
25  (MARKED PLAINTIFF'S EXHIBIT 16 FOR IDENTIFICATION)

```
 1      Q    Showing you what we marked Exhibit 16.  Does
 2  that show a ground-level parking distribution dated
 3  June 10, '03, for the Avalon Norwalk project?
 4      A    Yes.
 5      Q    And it's PK0079 and 80.
 6           Correct?
 7      A    Correct.
 8      Q    It says SK2 as the first page.  Do you know
 9  what SK1 was?
10      A    No.
11      Q    In terms of the number of parking spaces for
12  retail, existing retail under building 1, are they the
13  same?
14      A    Yes.
15      Q    Under Exhibits 15 and 16?
16      A    Yes.
17      Q    And the same for retail for existing spaces
18  under building number 2?
19      A    Yes.
20      Q    As far as you can tell, the only difference is
21  the identification once again under Exhibit 16 of the 15
22  AutoZone spaces?
23      A    Yes.  And for some reason, it was useful to
24  identify a path for service vehicles; probably for some
25  regulatory episode at that time.
```

```
 1      Q    Have you performed any calculations to
 2 determine whether a 65-foot truck could make the turn
 3 depicted on Exhibit 16 at the end of the entranceway off
 4 Belden Avenue, taking a right to proceed out onto
 5 Burnell Boulevard?
 6      A    Yes, there was an evaluation of that as a
 7 truck-turning location.  Whether it was a 65-foot truck
 8 that was used or not, I don't know.  I'm not sure 65
 9 feet is legal in Connecticut.  But a semi-truck and fire
10 engine and full-sized moving van were used as the
11 criteria for that turn.
12      Q    Do you know for what purpose the AutoZone
13 spaces were again identified on Exhibit 16?
14      A    No.
15      Q    On Exhibit 16, there's some additional
16 notations about loading in the vicinity in front of the
17 existing retail space.
18           Do you see that?
19      A    Yes.
20      Q    Do you know how it came about that that was
21 added to the parking distribution?
22      A    Well, you'll notice on, I think, all of the
23 preceding diagrams that we've been looking at, that
24 loading bay is shown there.  Mark Robbins asked us to
25 show a pull-out truck-loading bay there.  Why it got
```

```
 1    labeled this time, I don't know.
 2        Q    Showing you a document.  Is that a series of
 3    e-mails between you and Mr. Robbins?
 4        A    Yes.
 5        Q    Concerning the access road in the interior of
 6    the project and the loading spaces?
 7        A    Yes.
 8        Q    Is this appropriately one document?
 9        A    Yes.
10             MR. HAMMER:  17.
11             MR. ELSTEIN:  Yes.
12        (MARKED PLAINTIFF'S EXHIBIT 17 FOR IDENTIFICATION)
13        Q    What we marked Exhibit 17 is that series of
14    e-mails, it starts with PK001, 2, 3, 6, 4, and 5.  And
15    have they been put in chronological order?
16        A    Yes.
17        Q    Describe what the object of these e-mails was.
18        A    To make the provision that we were just
19    discussing for a truck-parking bay on the north side of
20    the retail property in the muse.
21        Q    The e-mail interchange began October 12th of
22    2002?
23        A    Yes.
24        Q    And showing you what we marked Exhibit 9,
25    which is the parking diagram for October 24, 2002.  Does
```

C E R T I F I C A T E

STATE OF CONNECTICUT :

                ss. Trumbull, Connecticut.

COUNTY OF FAIRFIELD:


    I, Stephen F. Bernfeld, a Notary Public duly commissioner and qualified in and for the State of Connecticut, hereby certify, that in the action pending in the United States District, District of Connecticut, Case No. 303CV350(AWT), there came before me on the 22nd day of October, 2003, at 10:15 a.m, at the law offices of Elstein & Elstein, P.C, 1087 Broad Street, Bridgeport, Connecticut, the following named person, to wit:  PETER KASTL, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in the cause, that the witness was thereupon carefully examined upon his oath and his testimony taken by me stenographically and reduced to laser printing under my supervision; that the transcript is a true and accurate transcript of the testimony given, to the best of my ability.

    I further certify that I am neither counsel for nor related to any of the parties to the matter set forth herein or employed by any of the attorneys.

    Dated at Trumbull, Connecticut, this 11th day of November, 2003.

                                          _____
                                              Notary Public


My commission expires:
September 30, 2005.

                          Steve Bernfeld, LSR
                            (203) 268-5693

# PHASE ONE

CROSS STREET

NEW PYLON SIGN

PARKING FOR EXISTING RETAIL AND OFFICE

STAGING AREA FOR DEMOLITION AND CONSTRUCTION

CONSTRUCTION FENCE

BELDEN AVENUE

NORWALK RIVER

EXISTING ARCADE TO REMAIN

EXISTING GARAGE AND SUPERMARKET TO BE DEMOLISHED AND REPLACED WITH NEW GARAGE AND SURFACE PARKING

OTB TO REMAIN

GARAGE

BURNELL BOULEVARD

N

PLAINTIFF'S EXHIBIT

PK0021

# PHASE TWO

- NEW PYLON SIGN
- CROSS STREET
- THIS BUILDING TO BE BUILT FIRST
- STAGING AREA FOR CONSTRUCTION
- CONSTRUCTION FENCE
- CONSTRUCTION FENCE
- BELDEN AVENUE
- NORWALK RIVER
- EXISTING ARCADE TO REMAIN
- OTB TO REMAIN
- BURNELL BOULEVARD
- N

PK0022







PERKINS EASTMAN ARCHITECTS

Project: AVALON NORWALK
Project No.: 16560
Drawing Title: BSMT PARKING DISTRIBUTION
Drawing No.: SK-3
Date: 6/10/03
Scale: 1/80"=1'-0"

PK0080