UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADAP, INC. | : | CASE NO. 3:03CV350 (MRK) |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| RITZ REALTY CORP. and | : | |
| AVALONBAY COMMUNITIES, INC. | : | JULY 19, 2005 |

**<u>JOINT TRIAL MEMORANDUM</u>**

I.    **<u>TRIAL COUNSEL</u>**

For the Plaintiff, ADAP, Inc.:

> Bruce L. Elstein, Esq.
> Elstein and Elstein, P.C.
> 1087 Broad Street
> Suite 400
> Bridgeport, CT 06604-4260
> t (203) 367-4421
> f (203) 366-8615
> belstein@elstein-law.com

For the Defendant, Ritz Realty Corp.

> Andrew L. Houlding, Esq.
> Rome McGuigan, P.C.
> One State Street
> Hartford, CT 06103-3101
> t (860) 493-3468
> f (860) 724-3921
> ahoulding@rms-law.com

For the Defendant, AvalonBay Communities, Inc.

>Joseph L. Hammer, Esq.
>David M. Bizar, Esq.
>Day, Berry & Howard, LLP
>Cityplace I
>Hartford, CT 06103-3499
>t 860-275-0100
>f 860-275-0343
>jlhammer@dbh.com
>dmbizar@dbh.com

## II.     JURISDICTION

This court has jurisdiction over this matter by virtue of the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

## III.    LENGTH OF TRIAL

Counsel anticipate a trial length of 2-3 days.

## IV.    FURTHER PROCEEDINGS

The parties do not seek a ruling on any further proceedings prior to trial.

## V.     NATURE OF CASE

### A.     Plaintiff ADAP, Inc.'s Statement

First Count alleges anticipatory breach of the lease and seeks specific performance, injunctive relief, declaratory relief and legal costs.

Second Count alleges breach of the lease and seeks specific performance, injunctive relief, declaratory relief and legal costs.

Third count alleges breach of the covenant of good faith and fair dealing and seeks specific performance, injunctive relief, declaratory relief and legal costs.

B.    **Defendant Ritz Realty Corporation's Statement**

Ritz defends against Plaintiff's claims on the grounds that Plaintiff unreasonably withheld its consent to the Proposed Development, and has in this and other ways breached the Lease and relieved Ritz of its reciprocal obligations. Further, Plaintiff should be denied equitable relief because it comes before the Court with unclean hands. Since the Lease permits development of the shopping plaza, its provisions should be given effect so that Ritz and AvalonBay may consummate a purchase and sale agreement that will benefit the entire Norwalk community. Moreover, Plaintiff is attempting to preserve an artificial status quo that arose from Ritz's longstanding inability to rent the former Pathmark grocery space at the site, and the resulting unbargained-for low parking demand at the site.

C.    **Defendant AvalonBay Communities, Inc.'s Statement**

AvalonBay joins in the above statement of Ritz Realty. Further, notwithstanding Plaintiff's unreasonable withholding of its consent to the proposed development, Plaintiff could not, as a matter of law, establish an entitlement to injunctive relief or specific performance as claimed. This is because Plaintiff has an adequate damage remedy at law, cannot establish that it will suffer irreparable harm if the Proposed Development goes forward, and the balance of the equities weighs heavily in favor of the Defendants.

VI.    **STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.    **STIPULATIONS**

(1).    *Parties*

1.    Plaintiff ADAP, Inc. (n/k/a AutoZone Northeast, Inc. and d/b/a AutoZone) is a wholly owned and controlled subsidiary of AutoZone, Inc. ("AutoZone"). AutoZone regards

-3-

itself as the nation's leading specialty retailer of automotive parts and accessories. AutoZone is a New Jersey corporation with its principal place of business located at P.O. Box 2198, Memphis, Tennessee 38101-9842.

2.      As of November 20, 2004, AutoZone operated 3,448 retail stores in the United States and 64 additional stores in Mexico.

3.      AutoZone has 27 stores in Connecticut.

4.      On February 17, 1998, AutoZone acquired ADAP, which was doing business in six northeastern states as Auto Palace, an automotive parts and accessories chain.

5.      Upon the closing of its acquisition of ADAP, AutoZone assumed control and operation and took over the name and format of all of Auto Palace's 112 stores, including the store located at Riverview Plaza, Norwalk, Connecticut, that is the subject of this action.

6.      Defendant Ritz Realty Corp. ("Ritz") is the owner of that certain piece or parcel of real property known as "Riverview Plaza" located at 24 Belden Avenue, Norwalk, Connecticut ("Premises"). Ritz is a Connecticut corporation with its principal place of business located at 24 Belden Avenue, Norwalk, Connecticut 06810.

7.      Defendant AvalonBay Communities, Inc. ("AvalonBay") is a developer of high-quality apartment communities in the Northeast, Mid-Atlantic, Midwest, Pacific Northwest and Northern and Southern California regions of the country. AvalonBay is a Maryland corporation with its principal executive offices located at 2900 Eisenhower Avenue, Suite 300, Alexandria, Virginia 22314.

(2).    *AutoZone Lease*

8.    On or about April 17, 1997, prior to AutoZone's acquisition of ADAP, ADAP and Ritz entered into a written lease ("Lease") pursuant to which ADAP exclusively leased a portion of Riverview Plaza, located in the southwest portion of the existing building located closest to the access way from Belden Avenue, consisting of approximately 5,680 square feet (the "Leased Premises").

9.    The Lease contains an initial term of ten years commencing not later than October 1, 1997, followed by two successive renewal terms each of five years.

10.    Riverview Plaza includes an office building, retail buildings (one of which is vacant), and a building operated as an off-track betting facility.

11.    A surface parking lot is located on the portion of Riverview Plaza abutting Belden Avenue and Cross Street and has entrances and exits to both of those roadways.

12.    There is an underground parking garage at Riverview Plaza, which has access to Burnell Boulevard.

13.    Since February 26, 1998, AutoZone has operated the Leased Premises as an AutoZone store.

B.    **PLAINTIFF'S PROPOSED FINDINGS OF FACT AND DEFENDANTS' RESPONSES**

<u>**Plaintiff's Proposed Finding of Fact**</u>:

(1).    *Riverview Plaza*

1.    Ritz Realty Corp. ("Ritz") is the owner of that certain piece or parcel of real property known as "Riverview Plaza" located at 24 Belden Avenue, Norwalk, Connecticut ("Premises"). See complaint ¶ 7 and Ritz' answer (admission) thereto and testimony of Eric Berliner.

<u>**Ritz's Response**</u>:  See AvalonBay's Response, below.

<u>**AvalonBay's Response**</u>:  Admitted.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

2.    AvalonBay Communities, Inc. ("AvalonBay") submitted plans ("Plans") to construct two (2) apartment buildings on a portion of the Premises. Plans and testimony of Mark Robbins.

<u>**Ritz's Response**</u>:  See AvalonBay's Response, below.

<u>**AvalonBay's Response**</u>:  Admitted. On or about November 26, 2002, AvalonBay submitted a site plan application ("Application") to the Norwalk Zoning Commission pertaining to Riverview Plaza (the "Development Plan"). See Rule 26(f) Report, Statement of Undisputed Facts) at § VII.N; Plaintiff's Local Rule 56(a)(2) Statement at ¶ 24; Defendant AvalonBay Communities, Inc.'s Local Rule 56(a)(2) Statement at ¶ 22. The "Development Plan" calls for the construction of two four-story apartment buildings, one over a portion of the surface parking lot and the other over the vacant retail building located within Riverview Plaza which formerly housed a Pathmark grocery store. See Defendant AvalonBay Communities, Inc.'s Local Rule 56(a)(2) Statement at ¶¶ 2, 23. The Development Plan will create 312

residential apartment units and approximately 1,500 square feet of retail space and parking areas. See Rule 26(f) Report, Statement of Undisputed Facts) at § VII.R; Plaintiff's Local Rule 56(a)(2) Statement at ¶ 26; Defendant AvalonBay Communities, Inc.'s Local Rule 56(a)(2) Statement at ¶ 26. The Development Plan does not call for any structural additions to the building where AutoZone is located and provides for exterior improvements, consisting of façade renovations to the exterior of the building and the addition of trees and landscaping along Belden Avenue to the south of the AutoZone store. See Defendant AvalonBay Communities, Inc.'s Local Rule 56(a)(2) Statement at ¶¶ 24 - 26.

> **Plaintiff's Proposed Finding of Fact:**

3.    The Norwalk Planning and Zoning Commission granted site plan approval of the Plans. See complaint ¶ 38 and answers (admissions) thereto.

> **Ritz's Response:**  See AvalonBay's Response, below.

> **AvalonBay's Response:**  Admitted. On February 26, 2003, the Norwalk Zoning Commission approved AvalonBay's application. See Rule 26(f) Report, Statement of Undisputed Facts) at § VII.R; Plaintiff's Local Rule 56(a)(2) Statement at ¶ 27; Defendant AvalonBay Communities, Inc.'s Local Rule 56(a)(2) Statement at ¶ 3. AutoZone appeared before the Zoning Commission and objected to AvalonBay's application at the public hearing. See Rule 26(f) Report, Statement of Undisputed Facts) at § VII.Q; Plaintiff's Local Rule 56(a)(2) Statement at ¶ 28. AutoZone did not appeal the Zoning Commission's approval to the Connecticut Superior Court. See Rule 26(f) Report, Statement of Undisputed Facts at § VII.S; Plaintiff's Local Rule 56(a)(2) Statement at ¶ 29.

**Plaintiff's Proposed Finding of Fact:**

4.      Riverview Plaza presently has retail space with a large open field parking area immediately adjacent to it, has excellent visibility from all surrounding roads and is easily accessible from points of ingress and egress from Belden Avenue and Cross Street.  Plans, pictures and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted that Riverview Plaza has a surface parking lot on the portion of Riverview Plaza abutting Belden Avenue and Cross Street.  Plaintiff's assertions that the parking area is "large" and "easily" accessible from Belden Avenue and Cross Street, and that the retail space at Riverview Plaza has excellent visibility from all surrounding roads, are subjective characterizations, not facts.  Subject to and without waiving the foregoing objection, denied.  For example, the view of AutoZone's storefront is obstructed for drivers traveling on Cross Street and Belden Avenue in certain locations and AutoZone's customers must compete for parking spaces with other Riverview Plaza tenants and courthouse parkers from across the street because there are presently no dedicated or reserved spaces for AutoZone customers.  Plans, photographs, demonstrative exhibits, testimony of Mark Robbins, Eric Berliner and Peter Kastl, and deposition testimony of Ken Murray, Susan Valenti, John Michael Martin, Shawn Sheikhzadeh and James Butler.

(2).    *AutoZone Lease*

**Plaintiff's Proposed Finding of Fact:**

5.      On or about April 17, 1997, ADAP and Ritz entered into a written lease ("Lease") for ADAP to exclusively occupy a portion of Building #1 of Riverview Plaza consisting of

approximately Five Thousand Six Hundred Eighty (5,680) Square Feet (the "Leased Premises").
Lease and testimony of James O. McClain.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.  ADAP entered into the lease with Ritz prior
to AutoZone's acquisition of ADAP.  AutoZone management, therefore, was not involved in the
evaluation or selection of the Riverview Plaza store location.  Testimony of James McClain.

**Plaintiff's Proposed Finding of Fact:**

6.       The Leased Premises is located in the corner location, or "end cap", of Building
#1 - closest to the access way from Belden Avenue.  Plans, lease and testimony of Robert Blank
and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

7.       The AutoZone store has frontage along the open parking lot and Belden Avenue.
Plans, pictures and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

8.       AutoZone has a large sign on the front of its store that is visible from the open
parking lot, Cross Street and Belden Avenue.  Pictures and testimony of Robert Blank and Alex
Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted that AutoZone has signage on the front of its store which is visible from the open parking lot, and portions of Belden Avenue and Cross Street. However, views of the signage are obstructed from certain locations on Cross Street and Belden Avenue.  The pylon sign at the Belden Street entrance to the surface parking lot near the AutoZone store has been broken for approximately three years and contains no AutoZone signage.  Prior to the damaging of the sign during a storm (and, if the sign were to be repaired), the sign had the effect of interfering with views of the AutoZone store from certain locations on Belden Avenue and/or Cross Street.  Photographs, demonstrative exhibits and testimony of Mark Robbins, Eric Berliner and Peter Kastl.

**Plaintiff's Proposed Finding of Fact:**

9.     The lease provides the lessee, among other rights, use and occupancy of the Leased Premises for an initial term of ten (10) years commencing not later than October 1, 1997, followed by two (2) successive renewal terms each of five (5) years.  Lease and testimony of James O. McClain.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

10.     ADAP and Ritz agreed in Article 1 of the lease as follows:

Landlord agrees that at all times during the term of this lease, adequate roadways and passageways shall be provided at the building for passage by motor vehicles and on foot between the leased premises, the parking areas and the public streets, and highways adjoining the building.  Landlord further agrees that Exhibit A is a complete and accurate representation of the layout of the building, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements shown thereon, now completed or under construction or planned for [Riverview Plaza], as well as of the locations of the store enterprises noted thereon and that the layout thereof, as shown on Exhibit A will be adhered to in the development of [Riverview Plaza] and/or any subsequent expansion

and/or alteration thereof so as to maintain the relative position of the buildings, the parking areas, the roadways and passageways, and the spaces of the tenants, all as shown on Exhibit A. Landlord agrees that there shall be no change whatever in the location, shape or dimensions of the premises hereby demised, and no substantial change in [Riverview Plaza] layout which would in any manner or to any degree adversely or materially affect the accessibility to the leased premises from the parking areas or the visibility of tenant's signs or storefront, without tenant's prior written consent in each instance, which consent shall not be unreasonably withheld. Landlord further agrees not to place any free-standing buildings, kiosks, planters, trees, shrubs, stairs or other obstructions any place in front of the leased premises so as to affect the accessibility to or the visibility of the leased premises without first obtaining tenant's written consent, which consent shall not be unreasonably withheld or delayed.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Admitted.

**Plaintiff's Proposed Finding of Fact:**

11. ADAP and Ritz agreed in Article 14 of the lease as follows:

Landlord agrees throughout the term of this Lease to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition and properly lighted and cleaned. The aforesaid obligations of Landlord shall include maintaining and at all times having adequate means of ingress and egress to and from accepted highways and public streets …

All of the aforesaid obligations of Landlord shall be performed in accordance with good and accepted real estate practices throughout the term of this lease, Landlord recognizing that all of said common areas must be available at all times, in good and attractive order and condition, to serve Tenant's customers, employees and invitees.

\*                          \*                          \*

Landlord acknowledges that due to the fact the Premises has no rear loading door or dock, Tenant must unload its deliveries of goods and products to the Premises through the front door via access from the parking area in front of the Premises. Landlord agrees that, notwithstanding anything in this Lease to the contrary or any rules and regulations now or hereafter established by Landlord for tenants of the shopping center, Tenant shall be permitted to load and unload its goods and products through the front door of the Premises.

B. Landlord agrees that throughout the term of this Lease it shall provide and maintain, in good order and condition, paved and line painted parking areas

adjacent to the building for use by Tenant's customers and invitees, which parking shall comply with all local ordinances and regulations applicable thereto including with respect to the required ratio parking spaces to area of the leased premises.  If at any time during the term hereof the total parking area shall be decreased permanently by more than thirty-five percent (35%), than in such event Landlord shall designate and reserve for the exclusive use of Tenant's customers (including by cordoning off spaces to identify them as reserved for Tenant's customers) fifteen (15) parking spaces within the cross-hatched area identified on Exhibit A hereto and Landlord shall enforce such parking restrictions as may be reasonably necessary to ensure the [exclusiveness] of such parking spaces.  If Landlord shall fail to provide such parking or to enforce restrictions as are reasonably necessary to ensure such parking to Tenant's customers and such failure shall continue for thirty (30) days after notice from Tenant, then Tenant may, in lieu of the fixed annual rent herein specified, pay to Landlord a reduced rent equal to three (3%) percent of its gross sales from the leased premises, plus all utilities it is required to pay under this Lease, until such time as the situation is remedied by Landlord;  provided, however, that if such failure shall continue for more than ninety (90) days after such notice, then Tenant may cancel and terminate this Lease upon written notice to Landlord of such termination. Landlord further agrees that it will use reasonable efforts to limit access to parking in the parking areas of the Shopping Center to patrons of the Shopping Center and will establish and use reasonable efforts to enforce such parking restrictions as may be necessary in order for that to occur.

> **Ritz's Response:**  See AvalonBay's Response, below.

> **AvalonBay's Response:**  Admitted.

> **Plaintiff's Proposed Finding of Fact:**

12.    At present, there exist 262 parking spaces in the open field lot.  Lease.

> **Ritz's Response:**  See AvalonBay's Response, below.

> **AvalonBay's Response:**  Admitted.

> **Plaintiff's Proposed Finding of Fact:**

13.    The Lease dedicated at least fifteen (15) parking spaces ("Reserved Parking Area") to AutoZone if parking were reduced in the open lot by more than 35%.  Lease and testimony of James O. McClain.

> **Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  The Lease provides that the Landlord shall designate and reserve fifteen parking spaces for the exclusive use of Tenant's customers if parking is reduced <u>permanently</u> by more than 35%.  Lease, Article 14(B) (emphasis added).

**Plaintiff's Proposed Finding of Fact:**

14.    Parking for retail use in the present open field lot will be reduced by more than 35% if the Proposed Development is built.  Plans and site approval.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Moreover, as a result of the vacancy since 1998 of the 49,000 square feet, formerly occupied by a Pathmark Supermarket, the parking demand in the surface parking lot has been substantially less than it would have been if the former Pathmark space had been rented because customers of any tenant in that space would utilize the parking lot.  The AutoZone Lease does not in any way preclude or impact the ability of Ritz to lease the former Pathmark space, including to another grocer.  Plans and testimony of Mark Robbins, Eric Berliner and Peter Kastl.

(3).    *AvalonBay's Contract*

**Plaintiff's Proposed Finding of Fact:**

15.    On October 17, 2001 Ritz entered into a contract ("Contract") for the purchase and sale of a portion of the Premises to AvalonBay.  AvalonBay is the contract buyer of the portion of the Premises including the open parking lot.  See complaint ¶¶ 29 and 30 answers (admissions) thereto.  Contract.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

16.    Pursuant to the Contract, AvalonBay had the right to conduct due diligence and to terminate the Contract "… for any other reason whatsoever, or for no reason …".  Contract.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "AvalonBay had the right to conduct due diligence and to terminate the Contract '… for any other reason whatsoever, or for no reason …" is irrelevant.  Subject to and without waiving the foregoing objection, AvalonBay admits that the Contract provided for such a right prior to the end of the due diligence period.  Contract.

(4).    *AvalonBay's Knowledge of AutoZone's Lease*

**Plaintiff's Proposed Finding of Fact:**

17.    On or about October 31, 2001 and during the due diligence period, AvalonBay was provided a copy of the plaintiff's Lease.  Receipt, Valente deposition and testimony of Allen J. Roberts, III.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "[o]n or about October 31, 2001 and during the due diligence period, AvalonBay was provided a copy of the plaintiff's Lease" is irrelevant.  Subject to and without waiving the foregoing objection, admitted.

**Plaintiff's Proposed Finding of Fact:**

18.    On or before October, 2001, Day, Berry & Howard LLP commenced to represent AvalonBay Communities, Inc. in the purchase and sale of a portion of the premises referred to as "Riverview Plaza" in Norwalk, Connecticut.  Testimony of Allen J. Roberts, III.

**Ritz's Response:**  See AvalonBay's Response, below.

-14-

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

19.     AvalonBay identified the terms of plaintiff's Lease, and in particular, Article 1 thereof, as providing a potential basis for objecting to the Proposed Development.  Letters of January 29, 2002 and February 7, 2002 and testimony of Allen J. Roberts, III.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "AvalonBay identified the terms of plaintiff's Lease, and in particular, Article 1 thereof, as providing a potential basis for objecting to the Proposed Development" and the letters of January 29, 2002 and February 7, 2002, are irrelevant.  Subject to and without waiving the foregoing objection, AvalonBay admits that in the letters addressed to Ritz, AvalonBay's real estate counsel raised the issue of whether the Lease would give tenants a potential basis for objecting to the Proposed Development, but denies any suggestion that AvalonBay believed that any such objection or the withholding of consent to the Proposed Development by AutoZone would be reasonable.

(5).     *AvalonBay's Proposed Development*

**Plaintiff's Proposed Finding of Fact:**

20.     By application dated November 26, 2002 ("Application"), AvalonBay submitted a site plan review application with the Norwalk Zoning Commission ("Proposed Development").  See complaint ¶ 31 and answers (admissions) thereto.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

21.    The Proposed Development consists of construction of two (2) new multi-story buildings, one in the area now used as an open parking lot and the other in an area formerly housing a Pathmark grocery store.  See complaint ¶ 32 and answers (admissions) thereto.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

22.    AvalonBay does not intend to make any structural additions to the building where AutoZone is located, but intends on making "improvements" to the exterior thereto.  Plans and testimony of Mark Robins and Peter Kastl.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted that the plan approved by the Norwalk Zoning Commission does not call for any structural additions to the building where AutoZone is located and provides for improvements to the exterior of the building.

**Plaintiff's Proposed Finding of Fact:**

23.    The "improvements" consist of façade renovations and the addition of trees and landscaping along Belden Avenue.  Plans and testimony of Mark Robbins and Peter Kastl.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted that the improvements consist of façade renovations.  Denied that the approved landscaping plan calls for the planting of trees or landscaping along the portion of Belden Avenue abutting the façade of the AutoZone store.  Site Plan Application, plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

24.     The Proposed Development will result in the:

    a.     Addition of 312 residential units;

    b.     Addition of 1,500 square feet of retail space;

    c.     Reduction of parking spaces in the open parking lot;

    d.     Installation of landscaping trees along Belden Avenue.

See complaint ¶ 33 answers (admission) thereto, plans and testimony of Peter Kastl and Mark

Robbins.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**

    a.     Admitted;

    b.     Admitted;

    c.     Denied.  Although the absolute number of parking spaces in the existing open parking lot will be reduced, the ratio of parking spaces to retail space (inclusive of the AutoZone space) will increase upon the completion of the Proposed Development.  Riverview Plaza currently consists of approximately 100,000 square feet of retail space with 262 surface parking spaces, or about one parking space for every 382 square feet of retail space.  Following construction, there will be 165 surface parking spaces to service approximately 40,000 square feet of retail space, or about one parking space for every 242 square feet of remaining retail space.  These spaces will be located in the footprint of the existing lot and on the footprint of the old Pathmark space.  In addition, AutoZone will be provided fifteen parking spaces proximate to AutoZone's store for the exclusive use of its customers on the footprint of the existing lot.  Lease, plans, and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.  See also AvalonBay's Response to ¶ 42, below.

    d.     Admitted that the plan includes such trees along Belden Avenue adjacent to the proposed building.

(6).    *AutoZone's Objection to the Proposed Development*

**Plaintiff's Proposed Finding of Fact:**

25.    Beginning in January 2002, the plaintiff has continuously and strenuously objected to the Proposed Development. Faxes dated January 3, 2002 and January 8, 2002 and testimony of Terry McKee, Mark Robbins and James O. McClean.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Admitted.

(7).    *The Proposed Development – During Construction*

**Plaintiff's Proposed Finding of Fact:**

26.    AvalonBay has represented that the Proposed Development will take approximately eighteen to twenty-one (18 - 21) months to complete. Memo and testimony of Mark Robbins.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Admitted.

**Plaintiff's Proposed Finding of Fact:**

27.    During construction, parking will be altered and the existing open field parking lot will be closed or largely inaccessible to customers, employees and invitees of AutoZone. Memo and testimony of Mark Robbins.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Denied. Although certain activities will take place in the parking lot, AvalonBay has developed phased construction plans to ensure that parking would remain available for Riverview Plaza's retail tenants throughout construction. For example, approximately 200 parking spaces in the portion of the existing parking lot closest to

AutoZone, as well as the existing underground garage on the property, will be available the first seven months of construction. Further, in response to discussions with AutoZone, AvalonBay modified the excavation plan for the basement to eliminate a portion of underground parking originally proposed, and has considered the dedication of 15 parking spaces for AutoZone in front of its store during the entire construction process. AvalonBay also expressed a general willingness to work with AutoZone regarding parking logistics during construction. Phase One Diagram (PK0021) and testimony of Mark Robbins, Eric Berliner, Peter Kastl, and Mark Forlenza.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

28.      During months one through seven, approximately two hundred (200) parking spaces at grade for retail customers and employees will exist in the "Western Lot". Exhibit H and Robbins 143:11 – 145:23.

**Ritz's Response**: See AvalonBay's Response, below.

**AvalonBay's Response**: Admitted. The "Western Lot," which is the portion of the existing surface parking lot closest to the AutoZone store, will remain open during the first phase of construction. Phase One Diagram (PK0021) and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

29.      During months eight through twenty-one, there will be no parking present open field parking lot. Memo and testimony of Mark Robbins.

**Ritz's Response**: See AvalonBay's Response, below.

**AvalonBay's Response**: Denied. During months eighteen through twenty-one, in addition to the underground parking available in garage 1, surface parking in the upper level

of garage 2 (on the existing Pathmark space) will be available to retail customers. In addition, AvalonBay has considered providing to AutoZone 15 dedicated spaces in front of its store during all phases of construction, and has expressed a willingness to work with AutoZone regarding parking logistics during construction. Construction sequence plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

> **Plaintiff's Proposed Finding of Fact:**

30.    During construction, there will be significant business interruption and disruption. Memo and testimony of Mark Robbins.

> **Ritz's Response:** See AvalonBay's Response, below.

> **AvalonBay's Response:** Denied. AvalonBay has developed phased construction plans to ensure that AutoZone retail customers will be afforded sufficient parking and access to Riverview Plaza throughout construction. In addition, AvalonBay has offered to work with AutoZone regarding parking logistics during construction, and has considered providing 15 dedicated parking spaces to AutoZone in front of its store during the entire construction process. Means for loading and delivery will be maintained during construction as well. Plans and testimony of Mark Robbins, Mark Forlenza, Eric Berliner, and Peter Kastl.

> **Plaintiff's Proposed Finding of Fact:**

31.    There will be an impact upon tenants during construction. Letter of February 7, 2002 and testimony of Allen J. Roberts, III.

> **Ritz's Response:** See AvalonBay's Response, below.

> **AvalonBay's Response:** AvalonBay objects that the letters of January 29, 2002 and February 7, 2002, are irrelevant. Subject to and without waiving the foregoing objection, AvalonBay admits that in a letter addressed to Ritz, AvalonBay's real estate counsel referenced

impacts during construction, as well as efforts to be undertaken by AvalonBay to avoid disruption or adverse impacts to tenants. AvalonBay denies, however, any suggestion that the February 7, 2002 letter constitutes an admission that construction would impact the tenants in a manner that would breach their lease rights. Rather, AvalonBay committed to use all commercially reasonable efforts not to disrupt or adversely impact the tenants during all stages of construction. AvalonBay has developed the Riverview Plaza project with full contemplation of the tenants' interests that there be sufficient parking, access to the premises for their customers, and visibility. Testimony of Mark Robbins, Eric Berliner and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact**:

32. After construction is completed, there will no longer be any open field parking. Plans and testimony of Mark Robbins.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Admitted that retail parking spaces, including 15 spaces dedicated to the use of AutoZone customers, will be located on the footprint of the existing surface parking lot, in the form of covered parking at grade. Plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact**:

33. After construction is completed, parking will be enclosed under the buildings. Plans and testimony of Mark Robbins.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Denied that parking will be "enclosed." The parking will be covered at grade. Plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

34.    After construction is completed, parking in the vicinity of the AutoZone store will be further away from the front door than it is presently.  Plans and testimony of Terry McKee, Robert Blank and Mark Robbins.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Retail parking spaces, including those dedicated to the exclusive use of AutoZone's customers, will be located on the footprint of the existing parking lot in a location convenient for AutoZone's customers.  AutoZone's contention that customers will have to travel a greater distance to the front door is without support and ignores the fact that current travel distance is not uniform but varies given the use by multiple retailers and their customers of a common parking area and the supply and location of unoccupied spaces at any given time.  Site Plan Application, plans and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.

(8).    *The Proposed Development – After Construction*

        *Visibility*

**Plaintiff's Proposed Finding of Fact:**

35.    After construction is completed, customers of AutoZone will need to walk through a drive aisle for cars, without a sidewalk, to get to the AutoZone store.  Plans and testimony of Terry McKee, Robert Blank and Mark Robbins.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  The Proposed Development is designed with concrete, traffic-calming pavers to act as a large sidewalk and crossing area for pedestrians and

retail customers.  Site Plan Application and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

36.    At present, travelers proceeding westerly on Cross Street who approach the intersection of Belden Avenue with the Premises on their left have a clear view across the open parking lot of the retail stores including AutoZone and its storefront sign.  Pictures and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Travelers proceeding westerly on Cross Street who approach the intersection of Belden Avenue do not have a clear and uninterrupted view across the parking lot of the AutoZone store and its storefront sign from all locations on Cross Street.  In certain locations, such travelers do not have a clear view of the storefront because of cars in the parking lot and trees along Cross Street and/or Belden Avenue which impact the view. Site Plan Application, photographs, demonstrative exhibits, and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

37.    At present, travelers proceeding southerly on Belden Avenue who approach the intersection with Cross Street with the Premises in front of them have a clear view across the open parking lot of the retail stores including AutoZone and its storefront sign.  Pictures and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Such views are currently obstructed for drivers traveling on Cross Street and Belden Avenue when they are in certain locations.  Photographs and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

38.     If the Proposed Development is built, there will be significant reduction in visibility.  Plans and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Visibility of the AutoZone store from portions of Belden Avenue will not be affected by the Proposed Development.  In addition, visibility of the AutoZone store and its signage are currently obstructed for travelers from certain portions of Cross Street and Belden Avenue.  AvalonBay will be constructing signage along Cross Street, which will alert travelers on Cross Street to the presence of the AutoZone store.  The existing pylon sign negatively impacting the visibility of the AutoZone store from Belden Avenue will be removed.  No improvements are to be constructed between the Belden Avenue façade of the AutoZone store and Belden Avenue.  Plans, photographs, demonstrative exhibits, and testimony of Mark Robbins, Eric Berliner and Peter Kastl.  See AvalonBay's Responses to ¶¶ 8, 34, 35, above.

**Plaintiff's Proposed Finding of Fact:**

39.     For travelers going westerly on Cross Street, there will no longer be any visibility of the AutoZone Store or its sign.  Plans and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  See AvalonBay's Response to ¶ 38, above.

**Plaintiff's Proposed Finding of Fact:**

40.     For travelers going southerly on Belden Avenue, there will no longer be clear visibility across an open field parking lot of the AutoZone Store or its sign.  Plans and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  This view is currently partially obstructed.  Further, the existing pylon sign in front of the AutoZone store which, when undamaged, obstructs the view will be removed.  The AutoZone storefront on Belden Avenue will remain visible and a pylon sign will be added at the corner of Cross Street and Belden Avenue.  Photographs, plans, demonstrative exhibits, and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

41.     There will also be very substantial and numerous trees planted along Belden Avenue that will further block any remaining view cars may have had of the AutoZone store from the Belden/Cross intersection.  Plans, demonstrative exhibits and testimony of Mark Robbins and Peter Kastl.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  AvalonBay will landscape Riverview Plaza in accordance with Norwalk zoning requirements.  Plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

(9).    *Parking*

**Plaintiff's Proposed Finding of Fact:**

42.    After the Proposed Development there will be 82 parking spaces shared between residential and retail.  Plans and testimony of Robert Blank, Mark Robbins and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  AvalonBay and Ritz have contracted to provide 165 parking spaces to Riverview Plaza's retail tenants during business hours once construction is complete.  Further, 15 spaces are to be provided for AutoZone's exclusive use. Amendment No. 2 at RR00044-45; Ground Lvl Park Dist. drawing (PK0079-80), Site Plan Application, Lease and testimony of Mark Robbins, Peter Kastl, Eric Berliner and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

43.    The parking will be reduced by more than 35%.  Thus, AutoZone is entitled to the exclusive use of fifteen (15) spaces in the Reserved Parking Area.  Lease and testimony of James O. McClean.

**Ritz's Response:**  When the Lease was executed, the largest tenant in the Riverview Shopping Plaza was a 49,000 square foot Pathmark supermarket, whose customers substantially filled the surface parking lot with their vehicles.  The parking lot was further crowded by vehicles operated by lawyers, litigants, and courthouse personnel who found it convenient to park in the lot and to walk to the Norwalk Superior Court building across Belden Avenue. This combination meant that the parking lot was constantly jammed with vehicles; Ritz briefly resorted to booting vehicles that were unlawfully parked there.  But the Pathmark supermarket closed down in 1998, and that space has been vacant for seven years.  Because of

the Pathmark vacancy, the demand for parking spaces is vastly reduced. The remaining retail

tenants occupy 40,000 square feet and have the use of 262 surface parking spaces; but it is only

because Ritz has been unable to rent out the Pathmark box to a similar tenant (Home Depot at

one time negotiated to lease the space) that AutoZone and the other tenants have such a favorable

parking-to-retail ratio. Berliner Testimony.

      **AvalonBay's Response:** Denied. See AvalonBay's Response to ¶ 24(c) and

Ritz's Response, above.

      **Plaintiff's Proposed Finding of Fact:**

44.    The Proposed Development does not allow for any parking in the Reserved

Parking Area. Testimony of Mark Robbins and Alex Oliphant.

      **Ritz's Response:** See AvalonBay's Response, below.

      **AvalonBay's Response:** Denied. Retail parking spaces, including 15 spaces

dedicated to the exclusive use of AutoZone's customers, will be located on the footprint of the

existing surface parking lot in a location as convenient for AutoZone's customers as the current

parking configuration. Lease, plans, and testimony of Mark Robbins, Eric Berliner, Peter Kastl

and Mark Forlenza. See also AvalonBay's Response to ¶ 42, above.

      **Plaintiff's Proposed Finding of Fact:**

45.    The character of the parking will be changed from an open field to covered

parking under a building with limited access. Plans, pictures and lease.

      **Ritz's Response:** See AvalonBay's Response, below.

      **AvalonBay's Response:** Admitted that the parking will be changed from an open

field to covered parking at grade. Denied that there will be limited access as a result. Plans and

testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

(10).   *Accessibility*

**Plaintiff's Proposed Finding of Fact:**

46.     Presently, there are two (2) points of ingress and egress to the open field parking lot in Riverview Plaza.  Plans and testimony of Mark Robbins and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted.

**Plaintiff's Proposed Finding of Fact:**

47.     After the Proposed Development, there will remain the same access off the street; however, interior circulation will be dramatically changed.  Plans and testimony of Robert Blank, Mark Robbins and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Admitted that access to the surface parking lot from the street will remain the same.  Denied that interior circulation at Riverview Plaza will be dramatically changed and that internal circulation after development will not be convenient for retail customers.  Interior circulation at Riverview Plaza will be enhanced by widening Burnell Boulevard and converting it into a two-way road, which will allow for full vehicular access around the shopping center.  In addition, traffic circulation will be enhanced by the creation of dedicated loading areas in front of the retail stores such that delivery trucks need not park in the fire lane.  Loading capabilities will be enhanced.  There will be dedicated loading spaces directly in front of the AutoZone store near the front door, as well as a loading area on Belden Avenue adjacent to the store.  Site Plan Application, plans and testimony of Mark Robbins, Peter Kastl and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

48.     There will no longer be many drive aisles.  From Belden Avenue, there will be one (1) entry point to the parking closest to AutoZone.  It will be covered and under a building. There are no close parking spaces.  The customer must travel down the aisle and around if no spaces are available rather than enjoy the many options a customer now has.  Plans and testimony of Robert Blank, Mark Robbins and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay denies that there will be no close parking spaces and any implication that parking or interior circulation at Riverview Plaza will be inconvenient for retail customers following construction.  Retail parking spaces, including 15 spaces dedicated to the exclusive use of AutoZone's customers, will be located in an area as convenient to the AutoZone store as the present parking configuration.  Moreover, the surface parking in front of the AutoZone store will continue to be accessible from both Cross Street and Belden Avenue.  Lease, Site Plan Application, plans and testimony of Mark Robbins, Peter Kastl, Mark Forlenza, and Eric Berliner.

**Plaintiff's Proposed Finding of Fact:**

49.     Further, once parked, the distance of travel from the parking space to the AutoZone front door will increase.  Further, the travel for the customer will be restricted to the driveway in which cars are entering – there will be no sidewalk or crossing areas for retail customers.  Plans and testimony of Robert Blank, Mark Robbins and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  Retail parking spaces, including those dedicated to the exclusive use of AutoZone's customers, will be located on the footprint of the

existing parking lot in a location convenient for AutoZone's customers.  AutoZone's statement

that customers will have to travel a greater distance to the front door is without support and

ignores the fact that current travel distance is not uniform but varies given the use by multiple

retailers and their customers of a common parking area.  Moreover, the Proposed Development is

designed with concrete, traffic-calming pavers to act as a large sidewalk and crossing area for

pedestrians and retail customers.  Site Plan Application, lease, plans and testimony of Mark

Robbins, Peter Kastl, Mark Forlenza and Eric Berliner.

<u>**Plaintiff's Proposed Finding of Fact:**</u>

50.     The existing site provides an ideal retail location on account of its location,

accessibility from major thoroughfares, accessibility from the parking lot to the store, excellent

visibility, and convenient customer friendly parking.  Testimony of Robert Blank and Alex

Oliphant.

<u>**Ritz's Response:**</u>  See AvalonBay's Response, below.

<u>**AvalonBay's Response:**</u>  AvalonBay objects that Plaintiff's subjective

characterizations and opinions are not facts and therefore AvalonBay neither admits, nor denies

them; to the extent that a response is required, they are denied.  Subject to and without waiving

the foregoing objection, the Riverview Plaza AutoZone location is not an ideal retail location

from AutoZone's perspective because:  (1) it has substantially less retail space than the 7,000

square foot AutoZone prototype store; (2) it is not a free-standing building; (3) it does not have

dedicated parking; (4) it lacks a dedicated loading area; (5) its parking lot is directly across

Belden Avenue from the Norwalk Superior Court building, and unauthorized parking of vehicles

by visitors to the courthouse in the Riverview Plaza parking lot has been an ongoing problem and

has interfered with AutoZone customers; and (6) it shares a common parking lot with a

(presently vacant) 49,000 grocery store space, which Ritz is free to re-lease to another grocery store (or other tenant) if the Proposed Development does not proceed. AutoZone has considered and investigated the relocation of the Riverview Plaza AutoZone store several times, beginning prior to its becoming aware of the Proposed Development. AutoZone leased property for a relocated Norwalk store nearby the Riverview Plaza site on West Avenue/Merwin Avenue from Norwalk Currie Tire Company, Inc. The financial projections prepared by AutoZone in connection with the leasing of that site concluded that the store would meet AutoZone's financial parameters for opening a new store and would, in fact, generate comparable sales to those of the Riverview Plaza store. Further, AutoZone has considered opening a second location in Norwalk. A second Norwalk store would compete with the Riverview Plaza store. Plans, photographs, demonstrative exhibits, testimony of Mark Robbins, Eric Berliner, Peter Kastl and Robert Blank, and deposition testimony of Ken Murray, Susan Valenti, John Michael Martin, Shawn Sheikhzadeh and James Butler. See also AvalonBay's and Ritz's Responses to ¶ 43, above.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

51.    The Leased Premises has an end cap location with plentiful, unobstructed and convenient open field parking. Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

<u>**Ritz's Response**</u>:  See AvalonBay's Response, below.

<u>**AvalonBay's Response**</u>:  AvalonBay objects that Plaintiff's subjective characterizations and opinions are not facts and therefore AvalonBay neither admits, nor denies them. Subject to and without waiving the foregoing objection, denied. Moreover, AutoZone's statement is inconsistent with the fact that the lease provides AutoZone with parking in a

common parking lot shared by multiple retailers and their customers.  Lease, plans and testimony of Mark Robbins, Eric Berliner and Mark Forlenza.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

52.    The parking is immediately adjacent to the Leased Premises.  Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

<u>**Ritz's Response**</u>:  See AvalonBay's Response, below.

<u>**AvalonBay's Response**</u>:  Admitted that the surface parking lot is adjacent to the Leased Premises.  However, not all parking spaces are close to the AutoZone store.  Many spaces are located a significant distance from the store.  Given that AutoZone currently has no dedicated spaces and shares the parking lot with numerous other tenants, the spaces closest to the store are not necessarily available to AutoZone customers at any given time.  Photographs, plans, Lease and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.  See also AvalonBay's Response to ¶ 50, above.

<u>**Plaintiff's Proposed Finding of Fact**</u>:

53.    Access to the parking spaces is excellent.  Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

<u>**Ritz's Response**</u>:  See AvalonBay's Response, below.

<u>**AvalonBay's Response**</u>:  AvalonBay objects that Plaintiff's subjective characterizations and opinions are not facts and therefore AvalonBay neither admits, nor denies them.  Subject to and without waiving the foregoing objection, denied.  See AvalonBay's Response to ¶ 52, above.

**Plaintiff's Proposed Finding of Fact:**

54.    The Leased Premises has:

    a.   Excellent visibility from Cross Street;

    b.   Excellent visibility from Belden Avenue;

    c.   Is located near Route 7;

    d.   Enjoys easy access from all directions;

    e.   Is located in an area close to population centers that utilize the retail center.

Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects to subparagraphs a, b, d and e on the grounds that plaintiff's subjective characterizations and opinions are not facts.  Subject to and without waiving the foregoing objection, subparagraphs a, b, d and e are denied.  See AvalonBay's Responses to ¶¶ 8, 36, 37.  Subparagraph c is admitted.

**Plaintiff's Proposed Finding of Fact:**

55.    The Proposed Development will negatively and adversely affect the desirability for AutoZone customers to frequent its store on account of:

    a.   Reduced accessibility;

    b.   Reduced visibility; and/or

    c.   Reduced convenient parking.

Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that plaintiff's subjective characterizations and opinions are not facts.  Subject to and without waiving the foregoing

objection, denied.  There will continue to be two points of ingress and egress from the southerly

streets to Riverview Plaza.  Interior site circulation will be enhanced.  Moreover, unlike retail

sales, which typically are made to customers physically present in the Norwalk store,

commercial sales are typically transacted over the telephone and the goods are then delivered to

the customer's place of business.  Site Plan Application, photographs, plans, demonstrative

exhibits and testimony of Mark Robbins, Eric Berliner, Peter Kastl, Mark Forlenza and Alex

Oliphant.  See also AvalonBay's Responses to ¶¶ 8, 24(c), 36-40, 50, above.

<u>**Plaintiff's Proposed Finding of Fact:**</u>

56.     The benefit of the end cap location will be diminished on account of the

placement of a new building adjacent to the store.  Plans, pictures, lease and testimony of Robert

Blank and Alex Oliphant.

<u>**Ritz's Response:**</u>  See AvalonBay's Response, below.

<u>**AvalonBay's Response:**</u>  AvalonBay objects that plaintiff's subjective

characterization and opinion is not a fact and therefore AvalonBay neither admits, nor denies it.

Subject to the foregoing objection, denied.  Photographs, plans, demonstrative exhibits, Lease

and testimony of Mark Robbins, Eric Berliner, Peter Kastl and Mark Forlenza.

<u>**Plaintiff's Proposed Finding of Fact:**</u>

57.     The desirability of parking will be diminished in at least the following ways:

  a.  No open field;

  b.  Obstructed parking;

  c.  Lack of convenient access to parking areas;

  d.  Lack of convenient access to the store from the parking areas.

Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

<u>**Ritz's Response:**</u>  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  The parking configuration under the Proposed Development will provide retail customers with convenient parking and access to the retail stores.  Further, 15 dedicated spaces will be provided to AutoZone.  See AvalonBay's Responses to ¶¶ 24(c), 42, 44, 48-50, 55, above.

**Plaintiff's Proposed Finding of Fact:**

58.     Visibility will be significantly diminished in that a large building will be placed where the open parking field presently exists.

Plans, pictures, lease and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  See AvalonBay's Responses to ¶¶ 8, 36-40, above.

**Plaintiff's Proposed Finding of Fact:**

59.     The atmosphere of the shopping center will be altered in style and appearance making Riverview Plaza less desirable to a convenience auto parts retailer.

Plans and testimony of Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact.  Subject to and without waiving the foregoing objection, denied.

**Plaintiff's Proposed Finding of Fact:**

60.     As a result of the Proposed Development, there will be a substantial change in the layout of the Shopping Center.  Plans.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:** AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact. Subject to and without waiving the foregoing objection, denied. Lease, plans and testimony of Mark Robbins, Peter Kastl, Eric Berliner and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

61. The change in the layout of the Shopping Center will have an adverse or material effect upon visibility of the AutoZone store and its signs. Plans and testimony of Terry McKee, Robert Blank and Alex Oliphant.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** AvalonBay objects that plaintiff's subjective characterization and opinion is not a fact. Subject to and without waiving the foregoing objection, denied. Plans, photographs, demonstrative exhibits and testimony of Mark Robbins, Peter Kastl, Eric Berliner and Mark Forlenza.

**Plaintiff's Proposed Finding of Fact:**

62. The change in the layout of the Shopping Center will have an adverse or material effect upon accessibility of the AutoZone store for its customers. Plans and testimony of Terry McKee, Robert Blank and Alex Oliphant.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** Denied. See AvalonBay's Responses to ¶¶ 4, 24(c), 27, 30-35, 49-57, above.

**Plaintiff's Proposed Finding of Fact:**

63.    The change in the layout of the Shopping Center will have an adverse or material effect upon parking for the AutoZone store.  Plans and testimony of terry McKee, Robert Blank and Alex Oliphant.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  See AvalonBay's Responses to ¶¶ 4, 24(c), 27, 30-35, 49-57, above.

**Plaintiff's Proposed Finding of Fact:**

64.    AutoZone has reasonably withheld its consent to the Proposed Development. Plans, pictures, lease, letters of January 20 and February 7, 2002, faxes of January 3 and 8, 2002, letters of March 17 and March 20, 2003 and testimony of Terry McKee, James O. McClain, Robert Blank and Alex Oliphant.

**Ritz's Response:**  Denied.  AutoZone failed and refused from the outset to give any serious consideration to the Development or to provide objections based on facts rather than supposition and conjecture.  When Eric Berliner called Jim McClain in 2001 to initiate discussions over the Development and the plans, McClain told Berliner AutoZone would never approve of anything, and they wanted it to remain exactly as it is, without even seeing the plans. Subsequently, Berliner made multiple attempts to engage McClain in discussions, but McClain simply did not return phone calls.  Testimony of Eric Berliner.  See also AvalonBay's Response, below.

**AvalonBay's Response:**  Denied.  From AvalonBay's provision of the preliminary plans to AutoZone in December, 2001, AvalonBay has offered to discuss the project and work with AutoZone in order to address any concerns of AutoZone.  AutoZone has been unresponsive in

many instances and has summarily refused to enter a meaningful dialogue with AvalonBay. For example, Mr. McClain of AutoZone demanded from the outset that AvalonBay and Ritz cancel their plans. Mr. McClain made this demand after spending no more than half an hour of his time considering the plans sent by AvalonBay.

On April 18, 2002, AvalonBay presented AutoZone with a modified site plan, specifically designed to address AutoZone's concerns. The plan:

- eliminated a sub-grade garage, in order to improve construction logistics
- provided AutoZone with 15 dedicated parking spaces
- included the installation of a new pylon sign
- set back and cut the corner of one apartment building to increase visibility of the AutoZone store
- provided new store fronts
- phased construction to maintain access and parking during construction
- designed the new parking field to wrap the retail space on two sides

To further address AutoZone's concerns, Mr. Robbins flew to Las Vegas to present AvalonBay's plans to AutoZone's Terry McKee. Mr. Robbins informed Mr. McKee of the modifications to the site plan and additional aspects of the project that would benefit AutoZone, including:

- eliminated the 49,000 square feet in retail space formerly occupied by the Pathmark Grocery Store, which previously demanded the majority of the parking field
- the enhancement and improvement of signage, bringing it closer to the intersection of Belden Avenue and Cross Street
- increased and enhanced circulation in the shopping area
- converting Burnell Boulevard in the rear of Riverview Plaza to a two-way road, which effectively creates full circular access around the shopping center
- enhancement of pedestrian access

-38-

- an increase in pedestrian traffic resulting from the creation of the river walk

- the addition of approximately 650 residential tenants, most of whom would own automobiles

Notwithstanding AvalonBay's modifications to the plans and offers to work with AutoZone, AutoZone has refused to give its consent to the Proposed Development.

Although it has refused to consent, AutoZone still has not determined whether in fact its business at Riverview Plaza will be impacted either during or after construction to support any commercial justification for withholding its consent.

Phase One Diagram (PK0021), Site Plans, testimony of Mark Robbins, Eric Berliner, Mark Forlenza, William David Gilmore, Terry McKee, James McClain, Alex Oliphant, and Robert Blank and deposition testimony of Ken Murray, John Michael Martin, Richard Abate, William David Gilmore and Shawn Sheikhzadeh.

### B.    AVALONBAY'S ADDITIONAL PROPOSED FINDINGS OF FACT AND PLAINTIFF'S AND RITZ'S RESPONSES

**AvalonBay's Additional Proposed Finding of Fact:**

1.     AutoZone commenced the instant litigation by Complaint dated February 26, 2003, in which AutoZone alleged that consummation of the Development Plan would breach the Lease.  (Complaint, Docket Entry No. 1.)

**Plaintiff's Response:**  Admitted.

**Ritz's Response:**  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

2.      AutoZone's Complaint alleged anticipatory breach of contract, breach of contract, and breach of the covenant of good faith and fair dealing against Ritz, and tortious interference with contract against AvalonBay.  (Complaint, Docket Entry 1.)

> **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

> **Ritz's Response:**  Admitted.

> **AvalonBay's Additional Proposed Finding of Fact:**

3.      AutoZone's Complaint sought injunctive relief, specific performance, a declaratory judgment and money damages.  (Complaint, Docket Entry 1.)

> **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

> **Ritz's Response:**  Admitted.

> **AvalonBay's Additional Proposed Finding of Fact:**

4.      AutoZone applied for a temporary injunction, which this Court denied without prejudice on December 1, 2003.  (Motion by ADAP, Inc for Temporary Injunction, Docket Entry 4; Endorsement denying motion for Temporary Injunction dated March 3, 2003.)

> **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

> **Ritz's Response:**  Admitted.

> **AvalonBay's Additional Proposed Finding of Fact:**

5.      Since December 1, 2003, AutoZone has not pursued its claim for a temporary injunction.  (Docket.)

> **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

Furtherm, it has been apparent that the need for the injunction was not necessary as AvalonBay indicated by its inaction that it did not intend to pursue the Proposed Development during the

pendency of this action.  Thus, there was no irreparable harm that would ensue if the injunction were not granted.

      **Ritz's Response**:  Admitted.

      **AvalonBay's Additional Proposed Finding of Fact**:

6.      On July 15, 2004, AutoZone served on the Defendants a Damage Analysis in which it claimed money damages of $850,000.  (Plaintiff's Damage Analysis, dated July 15, 2004, Defendants' Exhibit 532 for ID).)

      **Plaintiff's Response**:  Admitted, however, plaintiff objects to the relevance.

      **Ritz's Response**:  Admitted.

      **AvalonBay's Additional Proposed Finding of Fact**:

7.      AutoZone subsequently withdrew its Damage Analysis on October 8, 2004. (Letter dated October 8, 2004 from Bruce Elstein to Andrew Houlding withdrawing Plaintiff's damage analysis, dated July 15, 2004, Defendants' Exhibit 533 for ID.)

      **Plaintiff's Response**:  Admitted, however, plaintiff objects to the relevance.

      **Ritz's Response**:  Admitted.

      **AvalonBay's Additional Proposed Finding of Fact**:

8.      On November 2, 2004, AutoZone filed its Amended Complaint.  (Amended Complaint, Docket Entry 61.)

      **Plaintiff's Response**:  Admitted, however, plaintiff objects to the relevance.

      **Ritz's Response**:  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

9.    AutoZone's Amended Complaint alleges anticipatory breach of contract and breach of contract against both Ritz and AvalonBay, and breach of the covenant of good faith and fair dealing against Ritz.  (Amended Complaint, Docket Entry 61.)

        **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

        **Ritz's Response:**  Admitted.

        **AvalonBay's Additional Proposed Finding of Fact:**

10.    AutoZone removed its claim for money damages from the Amended Complaint. (Compare Amended Complaint, Docket Entry 61 with Complaint, Docket Entry 1.)

        **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance.

        **Ritz's Response:**  Admitted.

        **AvalonBay's Additional Proposed Finding of Fact:**

11.    AutoZone seeks a decree directing Ritz (and AvalonBay to the extent that it has or does acquire an interest in the real property described in the Lease) to specifically perform the Lease, a temporary restraining order preventing the Defendants from violating the Lease or taking any action to violate the Lease, a temporary and permanent injunction preventing the Defendants from violating the Lease or taking any action to violate the Lease, and a declaratory judgment that the Development Plan violates the Lease.  (Amended Complaint, Docket Entry 61.)

        **Plaintiff's Response:**  Admitted, however, plaintiff objects to the relevance. Further, the relief claimed includes legal costs as provided for under the Lease and such other relief as the Court may deem proper in law or in equity.

        **Ritz's Response:**  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

12.    AutoZone also seeks from Ritz legal costs under the Lease.  (Amended
Complaint, Docket Entry 61.)

**Plaintiff's Response**:  Denied.  The relief claimed does not limit the claim to
Ritz.

**Ritz's Response:**  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

13.    AutoZone carefully monitors sales and financial performance of all of its stores
including the Norwalk Riverview Plaza store.  Testimony of Alex Oliphant and Terry McKee
and deposition testimony of Shawn Sheikhzadeh and Ken Murray.

**Plaintiff's Response:**  Objection as to the relevance.  Article 1 of the Lease
mandates that in the shopping center there be no substantial change in layout which would in any
manner or to any degree adversely or materially affect the accessibility or visibility of
AutoZone's signs or storefront.  The financial performance of the AutoZone store is irrelevant to
the issue in this case.

Notwithstanding the objection – admitted.

**Ritz's Response:**  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

14.    AutoZone's profit margin (profit as a proportion of gross sales) on sales generated
at the Riverview Plaza store has been declining.  For example, profit margin declined
substantially from 14.5% to 8.6% from the fiscal year ending 2000 to the fiscal year ending
2004, a 40.7% drop.

**Plaintiff's Response:** Objection as to the relevance. Article 1 of the Lease mandates that in the shopping center there be no substantial change in layout which would in any manner or to any degree adversely or materially affect the accessibility or visibility of AutoZone's signs or storefront. The financial performance of the AutoZone store is irrelevant to the issue in this case.

Notwithstanding the objection – denied. The character of the margin is more complicated than asserted in that there are differing components – retail and commercial.

**Ritz's Response:** Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

15.    A substantial portion of the sales generated at the AutoZone Riverview Plaza store are to repeat customers and customers who have a particular product or need in mind which they wish to satisfy at the store, as opposed to impulse or opportunistic buyers who enter the store simply because they drive by and see it, and will not be impacted by the Proposed Development. Testimony of Richard Abate and Alex Oliphant and deposition testimony of James Butler.

**Plaintiff's Response:** Denied. The characterization of "substantial" is not defined and is vague. There are no reliable indicia to support the contention. Testimony of Oliphant.

**Ritz's Response:** Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

16.    A substantial portion of the sales generated at the AutoZone Riverview Plaza store are to commercial accounts which are transacted over the phone and will not be impacted

by the Proposed Development.  Testimony of Richard Abate and Alex Oliphant and deposition testimony of James Butler.

> **Plaintiff's Response:**  Denied.  The characterization of "substantial" is not defined and is vague.  There are no reliable indicia to support the contention.  Further, conmmercial sales are an incremental business that flows for the retail sales only.  Testimony of Oliphant.

> **Ritz's Response:**  Admitted.

> **AvalonBay's Additional Proposed Finding of Fact:**

17.    AvalonBay has incurred over $2 million in costs through June 2005 in connection with the development.  These costs include payments of approximately $1.1 million to Ritz under the Purchase and Sale Contract, including continuing monthly payments of $30,000.00.  These costs also include approximately $1 million in development costs such as architectural, engineering, design and permitting expenses.  If the project were not to go forward due to the issuance of an injunction as sought by plaintiff, then AvalonBay would suffer a substantial loss.  Further, AvalonBay would lose its expectancy of the profit for the project.  Testimony of Mark Forlenza.

> **Plaintiff's Response:**  The vast majority of all expenses were incurred with the knowledge of the AutoZone lease and its objections to the Proposed Development.  Testimony of Valente, Robbins, Forlenza, McKee and McClain.  See Plaintiff's Exhibits 6, 7 – 11.

> **Ritz's Response:**  Admitted.

**AvalonBay's Additional Proposed Finding of Fact:**

18.    For its fiscal year ending August 2004, AutoZone had net sales of
$5,637,025,000, an operating profit of $988,706,706, and an after-tax net income of
$566,202,000.

**Plaintiff's Response:**  Objection as to the relevance.  The financial performance
of AutoZone is irrelevant to the issue in this case.  Notwithstanding the objection – admitted.

**Ritz's Response:**  Admitted.

19.    For its most recent financial quarter, ending November 20, 2004, AutoZone had
net sales of $1,286,203,000, an operating profit of $216,313,000, and an after-tax net income of
$122,523,000.

**Plaintiff's Response:**  Objection as to the relevance.  The financial performance
of AutoZone is irrelevant to the issue in this case.  Notwithstanding the objection – admitted.

**Ritz's Response:**  Admitted.

20-24.  AvalonBay submits its Proposed Findings of Fact numbers 20-24 in a Supplement
to Joint Trial Memorandum Filed Under Seal Pursuant to Local Rule 5(d), dated July 19, 2005.

### C.    PROPOSED CONCLUSIONS OF LAW

(1).    *Specific Performance*

**Plaintiff's Proposed Conclusion of Law:**

1.    "[S]pecific performance is the presumed remedy for the breach of an agreement to
transfer real property."  71 Am. Jur. 2d Specific Performance § 133; See also, 71 Am. Jur. 2d
Specific Performance § 166; See also, 71 Am. Jur. 2d Specific Performance § 139.

**Ritz's Response:**  See AvalonBay's Response, below.

-46-

**AvalonBay's Response:**  This is not an action to transfer real property.  AutoZone's claims are that the Proposed Development allegedly would violate lease terms concerning the visibility of its storefront, parking and accessibility.  AutoZone would have the federal courts oversee the enforcement of commercial leases and intervene with enforcement orders whenever a contract provision might potentially be breached.  Such a result would require continuing, burdensome court supervision whenever a party to a commercial lease claims a breach, even of the most minor lease provision.  See Bethlehem Eng'g Exp. Co. v. Christie, 105 F.2d 933, 935 (2d Cir. 1939) (injunctive relief to enforce contract is not proper when it would require the court to undertake continuing supervision).  It is for this very reason that courts require that such parties demonstrate irreparable harm and the lack of an adequate remedy at law as threshold issues, before the courts will weigh the merits of whether specific performance or other injunctive relief should be granted.

Even if this case involved the purported breach of an agreement to transfer real property, the principle that specific performance is the "presumed" remedy can be rebutted when the purchaser's motive in making the contract is for investment without subjective attachment. See 3 D. DOBBS, LAW OF REMEDIES (2d ed. 1993) § 12.11(3), p. 300-01.  The Riverview Plaza store is only one of the approximately 3,500 retail outlets owned by AutoZone, a public company whose *sin a qua non* is to maximize profit for its shareholders.  Indeed, every assertion by AutoZone concerns ultimately whether the Proposed Development allegedly may reduce the *profitability* of the commercial space it leases from Ritz.  Thus, even if this case had involved the transfer of land, since AutoZone's motives in leasing the Riverview Plaza location are purely for commercial investment, money damages would be adequate to redress any asserted potential economic harm.  See AvalonBay's Response to ¶ 7, below.

**Plaintiff's Proposed Conclusion of Law:**

2.      "The specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract.... The specific performance decree originated in the old equity courts and continues today to be thought of as an equitable remedy, with the usual attributes of such remedies." (Internal quotation marks omitted.)  Marquardt & Roche/Meditz & Hackett, Inc. v. Riverbend Executive Center, Inc., 74 Conn. App. 412, 418, (2003).

      **Ritz's Response:**      Specific performance is available only where the matter to be performed is clear and certain.  "To be specifically enforceable, a contract must be 'fair, equitable, certain and mutual, consistent with policy and made on good consideration.'"  Burns v. Gould, 172 Conn. 210, 214 (Conn. 1977).

      The element of certainty is lacking in this case since the only performance contemplated by Lease Article I is AutoZone's obligation to perform by granting consent. Ritz has no performance obligation under the Article except the implied obligation to show AutoZone its development plans and the explicit obligation to seek its consent before taking any of the steps to which AutoZone could object.  Ritz indisputably has disclosed the AvalonBay plans to AutoZone.  No further performance can be specifically performed by Ritz under Article I.  See also AvalonBay's Response, below.

      **AvalonBay's Response:**      AutoZone has failed to quote the entire relevant portion of the Appellate Court's opinion in Marquardt.  The full, relevant quotation is:

> We note that the analysis is the same whether we label the relief a prohibitive injunction or specific performance.  Under the traditional views, specific relief will be denied when . . . the legal remedy is regarded as adequate or the plaintiff is not subjected to irreparable harm by the breach . . . .  The specific performance remedy is a form of injunctive decree in which the court orders the defendant to

perform the contract. . . . The specific performance decree originated in the old
equity courts and continues today to be thought of as an equitable remedy, with
the usual attributes of such remedies.

74 Conn. App. at 421, n.2 (internal quotation marks omitted).  See AvalonBay's

Response to ¶ 7, below.

### Plaintiff's Proposed Conclusion of Law:

3.      "The availability of specific performance is not a matter of right, but depends

rather upon an evaluation of equitable considerations."  Kakalik v. Bernardo, 184 Conn. 386, 395

(1981); see also Syncsort, Inc. v. Indata Services, 14 Conn. App. 481, 484 ("by bringing an

equitable action for specific performance the plaintiff brings all principles of equity into

consideration"), cert. denied, 209 Conn. 804 (1988).

### Ritz's Response:  See AvalonBay's Response, below.

### AvalonBay's Response:  "Before specific performance may be ordered, remedies

at law first should be determined to be incomplete and inadequate to accomplish substantial

justice."  Leasco Corp. v. Taussig, 473 F.2d 777, 786 (2d Cir. 1972) (citing Erie R. Co. v. City of

Buffalo, 180 N.Y. 192, 73 N.E. 26 (1904); 11 WILLISTON ON CONTRACTS § 1418 (3d ed. 1968).

Indeed, the equities are weighed only if the plaintiff can establish that the harm is irreparable and

that it lacks an adequate remedy at law.  Marquardt & Roche/Meditz & Hackett, Inc. v.

Riverbend Exec. Ctr., Inc., 74 Conn. App. 412, 421 n.2, 812 A.2d 175 (2003).  See also

AvalonBay's Response to ¶ 2, above.

### Plaintiff's Proposed Conclusion of Law:

4.      "The determination of what equity requires in a particular case, the balancing of

the equities, is a matter for the discretion of the trial court."  Kakalik v. Bernardo, 184 Conn. 386,

395 (1981); Kubish v. Zega, 61 Conn. App. 608, 615, cert. denied, 255 Conn. 949 (2001).

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  See AvalonBay's Response to ¶ 3, above.

**Plaintiff's Proposed Conclusion of Law:**

5.      In balancing the equities, the court is not "bound by a formula but is free to fashion relief 'molded to the needs of justice.' " Hall v. Dichello Distributors, Inc., 6 Conn. App. 530, 540, cert. denied, 200 Conn. 807 (1986), quoting Montanaro Bros. Builders, Inc. v. Snow, 4 Conn. App. 46, 54 (1985); see also 71 Am.Jur.2d, Specific Performance § 94 (2001).

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  See AvalonBay's Response to ¶ 3, above.

(2).    *Breaches of Lease*

**Plaintiff's Proposed Conclusion of Law:**

6.      The Proposed Development will result in Ritz breaching its lease in one or more of the following ways:

a.      Failing to maintain Riverview Plaza and the layout of the buildings, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements in the same or similar condition as that set for in the Lease as required by Article 1;

b.      Failing to maintain the locations of the store enterprises noted in the Lease and adhering to the layout thereof in the development of Riverview Plaza and/or any subsequent expansion and/or alteration thereof so as to maintain the relative position of the buildings, the parking areas, the roadways and passageways, and the spaces of the tenants as required by Article 1;

c.     Failing to maintain the Riverview Plaza layout with no substantial change as required by Article 1;

d.     Adversely or materially affecting the accessibility to the Leased Premises from the parking areas as required by Article 1;

e.     Adversely or materially affecting the visibility of AutoZone's signs or storefront as required by Article 1;

f.      Adding free-standing buildings, trees, shrubs or other obstructions in front of the Leased Premises so as to affect the accessibility to or the visibility as prohibited by Article 1;

g.     Failing to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition as required by Article 14;

h.     Failing to maintain all of the common areas so as to be available at all times, in good and attractive order and condition, to serve AutoZone's customers, employees and invitees as required by Article 14;

i.      Failing to permit the AutoZone store to load and unload its goods and products through the front door of the Leased Premises as required by Article 14;

j.      Failing to provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by AutoZone's customers and invitees, in compliance with all local ordinances and regulations applicable thereto including with respect to the required ratio parking spaces to area of the Leased Premises as required by Article 14;

k.      Failing to designate and reserve for the exclusive use of AutoZone's customers (including by cordoning off spaces to identify them as reserved for AutoZone's customers) fifteen (15) parking spaces within the area identified in the Lease as required by Article14.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**   AvalonBay objects that whether "[t]he Proposed Development will result in Ritz breaching its lease" allegedly in the manners identified raises questions of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  Contrary to AutoZone's contentions, the Lease expressly contemplates, rather than bars, future development. Development is addressed in multiple provisions of the Lease, including Article I (referencing "the development of the Shopping Center and/or any subsequent expansion and/or alteration thereof"), Article 3 (referencing the Shopping Center, "as presently planned or as it may be expanded or altered"), and Article 14 (establishing that AutoZone is not responsible to share in "costs for construction of additional common areas, buildings or parking areas, or costs for the expansion of existing common areas, buildings or parking areas", and further providing 15 reserved parking spaces for AutoZone in the event that the total parking area is decreased permanently by more than 35%).

AutoZone claims that the construction of the development will violate Articles 1 and 14 of the Lease. Article 1 of the Lease states, in relevant part, as follows:

> Landlord further agrees that Exhibit A is a complete and accurate representation of the layout of the building, parking areas, access roads, loading docks, passageways and other common areas and facilities and improvements shown thereon, now completed or under construction or planned for the Shopping Center, as well as of the locations of the store enterprises noted thereon and that the layout thereof, as shown on Exhibit A will be adhered to in the development of the Shopping Center and/or any subsequent expansion and/or alteration thereof so as to maintain the relative positions of the buildings, the parking areas, the

roadways and passageways, and the spaces of the tenants, all as shown on Exhibit A. Landlord agrees that there shall be no change whatever (sic) in the location, shape or dimensions of the premises hereby demised, and no substantial change in the [Riverview Plaza] layout which would in any manner or to any degree adversely or materially affect the accessibility to the leased premises from the parking areas or the visibility of Tenant's signs or storefront, without Tenant's prior written consent in each instance, <u>which consent shall not be unreasonably withheld</u>.

Landlord further agrees not to place any free-standing buildings, kiosks, planters, trees, shrubs, stairs or other obstructions any place in front of the leased premises so as to affect the accessibility to or the visibility of the leased premises without first obtaining Tenant's written consent, which consent shall not be unreasonably withheld or delayed.

(Lease, Art. 1 (emphasis added).)  In addition, Article 25(k) provides that "[w]henever under this Lease provision is made for either party to obtain the written consent or approval of the other party, <u>such consent or approval shall not be unreasonably withheld</u>, conditioned or delayed."

(Lease, Art. 25(k) (emphasis added).)

Article 14 of the Lease provides as follows regarding parking, access to streets and loading:

> A.    Landlord has constructed all parking area, driveways, entrances and exits, service drives, lighting, truckways, loading docks and doors . . . package pick-up stations, pedestrian sidewalks and ramps, landscaped areas, exterior stairways, and other areas and improvements as shown on Exhibit A hereto (the "common areas"). All of said common areas shall be for the general use, in common, of tenants, their agents, employees, customers and invitees. Tenant, its agents, employees, customers and invitees are hereby granted the right to use all of said common areas for their intended purposes. Landlord agrees throughout the term of this Lease to properly maintain and operate all parking areas and other common areas and facilities or appurtenances to the building and to keep same in good order and condition and properly lighted and cleaned. The aforesaid obligations of Landlord shall include maintaining and at all times having adequate means of ingress and egress to and from accepted highways and public streets, the prompt repairing and restriping when required of the parking areas, the maintenance and repair of all curbing and directional markers, the cleaning and repair of the sidewalks, the prompt removal of snow and ice, landscaping, security, common area utility usage and adequate lighting during all hours of darkness that Tenant shall be open for business.

All of the aforesaid obligations of Landlord shall be performed in accordance with good and accepted real estate practices throughout the terms of this Lease, Landlord recognizing that all of said common areas must be available at all times, in good and attractive order and condition, to serve Tenant's customers, employees and invitees.

* * * *

Landlord acknowledges that due to the fact the Premises has no rear loading door or dock, Tenant must unload its deliveries of goods and products to the Premises through the front door via access from the parking area in front of the Premises. Landlord agrees that notwithstanding anything in this Lease to the contrary or any rules and regulations now or hereafter established by the Landlord for tenants of the Shopping Center, Tenant shall be permitted to load and unload its goods and products through the front door of the Premises. Tenant shall use reasonable efforts to minimize any inconvenience to customers of the Shopping Center that may result from or as a result of its unloading through the front door of the Premises.

   B. Landlord agrees that throughout the term of this Lease it shall provide and maintain, in good order and condition, paved and line painted parking areas adjacent to the building for use by Tenant's customers and invitees, which parking shall comply with all local ordinances and regulations applicable thereto, including with respect to the required ratio parking spaces to area of the leased premises. If at any time during the term hereof the total parking area shall be decreased permanently by more than thirty five percent (35%), then in such event Landlord shall designate and reserve for the exclusive use of Tenant's customers (including by cordoning off spaces to identify them as reserved for Tenant's customers) fifteen (15) parking spaces within the cross-hatched area identified on Exhibit "A" attached hereto and Landlord shall enforce such parking restrictions as may be reasonably necessary to ensure the exclusiveness of such parking spaces. If Landlord shall fail to provide such parking or to enforce restrictions as are reasonably necessary to ensure such parking to Tenant's customers and such failure shall continue for thirty (30) days after notice from Tenant, then Tenant may, in lieu of the fixed annual rent herein specified, pay to Landlord a reduced rent equal to three (3%) percent of its gross sales from the leased premises, plus all utilities it is required to pay under this Lease, until such time as the situation is remedied by the Landlord; provided, however, that if such failure shall continue for more than ninety (90) days after such notice, then Tenant may cancel and terminate this Lease upon written notice to Landlord of such termination. Landlord further agrees that it will use reasonable efforts to limit access to parking in the parking areas of the Shopping Center to patrons of the Shopping Center and will establish and use reasonable efforts to enforce such parking restrictions as may be necessary in order for that to occur.

* * * * * *

-54-

(Lease, Art. 14.)

It is axiomatic that courts must attempt to give meaning to every word in a contract. Downs v. National Casualty Co., 146 Conn. 490, 495, 152 A.2d 316 (1959). The meaning of the phrase "which consent shall not be unreasonably withheld" must be given its plain and ordinary meaning. See Tallmage Brothers, Inc. v. Iroquois Transmission System, Inc., 252 Conn. 479, 746 A.2d 1277 (2000). The language of the Lease unambiguously shows that Ritz and ADAP contemplated when they entered into the Lease that Ritz could construct "free-standing buildings, . . . trees, shrubs, . . . or other obstructions . . . in front of the leased premises" and requires AutoZone to consent to such changes unless it can demonstrate a commercially reasonable basis to withhold its consent. (Lease, Art. 1.) AutoZone has breached the Lease by unreasonably withholding its consent. See AvalonBay's Response to ¶ 18, below. Moreover, AutoZone's contentions as to the quality of visibility of its store from off-site ignore the fact that views of the store are currently obstructed for drivers in certain locations.

AutoZone's claim that the desirability of parking will decrease is simply wrong. A total of 165 spaces will be available to retail tenants during business hours, 15 spaces will be provided for the exclusive use of AutoZone customers, and the overall ratio of retail parking spaces to retail square footage will increase substantially. AutoZone's assertion that during construction the surface parking lot will be largely inaccessible to its customers and that there will be significant business interruption sidesteps the measures taken and offered by AvalonBay to maintain adequate parking for AutoZone customers throughout the project. Further, AutoZone's claim that it will no longer be able to load goods through its front door is belied by the creation of loading spaces on Belden Avenue and in the access drive abutting the sidewalk in front of the AutoZone store, which are shown on the site plans submitted by AutoZone with its papers.

(3).    *Irreparable Harm*

**Plaintiff's Proposed Conclusion of Law:**

7.      Irreparable harm need not be demonstrated here since this case involves the enforcement of a restrictive covenant.  "[T]he general rule requiring that substantial irreparable injury must threaten before an injunction will issue is subject to an exception. A restrictive covenant may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable." Hartford Electric Light Co. v. Levitz, 173 Conn. 15, 22 (1977); Armstrong v. Leverone, 105 Conn. 464 (1927); Genovese Drug Stores, Inc. v. Bercrose Associates, 563 F.Supp. 1299 (1983), vacated on other grounds, 732 F.2d 286 (1984).

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  This case does not involve a restrictive covenant; the lease clauses AutoZone seeks to enforce involve AutoZone's visibility, shared parking and accessibility.  The authorities AutoZone relies upon, therefore, are distinguishable.

The case of Hartford Electric Light Company v. Levitz, 173 Conn. 15, 376 A.2d 381 (1977), involved the enforcement of a *utility easement supporting electric transmission and distribution lines* that prohibited the property owner from building on the easement without the utility's permission. Id. at 17.  The case of Armstrong v. Leverone, 105 Conn. 464, 136 A. 71 (1927), concerned *the enforcement of recorded common deed restrictions* prohibiting commercial use included by a developer-grantor as part of a general scheme of residential development in deeds conveying lots from a common parcel to multiple purchasers, and upon which neighboring purchasers-lot owners relied.  Id. at 469-70.  In these specific contexts, the plaintiffs were not required to make "a showing" or to show "proof" of irreparable harm and/or

lack of an adequate remedy at law, because it could be fairly presumed under the circumstances of those cases as a matter of law. Hartford Electric, 173 Conn. at 22; Armstrong, 105 Conn. at 472, respectively; see also Manley v. Pfeiffer, 176 Conn. 540, 544-45, 409 A.2d 1009 (1979) (interpreting Hartford Electric as not requiring a showing of irreparable harm in circumstances involving a restrictive covenant arising in connection with a conveyance of property in fee or with a conveyance of an easement), rev'd on other grounds, Mannweiler v. LaFlamme, 232 Conn. 27, 35 n.10, 53 A.2d 168 (1995).  Indeed, in Burns v. Gould, 172 Conn. 210, 374 A.2d 193 (1977), a case involving the transfer of the stock of a closely held corporation and in which the Court held that "an *allegation*" of irreparable harm was not required, the Court emphasized that contracts generally are "not specifically enforceable because damages will suffice." Burns, 172 Conn. at 214 (emphasis original; underlining added).[1]

AutoZone also cites Genovese Drug Stores, Inc. v. Bercrose Associates, 563 F. Supp. 1299 (D. Conn. 1983) ("Genovese I"), noting that it was vacated by the Court of Appeals on other grounds, 732 F.2d 286 (2d Cir. 1984) ("Genovese II").  The federal district court in Genovese I enjoined a shopping center landlord from leasing a kiosk to a third-party, Fotomat, based on an anti-competitive restrictive covenant between the landlord and its drug store tenant. Although AutoZone cites Genovese I for the proposition that proof of irreparable harm and lack of an adequate remedy at law are excused for the enforcement of a restrictive covenant, the

---

[1] Gaul v. Baker, 105 Conn. 80 134 A. 250 (1926), cited by Burns for the proposition that "equitable relief is not conditioned on an *allegation* that there is no adequate remedy at law" is not to the contrary. Burns, 172 Conn. at 214 (emphasis original); Plaintiff's Reply, at p. 8.  The Connecticut Supreme Court observed in Gaul that "[e]ven in those complaints seeking purely equitable relief" *in actions to quiet title*, an allegation of lack of an adequate remedy at law was not required in order to state a claim.  105 Conn. at 84.  C.f. Theurkauf v. Miller, 153 Conn. 159, 161 (1965) ("Since the extraordinary remedy of relief by way of an equitable injunction is the specific relief claimed, it was incumbent upon the plaintiffs not only to allege their irreparable damage and lack of an adequate remedy at law, as they have done, but to prove it.").

district court expressly found during its discussion of <u>Hartford Electric</u> that the plaintiff *had* "demonstrated a significant threat of possible irreparable harm that it would suffer if a preliminary injunction is not granted."  563 F. Supp. at 1304.

In the process of vacating <u>Genovese I</u>, the Second Circuit "pause[d] to comment upon" the district court's reliance "upon [<u>Hartford Electric</u>] for the proposition that 'an action for the enforcement of a restrictive covenant is an exception to the general rule that substantive irreparable injury must threaten before an injunction will issue.'"  <u>Genovese II</u>, 732 F. 2d at 288, n.1 (quoting <u>Genovese I</u>, 563 F. Supp. at 1304). [2]  The Second Circuit remarked that regardless of whether a federal court sitting in diversity "must look to state law to determine whether a party is entitled to equitable remedial rights", irreparable injury must be shown before a federal court can issue a preliminary injunction.  <u>Id</u>. (citation omitted). [3]  AutoZone cites no authority excusing a party in federal court from satisfying the federal requirements of lack of an adequate remedy at law and irreparable harm, in order for the court to have jurisdiction to issue an injunctive decree.  None of the Connecticut state law decisions relied upon by AutoZone can excuse these requirements.  <u>See</u> <u>Genovese II</u>, 732 F. 2d at 288, n.1; <u>Doe</u>, 198 F.R.D. at 334.

---

[2] The Second Circuit expressly declined to express any view as to whether "even if federal law establishes an irreparable injury requirement for a district court's grant of a preliminary injunction, state law supplies the standard in a diversity case for determining whether a threatened injury is irreparable; nor [to] express any view on the Connecticut standard."  <u>Genovese II</u>, 732 F. 2d at 288, n.1.

[3] Although the Second Circuit confronted this issue in the context of a preliminary injunction, the Court's remarks extend to permanent injunctions as well, because "[i]t is well-established that 'to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'"  <u>Doe v. Bridgeport Police Dep't</u>, 198 F.R.D. 325, 334 (D. Conn. 2001) (quoting <u>N.Y. State Nat'l Org. for Women v. Terry</u>, 886 F.2d 1339, 1362 (2d Cir. 1989)).

Moreover, the relevant Connecticut authority that is binding on this Court likewise not only found irreparable injury and that the remedy at law was inadequate, it held that the requirements must be satisfied both for injunctive relief and for specific performance:

> Portions of the plaintiff's requested relief appear to be in the nature of specific performance . . . . We note that the analysis is the same whether we label the relief a prohibitive injunction or specific performance. Under the traditional views, specific relief will be denied when . . . the legal remedy is regarded as adequate or the plaintiff is not subjected to irreparable harm by the breach . . . . The specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract . . . .

Marquardt & Roche/Meditz & Hackett, Inc. v. Riverbend Executive Center, Inc., 74 Conn. App. 412, 421, n.2, 812 A.2d 175 (2003).

Marquardt concerned a dispute between a commercial landlord and tenant as to the interpretation and enforceability of lease provisions concerning whether the tenant was entitled under its lease to the exclusive use of certain parking spaces. The lower court enjoined the lessor from interfering with the lessee's exclusive parking spaces, and issued an injunction ordering the lessor to paint stripes on them for the lessee's exclusive use. The Appellate Court upheld the injunction, but only because it agreed that the trial court could have found, in the exercise of its discretion, that "[a] leasehold was taken away from the plaintiff and . . . that is sufficient to constitute irreparable harm." 74 Conn. App. at 422. It reached this finding because the landlord's deprivation of the tenant of the "exclusive" parking spaces that it actually leased from the landlord were as much a part of the tenant's leasehold as the office space it likewise exclusively leased and occupied. Id. Here, by contrast, the Proposed Development will not deprive AutoZone of the use of any of its leasehold, let alone an exclusive area. All of the construction activities will occur outside of AutoZone's leasehold, and none of AutoZone's exclusive use areas are being taken from it.

As the most recent pronouncement from an appellate court in Connecticut of the state law requirements for obtaining specific performance, Marquardt is binding on this Court. Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968). A federal court can rely upon an earlier state supreme court case only if there is persuasive evidence that the highest state court would reach a conclusion different than that of the intermediate court. See Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 678 (2d Cir. 1985).

Moreover, Marquardt applies the general rule, and therefore AutoZone is not able to show persuasive evidence that Connecticut's highest court would reach a conclusion different than that of the Appellate Court in Marquardt. In framing the equitable remedy of specific performance, Connecticut's highest court has held:

> The universal test of the jurisdiction of a court of equity to restrain the breach of a contract is the inadequacy of the legal remedy of damages. An injunction to prevent the breach of a contract is a negative specific enforcement of that contract. And the jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel a specific performance by an affirmative decree. In either case a court of equity cannot exercise jurisdiction unless the injury apprehended from a violation of the contract is of such a nature as not to be susceptible of adequate damages at law.

Dills v. Doebler, 62 Conn. 366, 368, 26 A. 398 (1892) (citing POMEROY'S EQ. JUR., § 1341; HIGH ON INJUNCTIONS, § 695; Morris Canal & Banking Co. v. Soc'y for Mfrs., 5 N.J. Eq. 203; Akrill v. Selden, 1 Barb. 316) (emphasis added). The common law requirements of specific performance are the same. See 71 AM. JUR. 2D Specific Performance § 8, p. 20 (1973) ("The fundamental rule of equity jurisprudence that the jurisdiction of a court of equity depends upon the absence of a plain, adequate, and complete remedy at law is an essential and determining factor in establishing the jurisdiction of equity to decree specific performance of contracts."). "The stated rule requires plaintiffs seeking specific performance to show that such an extraordinary and discretionary remedy is justified because the relief at law is inadequate or that

without such a remedy, they would be irreparably harmed."  DOBBS, supra, § 12.11(3), p. 299;

see also, e.g., Leasco Corp. v. Taussig, 473 F.2d 777, 786 (2d Cir. 1972) ("Before specific

performance may be ordered, remedies at law first should be determined to be incomplete and

inadequate to accomplish substantial justice.") (citing Erie R. Co. v. City of Buffalo, 180 N.Y.

192, 73 N.E. 26 (1904); 11 WILLISTON ON CONTRACTS § 1418 (3d ed. 1968)).

Here, AutoZone cannot establish irreparable harm or that it lacks an adequate remedy at

law.  An injunction generally is not appropriate to enforce a commercial contract, because money

damages nearly always serve to provide the commercial party with an adequate remedy at law.

See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004) ("specific relief is

not the conventional remedy for breach of contract"); United Retail Inc. v. Main St. Mall Corp.,

903 F. Supp. 12, 14 (S.D.N.Y. 1995) ("In the contract setting, injunctive relief is the exception

and not the rule…This is so because the injury must be one requiring a remedy of more than

mere money damages."); USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 491

(S.D.N.Y. 1989) ("In the contract setting, injunctive relief, both interlocutory and final, is the

exception and not the rule.")[4]; see also Berman v. DePetrillo, No. 97-70, 1997 U.S. Dist. LEXIS

3966 (D. D.C. March 20, 1997) (noting that "the loss of a business opportunity is a purely

economic injury, and economic loss alone, however substantial, does not constitute 'irreparable

harm'").

Indeed, the Second Circuit has found irreparable harm arising from breach of a

commercial agreement only in the most exceptional circumstances.  Irreparable harm has been

found to support an injunction in the contract setting when the very existence of a business is

jeopardized by the breach.  See Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1185-86 (2d Cir.

1995) (in order to obtain injunctive relief for breach of contract, plaintiffs must establish that lost profits resulting from breach "are of such magnitude as to threaten the viability of their businesses."); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970) (loss of right to continue business may support claim of irreparable injury where "the right to continue a business in which [plaintiff] had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms."); USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (injunctive relief may be warranted in the contract setting if the breach, left unrestrained, threatens the destruction or catastrophic impairment of an entire business) (citing John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 28-29 (2d Cir. 1978)).

But the threat must be to the *entire* business; impairment of only a portion of the plaintiff's business is not enough to justify an injunction.  See Norcom Elecs. Corp. v. CIM USA Inc., 104 F. Supp. 2d 198, 209 (S.D.N.Y. 2000) (citing Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37-38 (2d Cir. 1995)); New Pac. Overseas Group (USA), Inc. v. Excal Int'l Dev. Corp., No. 99 Civ. 2436 (DLC), 1999 U.S. Dist. LEXIS 6386, at *18 (S.D.N.Y. May 5, 1999).

District courts within this Circuit have addressed strikingly similar claims for irreparable harm in two cases involving corporate chain retailers seeking injunctions pursuant to their commercial leases.  In United Retail, Inc. v. Main Street Mall Corp., the defendant landlord operated a retail shopping mall in New Rochelle, New York.  903 F. Supp. 12, 13 (S.D.N.Y. 1995).  The plaintiff tenant operated approximately 600 retail stores throughout the United States, one of which was located at the New Rochelle mall.  Id.  The landlord announced plans to

---

[4] Under Connecticut law, a lease is a contract and treated as so.  See Cent. New Haven

redevelop the mall and informed the tenant that services to the mall would be "discontinued" and "closed to the public" during construction. Id. The tenant demanded that the landlord comply with the lease and sought injunctive relief to stop the development project. Id. The district court (B. Parker, J.) denied the injunction principally because the tenant's store at the New Rochelle mall was just one of 600 stores that the tenant operated throughout the country. Id. at 14. As a result, there was no threat that the landlord's act of developing the property would "wipe out [the plaintiff's] entire operation". Id. An award of damages was an adequate remedy in United Retail because, as is the case with AutoZone, the tenant could not show that any pecuniary loss that would result from the development would, for example, jeopardize its solvency or require substantial changes in its company-wide operations. Id.

Similarly, the district court in Optivision, Inc. v. Syracuse Shopping Center Associates, held that a national chain retailer could not establish irreparable harm because money damages could adequately redress any loss caused by the alleged breach of the retail tenant's lease. 472 F. Supp. 665, 685-86 (N.D.N.Y. 1979). Optivision sold optical goods at stores located throughout New York and Georgia, and affiliated stores in Maryland and Washington, D.C. Id. at 673. Optivision had a five-year lease, with an option to extend the term for an additional five years, for retail space at the Northern Lights Shopping Center near Syracuse. Id. at 670. The landlord leased a different retail unit at the Shopping Center to one of Optivision's competitors, and granted the competitor the right to be the exclusive optical retailer at the Shopping Center. Id. Pursuant to the competing store's exclusivity clause, the landlord sought to remove Optivision from the Shopping Center location. Id. Optivision asserted that it had exercised its renewal option and sought to enjoin the landlord from removing it from the premises. Id. The Court

---

Dev. Corp. v. La Crepe, Inc., 177 Conn. 212, 214-15, 413 A.2d 840 (1979).

ruled that even if Optivision were correct that the landlord's actions would violate its lease, Optivision could not demonstrate irreparable harm because there was no evidence that the landlord's actions would drive Optivision out of business.  Id. at 685-86.  Because Optivision operated a number of other retail outlets, the continued operation of Optivision as a business was not threatened.  Id.

United Retail and Optivision are consistent with decisions from other courts within the Second Circuit refusing to find irreparable harm in circumstances where the harm arising from a prospective breach of contract pertains to one, relatively discrete business activity of a larger entity.  In Litho Prestige v. News America Publishing, Inc., for example, the plaintiff was a commercial printer with total revenues of $179 million (Canadian) annually.  652 F. Supp. 804, 807 (S.D.N.Y. 1986).  Under the contract at issue, the plaintiff printed a popular magazine for $6.5 million (Canadian) annually, representing less than 4% of its total revenues.  Id.[5]  Upon the magazine publisher's purported termination of the contract, the plaintiff sought injunctive relief, alleging that losing the business it had with the defendant would result in irreparable harm.  Id. at 807-08.  The Court held, however, that the plaintiff could not establish irreparable harm because there was no serious contention that the loss of 4% of its business would threaten the ability of the plaintiff to continue in business or even seriously cripple plaintiff.  Id; Cf. Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1105 (S.D.N.Y. 1989) (irreparable injury established where plaintiff demonstrated that it would not be able to continue as a going concern if contract representing 90-95% of its business was terminated).

---

[5] Litho Prestige, which was the party to the contract and the named plaintiff, was a division of Unimedia Group, Inc.  Because Unimedia was seeking the injunction on Litho Prestige's behalf, the Court in Litho Prestige compared the impact of the contract breach to the extent of Unimedia's business.  Id. at 805, 807.

Likewise, in <u>USA Network v. Jones Intercable, Inc.</u>, the plaintiff, a cable network reaching approximately 45 million cable subscribers nationwide, sued to enjoin a cable system operator from terminating a contract to provide the plaintiff's cable network to 830,000 subscribers in 21 states. 704 F. Supp. 488, 489-90 (S.D.N.Y. 1989). The Court found that the plaintiff had failed to establish irreparable harm because there could be no serious contention that the termination of the plaintiff's network from the defendant's systems, which serviced less than 2% of the plaintiff's viewers, would devastate or threaten the very existence of plaintiff's business. <u>Id</u>. at 491-92. Although defendant's termination caused a substantial disruption in the plaintiff's business, the Court nonetheless ruled that the breach could not justify an injunction because it did not threaten the "destruction or catastrophic impairment of an ongoing business" so as to qualify as an exceptional circumstance warranting injunctive relief in enforcing the terms of a contract. <u>Id</u>. at 491 (citing <u>John B. Hull</u>, 588 F.2d at 28-29). "Mere disruptions in business, however, though perhaps substantial, do not fall within this exception." <u>Id</u>.; <u>see also</u> <u>Jack Kahn Music Co. v. Baldwin Piano & Organ Co.</u>, 604 F.2d 755, 763 (2d Cir. 1979) (no irreparable harm where piano manufacturer attempted to terminate its dealership contract with a retail seller that sold many brands of musical instruments); <u>C-B Kenworth, Inc. v. Gen. Motors Corp.</u>, 675 F. Supp. 686, 687-88 (D. Me. 1987) (no irreparable harm where GMC truck sales accounted for less than five percent of total gross profits, because termination would not threaten its ability to continue in business).

In short, the well-established principle that irreparable harm does not result from breach of a commercial contract unless the breach seriously threatens plaintiff's business viability applies squarely to this case. There simply is no scenario in which the Proposed Development could threaten the viability of AutoZone's 3,500 store $5.5 billion operation. Moreover, even if

the principle applied to the single Riverview Plaza AutoZone store, it could experience losses in sales to a certain extent and the store performance would still be considered profitable and would still comply with AutoZone's financial standards for the opening of new stores. Therefore, AutoZone cannot prove irreparable harm and is not entitled to injunctive relief.

**Plaintiff's Proposed Conclusion of Law:**

8. The balance of the equities requires an examination first of the status of the parties before Ritz and AvalonBay decided to develop the parking lot.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** See AvalonBay's Response to ¶ 3, above.

**Plaintiff's Proposed Conclusion of Law:**

9. The plaintiff entered into the Lease knowing the following were granted to it and required by the Lease:

   a.    It enjoyed an "endcap" location;

   b.    There was plentiful convenient, customer friendly parking;

   c.    Visibility was excellent from all surrounding roads;

   d.    Signage was visible from all surrounding roads;

   e.    Interior traffic circulation was excellent;

   f.    No material changes could be made to the layout or configuration of the shopping center;

   g.    No freestanding buildings could be built in the open field parking lot.

   **Ritz's Response:** Plaintiff has offered no evidence as to its knowledge of the circumstances in existence at the time it entered into the Lease, and this proposed conclusion is unsupported. Moreover, the Lease simply does not provide that no material changes could be

made to the layout or configuration of the shopping center, so that it would have been unreasonable to rely on such a belief.  To the contrary, the Lease includes multiple provisions for material changes, with the tenant's consent.  See also AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether AutoZone entered into the Lease allegedly knowing that under the Lease that:  a) it "enjoyed an 'endcap' location"; b)"[t]here was plentiful convenient, customer friendly parking"; c) "[v]isibility was excellent from all surrounding roads"; d) "[s]ignage was visible from all surrounding roads"; e) "[i]nterior traffic circulation was excellent"; f) "[n]o material changes could be made to the layout or configuration of the shopping center"; g) "[n]o freestanding buildings could be built in the open field parking lot" is irrelevant and raises questions of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  See AvalonBay's Response to ¶ 6, above.

**Plaintiff's Proposed Conclusion of Law:**

10.     The lease terms, including rent to be paid, decision to locate in Norwalk, Connecticut and term of the lease were all predicated upon those provisos.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "[t]he lease terms, including rent to be paid, decision to locate in Norwalk, Connecticut and term of the lease were all predicated upon those provisos" is irrelevant and raises a question of fact, not of law.  Subject to and without waiving the foregoing objection, denied.

**Plaintiff's Proposed Conclusion of Law:**

11.     AutoZone has remained faithful to its end of the bargain. It has paid its rent and fulfilled each and every other obligation required of it under the Lease.

**Ritz's Response:**  Denied.  While there is no dispute that AutoZone has paid its rent, AutoZone has breached the Lease by unreasonably delaying and withholding its consent to the Proposed Development; it has also misused the common areas, including especially the parking lot, by servicing customer vehicles in the parking lot and by aiding and abetting customers' misuse of the parking facility as an al fresco automotive repair center.  See also AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "AutoZone has remained faithful to its end of the bargain" allegedly by paying rent fulfilling "each and every other obligation required of it under the Lease" raises a question of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  AvalonBay has not honored its obligations under the Lease by unreasonably withholding its consent to the Proposed Development.  See AvalonBay's Response to ¶ 18, below.

<strong>Plaintiff's Proposed Conclusion of Law:</strong>

12.    Customers of AutoZone have come to know the store and its relative convenience for parking and accessibility.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "[c]ustomers of AutoZone have come to know the store and its relative convenience for parking and accessibility" is irrelevant and raises a question of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  There are no customers on AutoZone's witness list, nor has AutoZone disclosed any admissible evidence to support such a claim.  Further, any claim by AutoZone that it would lose customers as a result of the Proposed Development is unsupported and purely speculative.  Even assuming, *arguendo*, that AutoZone were to lose any customers as

-68-

a result of the Proposed Development, the concomitant loss in sales to AutoZone should be susceptible of calculation and money damages could adequately redress any loss.  Therefore, AutoZone cannot show that such harm would be irreparable or that it lacks an adequate remedy at law, making injunctive relief inappropriate.  Optivision, Inc. v. Syracuse Shopping Center Associates, 472 F. Supp. 665, 685 (N.D.N.Y. 1979) ("The ability to compute monetary damages establishes that the harm which plaintiff would suffer is not irreparable in nature."); see also USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 492-93 (S.D.N.Y. 1989) ("[A]n informed, perhaps rough, approximation of damages does not render the legal remedy inadequate.  It is only where damages are clearly difficult to assess and measure that equitable relief is appropriate.") (internal quotation marks and citation omitted) (emphasis in original).

In Optivision, for example, Optivision's chairman testified that he was able to predict the approximate annual dollar volume of sales that Optivision would expect to receive under the conditions then prevailing at the Northern Lights Shopping Center.  472 F. Supp. at 685.  As a consequence, it was possible to determine, with a reasonable degree of certainty, the damages Optivision would suffer if its lease was breached.  Id.; see also Kmart Corp. v. First Hartford Realty Corp., 810 F. Supp. 1316, 1331 (D. Conn. 1993) (retailer seeking specific performance injunction had an adequate remedy at law by way of a claim for dollar damages for breach of lease because the value of its injury was capable of being quantified in dollars and enough information existed to determine damages); Cranbrook Ice Cream, Inc. v. Frusen Gladje Franchise, Inc., No. 88 CV 1829, 1988 U.S. Dist. LEXIS 7491, at *5 (E.D.N.Y. July 11, 1988) (irreparable harm not established because lost sales may be computed by reference to movant's previous sales performance); Safeway, Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439, 470 (E.D. Va. 2003) (injunctive relief denied because damages were ascertainable in case where

retailer claimed that landlord's elimination of surface parking would adversely impact store sales or cause closing of store, because there was an abundance of sales and profit data available for the store, which provided a baseline from which it was possible to calculate actual damages). See also AutoZone's Response to ¶ 7, above.

**Plaintiff's Proposed Conclusion of Law:**

13.    AutoZone has invested money in marketing and in the erection of signs on the exterior façade of the store to attract customers to "Get in the Zone".

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "AutoZone has invested money in marketing and in the erection of signs on the exterior façade of the store to attract customers to 'Get in the Zone'" is irrelevant and raises a question of fact, not of law. Subject to and without waiving the foregoing objection, denied.  Any claim by AutoZone that it would lose money that it invested in the marketing of its Riverview Plaza store or its exterior façade is unsupported and purely speculative.  Even assuming, *arguendo*, that AutoZone's Riverview Plaza store were to go out of business as a result of the Proposed Development, the loss to AutoZone allegedly attributable to AutoZone's investments in the location should be capable of calculating with reasonable precision, and money damages could adequately redress any such loss.  See AutoZone's Response to ¶ 12, above.

**Plaintiff's Proposed Conclusion of Law:**

14.    When Ritz and AvalonBay began the process of doing their deal, they both knew of the AutoZone lease and the concerns it raised to the ability and viability of any deal. Thus, any detriment to Ritz or AvalonBay is self imposed, of their own making or manufactured.

**Ritz's Response:**  See AvalonBay's Response, below.

-70-

**AvalonBay's Response:**  AvalonBay objects that whether "[w]hen Ritz and AvalonBay began the process of doing their deal, they both knew of the AutoZone lease and the concerns it raised to the ability and viability of any deal" allegedly making "any detriment to Ritz or AvalonBay . . . self imposed, of their own making or manufactured" is irrelevant and raises a question of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  AvalonBay learned of the terms of the AutoZone lease during the period of its due diligence with Ritz, but it did not know of AutoZone's concerns or its opposition to the Proposed Development until after it contracted with Ritz.  Testimony of Mark Robbins, Mark Forlenza and William McLoughlin.

### Plaintiff's Proposed Conclusion of Law:

15.     If the Proposed Development proceeds, the plaintiff will lose each of the benefits it contracted for in its Lease. As a result, it may lose a viable store, lose a prime location and/or lose market penetration in Norwalk. In addition, monetary loses may be incurred but are not ascertainable because they will rely upon factors that can only be determined when they occur.

**Ritz's Response:**  See AvalonBay's Response, below.

**AvalonBay's Response:**  AvalonBay objects that whether "[i]f the Proposed Development proceeds, the plaintiff will lose each of the benefits it contracted for in its Lease" and that allegedly "[a]s a result, it may lose a viable store, lose a prime location and/or lose market penetration in Norwalk," and further whether "monetary loses may be incurred but are not ascertainable because they will rely upon factors that can only be determined when they occur" raises questions of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  AutoZone has no evidentiary support for its claims that the Proposed Development "may" cause it to lose the Riverview Plaza store or market penetration in Norwalk.

Injunctive relief "should issue not upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent irreparable injury."  USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (citing State of N.Y. v. Nuclear Reg. Comm'n, 550 F.2d 745 (2d Cir. 1977)). "Conclusory statements of loss represent an insufficient basis for a finding of irreparable harm." Litho Prestige v. News Am. Publ'g, Inc., 652 F. Supp. 804, 809 (S.D.N.Y. 1986).  See also Safeway, Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439, 470 (E.D. Va. 2003) (injunctive relief denied in case where retailer claimed that landlord's elimination of surface parking would adversely impact store sales or cause closing of store because the retailer failed to show irreparable harm).  See AutoZone's Response to ¶ 13, above.

<strong>Plaintiff's Proposed Conclusion of Law</strong>:

16.    On the other hand, Ritz and AvalonBay will suffer no damage, monetary or otherwise by the specific performance of the Lease – other than the risk and losses they took when they pursued the Proposed Development knowing full well of the AutoZone Lease and AutoZone's strenuous objections to the Proposed Development.  Testimony of Mark Robbins, Eric Berliner, Mark Forlenza and William McLoughlin.

<strong>Ritz's Response</strong>:  See AvalonBay's Response, below.

<strong>AvalonBay's Response</strong>:  AvalonBay objects that whether "Ritz and AvalonBay will suffer no damage, monetary or otherwise by the specific performance of the Lease – other than the risk and losses they took when they pursued the Proposed Development" allegedly "knowing full well of the AutoZone Lease and AutoZone's strenuous objections to the Proposed Development" raises questions of fact, not of law.  Subject to and without waiving the foregoing objection, denied.  AvalonBay learned of the terms of the AutoZone lease during the period of its

-72-

due diligence with Ritz, but it did not know of AutoZone's concerns or its opposition to the Proposed Development until after it contracted with Ritz.

AvalonBay has incurred over $2 million in costs through June 2005 in connection with the development. These costs include payments of approximately $1.1 million to Ritz under the Purchase and Sale Contract, including continuing monthly payments of $30,000.00. These costs also include approximately $1 million in development costs such as architectural, engineering, design and permitting expenses. If the project were not to go forward due to the issuance of an injunction as sought by plaintiff, then AvalonBay would suffer a substantial loss. Further, AvalonBay would lose its expectancy of the profit for the project. Testimony of Mark Forlenza.

**Plaintiff's Proposed Conclusion of Law:**

17.     Therefore, the balance of the equities clearly falls in favor of AutoZone and against Ritz and AvalonBay in the circumstances presented here.

**Ritz's Response:** See AvalonBay's Response, below.

**AvalonBay's Response:** AvalonBay objects that whether "the balance of the equities clearly falls in favor of AutoZone and against Ritz and AvalonBay" raises a question of fact, not of law. Subject to and without waiving the foregoing objection, denied. See AvalonBay's Responses to ¶ 16, above.

**Plaintiff's Proposed Conclusion of Law:**

18.     "[W]hen a landlord contractually retains the discretion to withhold consent to an assignment of a tenant's lease, he must exercise that discretion in a manner consistent with good faith and fair dealing." Warner v. Konover, 210 Conn. 150, 155 (1989)." AutoZone responded shortly after learning of the Proposed Development that it opposed it. It is clear that the Proposed Development will materially and adversely impact upon the accessibility, visibility and

parking.  The Lease provides that no construction will occur that changes the layout of the Shopping Center.  Thus, AutoZone has unreasonably withheld its consent to the Proposed Development.

      **Ritz's Response:**  See AvalonBay's Response, below.

      **AvalonBay's Response:**  The language of the Lease unambiguously shows that Ritz and ADAP contemplated when they entered into the Lease that Ritz could construct "free-standing buildings, . . . trees, shrubs, . . . or other obstructions . . . in front of the leased premises" and requires AutoZone to consent to such changes unless it can demonstrate a commercially reasonable basis to withhold its consent.  See AvalonBay's Response to ¶ 6, above.

      A lease provision providing that consent will not unreasonably be withheld is a promise and upon its breach the other party is entitled to all the remedies available for breach of a promise.  RESTATEMENT (SECOND) PROPERTY (LANDLORD AND TENANT), § 15.2, cmt. h (1977).  The Connecticut Supreme Court has held in the commercial lease context that a landlord who contractually retains the discretion to withhold consent to the assignment of a tenant's lease must exercise that discretion in a manner consistent with good faith and fair dealing.  Warner v. Konover, 210 Conn. 150, 154-55, 553 A.2d 1138 (1989).  Thus, "[a]n unreasonable withholding of consent to an assignment of a lease of commercial premises is a breach of the covenant of good faith and fair dealing.  The good faith and fair dealing obligations between a commercial landlord and tenant are mutual."  Greenwich Plaza, Inc. v. Whitman & Ransom, No. CV 95-054081, 1996 WL 240458, at *7 (Conn. Super. Ct. Mar. 19, 1996) (citing Konover, 210 Conn. at 155).

      In Speare v. Consolidated Assets Corp., 360 F. 2d 882, 886 (2d Cir. 1966), a case involving New York law, the Second Circuit found that a landlord's agreement that it will not

unreasonably withhold consent to a tenant's assignment of a lease is viewed as a covenant to permit assignment absent demonstration by the landlord of just cause.  See also Toys "R" Us, Inc. v. NBD Trust Co. of Ill., 904 F.2d 1172, 1177 (7th Cir. 1990) (lease language that "[t]enant may not assign…the Demised Premises, without first obtaining Landlord's consent thereto, which consent shall not be unreasonably withheld", imposed a duty on the landlord "to consent, on a reasonable basis, to a sublease…."); Farrendon Corp. v. Genesco, Inc., 822 F. Supp. 1576, 1579 (N.D. Ga. 1992) (observing that a survey of state law indicated that because "a [commercial] lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness,…withholding consent…, which fails the test for good faith and commercial reasonableness, constitutes breach of the agreement") (internal quotation marks omitted; citation omitted); Homa-Goff Interiors, Inc. v. Cowden, 350 So, 2d 1035, 1038 (Ala. 1977) ("[W]here the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent…The landlord's rejection should be judged under a test applying a reasonable commercial standard.").

From the start, AutoZone demanded that the project be dropped. AutoZone refused to enter a dialogue with AvalonBay as requested by AvalonBay in an effort to address AutoZone's concerns, and has paid little notice to the considerable steps taken by AvalonBay to resolve those concerns, including the provision of 15 dedicated parking spaces for AutoZone customers and the reduction of the corner of the new building closest to the AutoZone store.  Significantly, AutoZone to this day has not determined whether its business will be impacted by the project to support any commercial justification for withholding its consent. In fact, the AutoZone Vice President who verified the original complaint conceded during his deposition that he was not familiar enough with the details of the proposed development to make a reasonable assessment

of whether the store will be adversely impacted.  Further, AutoZone has conducted no analyses
to supporting a claim that the Proposed Development would have any adverse financial impact
on its business.  AutoZone has and continues to unreasonably withhold its consent to the
Proposed Development.

## VII.  EVIDENCE

### A.  LIST OF WITNESSES

#### (1) Plaintiff's Witnesses

1.  Terry McKee, AutoZone, Inc., 12350 South Front Street, Memphis, TN
38101.

    a.  Brief Summary: The store in Norwalk, Connecticut and its visibility, accessibility and parking; the lease and its benefits; the affect of the Proposed Development; the siting of stores by AutoZone; contacts with AvalonBay concerning its Proposed Development.

    b.  Expected Duration of the Witness' Direct Testimony:  1 ½ hours.

2.  James O. McClain, AutoZone, Inc., 12350 South Front Street, Memphis,
TN 38101.

    a.  Brief Summary: Contacts with AvalonBay concerning its Proposed Development; objections to the Proposed Development; terms and conditions of the Lease.

    b.  Expected Duration of the Witness' Direct Testimony:  1 hour.

3.  Alex Oliphant, AutoZone, Inc., 12350 South Front Street, Memphis, TN
38101.

    a.  Brief Summary: The store in Norwalk, Connecticut and its visibility, accessibility and parking; the lease and its benefits; the affect of the Proposed Development; the siting of stores by AutoZone.

b.    Expert Opinion and Summary: The proposed AvalonBay development will negatively and adversely affect the convenient retail atmosphere presently existing for AutoZone customers. In addition, "revitalization," if successful, will not improve upon population density, ethnic makeup, median age, median income, proximity to major thoroughfares, good visibility, accessibility from roadways and parking areas, with customer friendly parking. Further, the position of a residential apartment building over the parking lot with limited ingress and egress make it less attractive to the AutoZone customer and therefore less likely that the store will continue to enjoy the level of sales it presently has. The AutoZone store located in Norwalk, Connecticut is located in a trade area ideally suited for the population density, ethnic makeup, median age, median income, proximity to major thoroughfares, good visibility, accessibility from roadways and parking areas, with customer friendly parking. The AvalonBay Development intends to construct a building in the open parking lot, which reduces visibility, accessibility to parking, accessibility from parking areas to the store, and lacks customer friendly parking to the AutoZone store.

c.    Area Of Expertise: Real estate, store demographics, trade area and customer behavior.

d.    Materials Relied Upon: Existing layout, Proposed Development Plans and Maps indicating demographics in the trade area.

e.    Expected Duration of the Witness' Direct Testimony:  3 hours.

-77-

4.      Robert Blank, 8 Lunar Drive Woodbridge, CT 06525.

     a.     Brief Summary: The store in Norwalk, Connecticut and its visibility, accessibility and parking; the lease and its benefits; the affect of the Proposed Development; the siting of stores by AutoZone.

     b.     Expert Opinion and Summary: The existing site provides an ideal retail location on account of its location, accessibility from major thoroughfares, accessibility from the parking lot to the store, excellent visibility, and convenient customer friendly parking. The proposed AvalonBay development will negatively and adversely affect the desirability for AutoZone customers to frequent its store on account of reduced accessibility, visibility and convenient parking. The existing retail in which the AutoZone store exists will be made less desirable to retailers such as AutoZone if the AvalonBay development is constructed. The AutoZone store located in Norwalk, Connecticut is located in a trade area ideally suited for AutoZone given its location, proximity to major thoroughfares, good visibility, accessibility from road ways and parking areas, with customer friendly parking. The AvalonBay Development intends to construct a building in the open parking lot which reduces, visibility, accessibility to parking, accessibility from parking areas to the store and lacks customer friendly parking.

     c.     Area Of Expertise: Real estate and customer behavior.

     d.     Materials Relied Upon: Existing layout and Proposed Development Plans.

     e.     Expected Duration of the Witness' Direct Testimony:  1 ½ hours.

5.     Eric Berliner, 3 New York Plaza, 18th Floor, New York, NY 10004.

       a.     Brief Summary: The Lease, sale of a portion of the Shopping Center to
              AvalonBay, claims of breach of lease and AutoZone's objections to the
              Proposed Development.

       b.     Expected Duration of the Witness' Direct Testimony: ½ hour.

6.     Allen J. Roberts, III, 6 Whippoorwill Hill Road, Newtown, Ct 06470.

       a.     Brief Summary: The Lease; sale of a portion of the Shopping Center to
              AvalonBay; knowledge by AvalonBay of the AutoZone lease; potential
              basis by AutoZone for objecting to the Proposed Development.

       b.     Expected Duration of the Witness' Direct Testimony:  15 minutes.

7.     Mark Robbins, 94E East Avenue, New Canaan, Connecticut 06840.

       a.     Brief Summary: Sale of a portion of the Shopping Center to AvalonBay;
              plans of AvalonBay for the Proposed Development; time of construction
              and effect on the existing tenants.

       b.     Expected Duration of the Witness' Direct Testimony:  1 ½ hours.

8.     Peter Kastl, 422 Summer Street, Stamford, Connecticut.

       a.     Brief Summary: Plans for the Proposed Development, accessibility,
              parking and visibility.

       b.     Expected Duration of the Witness' Direct Testimony:  1 hour.

       **(2) *Defendant Ritz Realty Corporation's Witnesses***

1.     Eric Berliner, President, Ritz Realty.

       a.     Brief Summary:  Negotiation and formation of the Lease; circumstances in
              existence at the time the Lease was executed; operation of the Riverview

-79-

Plaza; operation of the parking area; efforts to obtain AutoZone's

compliance with Lease terms; efforts to obtain AutoZone's consent to

Proposed Development; effects of the delays and potential effects of an

injunction on Ritz Realty.

    b.    Expected Duration of the Witness' Direct Testimony:  1 hour.

2.    Susan Valente, Property Manager, Ritz Realty.

    a.    Brief Summary:  Operation of the Riverview Plaza; operation of the

parking area; efforts to obtain AutoZone's compliance with Lease terms.

    b.    Expected Duration of the Witness' Direct Testimony:  ½ hour.

3.    Cory Gubner, President and CEO, GVA Williams of Connecticut.

    a.    Brief Summary:  Efforts by AutoZone to find alternate store locations for

the Norwalk store prior to the announcement of the Proposed

Development.

    b.    Expected Duration of the Witness' Direct Testimony:  ½ hour.

**(3) *Defendant AvalonBay Communities, Inc.'s Witnesses***

1.    Mark H. Robbins, MHR Development, LLC, 190 Post Road, Westport, CT

06880.

    a.    Brief Summary:  The Proposed Development, construction logistics,

application and plans submitted to and approved by City of Norwalk,

improvements to be constructed, pre and post-development conditions

including parking, visibility of AutoZone store, signage, internal traffic

circulation, and loading facilities and operations, current and proposed site

conditions and functioning, façade improvements to be made,

communications and course of dealing regarding the Proposed
Development, actions by the City of Norwalk in support of the Proposed
Development, the purchase and sale agreement between Ritz Realty Corp.
("Ritz") and AvalonBay, AvalonBay's acquisition of a portion of
Riverview Plaza, efforts undertaken and expenditures by AvalonBay in
connection with the Proposed Development, losses to be sustained by
AvalonBay resulting from the imposition of injunctive relief, measures
taken to address AutoZone concerns, and the subjects disclosed by
AvalonBay in its Responses to Plaintiff's Proposed Findings of Fact and
Conclusions of Law.

    b.      Expected Duration of the Witness' Direct Testimony:  3 hours.

2.    Mark Forlenza, Vice-President, Development, AvalonBay Communities, Inc.,
Suite 200, 220 Elm Street, New Canaan, CT 06840.

    a.      Brief Summary:  The Proposed Development, construction logistics,
application and plans submitted to and approved by City of Norwalk,
improvements to be constructed, pre and post-development conditions
including parking, visibility of AutoZone store, signage, internal traffic
circulation, and loading facilities and operations, current and proposed site
conditions and functioning, façade improvements to be made,
communications and course of dealing regarding the Proposed
Development, actions by the City of Norwalk in support of the Proposed
Development, the purchase and sale agreement between Ritz Realty Corp.
("Ritz") and AvalonBay, AvalonBay's acquisition of a portion of

Riverview Plaza, efforts undertaken and expenditures by AvalonBay in connection with the Proposed Development, losses to be sustained by AvalonBay resulting from the imposition of injunctive relief, measures taken to address AutoZone concerns, and the subjects disclosed by AvalonBay in its Responses to Plaintiff's Proposed Findings of Fact and Conclusions of Law.

      b.     Expected Duration of the Witness' Direct Testimony:  1 ½ hours.

    3.     William McLaughlin, Vice President, AvalonBay Communities, Inc., Suite 804N, 1250 Hancock Street, Quincy, MA 02169

      a.     Brief Summary:  The Proposed Development, construction logistics, application and plans submitted to and approved by City of Norwalk, improvements to be constructed, pre and post-development conditions including parking, visibility of AutoZone store, signage, internal traffic circulation, and loading facilities and operations, current and proposed site conditions and functioning, façade improvements to be made, communications and course of dealing regarding the Proposed Development, actions by the City of Norwalk in support of the Proposed Development, the purchase and sale agreement between Ritz Realty Corp. ("Ritz") and AvalonBay, AvalonBay's acquisition of a portion of Riverview Plaza, efforts undertaken and expenditures by AvalonBay in connection with the Proposed Development, losses to be sustained by AvalonBay resulting from the imposition of injunctive relief, measures taken to address AutoZone concerns, and the subjects disclosed by

AvalonBay in its Responses to Plaintiff's Proposed Findings of Fact and Conclusions of Law.

    b.    Expected Duration of the Witness' Direct Testimony:  1 hour.

4.    Peter Kastl, AIA, Perkins Eastman Architects PC, 422 Summer Street, Stamford, CT  06901.

    a.    Brief Summary (fact testimony):  The Proposed Development, construction logistics, application and plans submitted to and approved by City of Norwalk, improvements to be constructed, pre and post-development conditions including parking, visibility of AutoZone store, signage, internal traffic circulation, and loading facilities and operations, current and proposed site conditions and functioning, façade improvements to be made, actions by the City of Norwalk in support of the Proposed Development, losses to be sustained by AvalonBay resulting from the imposition of injunctive relief, measures taken to address AutoZone concerns, and the subjects disclosed by AvalonBay in its Responses to Plaintiff's Proposed Findings of Fact and Conclusions of Law.

    b.    Expert Opinion and Summary:  Perkins Eastman was asked to develop an accurate drawing showing the relationship between the proposed Avalon building and the existing Riverview Plaza building.  The viewpoint was to be from the intersection of Belden and Cross Streets, as it would appear to a motorist who was stopped at the traffic light, having approached from Route 7, exit 1.  A digital photograph was taken of the site from an

automobile stopped at the Cross/Belden intersection traffic light, at the cross-bar, in the center eastbound lane prepared to turn south onto Belden and then east into the existing parking lot.  An accurate computer-generate perspective image of the proposed building was prepared.  The digital photograph was cleaned of the things that would be blocked by the new building.  The existing ground sign at the Belden entrance to the parking lot was removed from the photograph based on the understanding that it may be replaced by a better-located sign at the Belden/Cross corner of the site.  The new building perspective image was adjusted in scale, location and viewpoint until it correctly fit into the digital photograph.  The two images were combined in the computer to form a single picture, Drawing A, showing the proposed building within a photograph of the existing surroundings.  The drawing field of view was increased to the left in Drawing B to illustrate a potential new location for the existing pylon sign.  Drawing C illustrates the camera location used for the digital photograph.  In addition to the 11/15/04 perspective Drawings A and B and the Viewpoint Original Location Plan, Perkins Eastman previously prepared the following studies constructed from a viewpoint farther south on Belden Avenue:  MW 0582 Project entry with existing sign in present condition; MW 0588 Project entry with sign shown restored to original condition; and MW 0583 Project entry with sign removed.

c.      Area Of Expertise:  Licensed Architect.

    d.    Materials Relied Upon:  Digital photographs and computer-generated perspective images.  The methods used as describe above were those commonly employed by architects to depict proposed buildings for review by owners and regulatory agencies.

    b.    Expected Duration of the Witness' Direct Testimony:  2 hours.

5.    Terry McKee, AutoZone, Inc., 12350 South Front Street, Memphis, TN  38101.

    a.    Brief Summary:  ADAP Lease, proposed development, past, present and future site conditions, communications regarding the Proposed Development, efforts undertaken by AutoZone in connection with potential alternative sites for the existing Norwalk Riverview Plaza AutoZone store, sales data and financial performance of the Riverview Plaza AutoZone store and AutoZone.

    b.    Expected Duration of the Witness' Direct Testimony:  1 ½ hours.

6.    James O. McClain, AutoZone, Inc., 12350 South Front Street, Memphis, TN 38101.

    a.    Brief Summary:  AutoZone's course of dealings with AvalonBay and Ritz, and AutoZone's objections to the Proposed Development.

    b.    Expected Duration of the Witness' Direct Testimony:  ½ hour.

7.    Alex Oliphant, AutoZone, Inc., 12350 South Front Street, Memphis, TN  38101.

    a.    Brief Summary:  The Proposed Development, past, present and future site conditions, communications regarding the Proposed Development, efforts undertaken by AutoZone in connection with potential alternative sites for the existing Norwalk Riverview Plaza AutoZone store, sales data and

financial performance of the Riverview Plaza AutoZone store and AutoZone.Robert Blank, Levy Miller Maretz LLC, 8 Lunar Drive, Woodbridge, CT 06525.

    b.    Expected Duration of the Witness' Direct Testimony: 2 hours.

8.    Robert Blank, Levy Miller Maretz, LLC, 8 Lunar Drive, Woodbridge, CT 06525.

    a.    Brief Summary: Efforts to locate alternate sites for AutoZone, and criteria employed by AutoZone in connection with such search.

    b.    Expected Duration of the Witness' Direct Testimony: 1 hour.

9.    Eric Berliner, 3 New York Plaza, 18th Floor, New York, NY 10004.

    a.    Brief Summary: ADAP lease, the Proposed Development, parking, unauthorized parking on surface lot, Pathmark lease and operations on subject site, potential releasing of the Pathmark space and impacts on parking, use of parking lot by AutoZone and AutoZone customers for automobile diagnosis and repairs, communications with AutoZone representatives regarding proposed development, current, past and future operations and site conditions of Riverview Plaza, and AutoZone compliance with Lease obligations.

    b.    Expected Duration of the Witness' Direct Testimony: 1 hour.

10.    Susan Valente, Property Manager, Ritz Realty.

    a.    Brief Summary: Operation of the Riverview Plaza; operation of the parking area; Riverview Plaza signage and efforts to obtain AutoZone's compliance with Lease terms.

    b.    Expected Duration of the Witness' Direct Testimony: 15 minutes.

11.    Alex Knopp, Mayor of the City of Norwalk and/or Timothy Sheehan, Director of the Norwalk Development/Redevelopment Agency.

      a.    Brief Summary:  The desirability of the Proposed Development to the City of Norwalk and the benefits of the Proposed Development to the public.

      b.    Expected Duration of the Witness' Direct Testimony:  15 minutes.

## VIII.    <u>TRIAL EXHIBITS</u>

### (1) *Plaintiff ADAP, Inc.'s Trial Exhibits*

Exhibit 1 – Plans (Oversized) (PK 0055 – 0078);

    <u>**Ritz's response:**</u>  No objection.

    <u>**AvalonBay's response**</u>:  No objection**.**

Exhibit 2 – Picture (Exhibit 10, Deposition of 12/28/04);

    <u>**Ritz's response:**</u>  No objection.

    <u>**AvalonBay's response:**</u>  No objection.

Exhibit 3 – Picture (Exhibit B – AutoZone Motion For Summary Judgment);

    <u>**Ritz's response:**</u>  See AvalonBay's objection, below.

    <u>**AvalonBay's response:**</u>  OBJECTION on the grounds of relevance, authentication and lack of foundation as the photograph contains extraneous handwritten material.

    <u>**Plaintiff's claim:**</u>  The photograph depicts the visibility of the AutoZone store. Many witnesses can lay an appropriate foundation including: Peter Kastl – AvalonBay's architect, Terry McKee and Alex Oliphant.  The plaintiff is unclear on the reference to handwritten material but does not claim it.

Exhibit 4 – Picture (4/13/03 – Exhibit B – AutoZone Motion For Summary Judgment);

**Ritz's response**:  No objection.

**AvalonBay's response**:    No objection.

Exhibit 5 – Lease (JM 00339 – 00369);

**Ritz's response**:  See AvalonBay's objection, below.

**AvalonBay's response**:  OBJECTION to pages JM00365 and JM00369 on the grounds of authenticity, lack of foundation and relevancy.  Plaintiff has not established that either of these pages were part of the operative lease between ADAP, Inc. and Ritz Realty Corp.

**Plaintiff's claim**:  The referenced pages were a part of the Lease obtained and maintained in the ordinary course of business of ADAP.  James O. McClain, the AutoZone in house real estate attorney, will testify that he obtained possession of all Leases at the time AutoZone aquired ADAP in 1998 and that the Lease, in the form offered to the Court is as depicted in the exhibit.

The defendant, Ritz, admits to the existence of the Lease and even the referenced pages, but its copy contains a folded page on the important question of dedicated parking for the plaintiff.  The defendant, Ritz, admits, as it must, that the Lease contains reference to the dedicated parking depicted on page JM00369. It has no answer for the reason its copy contains a folded page.

Exhibit 6 – Contract And Amendment #1 And Amendment #2 (RR 00001 – 00049);

**Ritz's response**:  See AvalonBay's response, below.

**AvalonBay's response:**   No objection.  However, Defendants have designated and submitted under a Motion to Seal an un-redacted copy of the Purchase and Sale Agreement dated October 17, 2001 containing all financial terms.

Exhibit 7 – Delivery Receipt (Exhibit 2E – Deposition 10/7/03);

**Ritz's response:** See AvalonBay's objection, below.

**AvalonBay's response:** OBJECTION on the grounds of relevance, authenticity and lack of foundation.

**Plaintiff's claim:** The receipt demonstrates when AvalonBay obtained a copy of the ADAP lease at issue here. To lay the foundation and to authenticate, the plaintiff is prepared to call Susan Valente. Given that the defendants admitted to the receipt and to its authenticity in the plaintiff's motion for summary judgment, the plaintiff did not think producing the witness of Ritz, Ms. Susan Valente, would be or is necessary. See plaintiff's Local 56(a)(1) Statement, ¶16 and the defendants' Local 56(a)(2) Statements concerning ¶16("Admitted")

Exhibit 8 – Fax Of James O. McClain Dated January 3, 2002 (JM 00101);

**Ritz's response:** No objection.

**AvalonBay's response:** No objection.

Exhibit 9 – Fax Of James O. McClain Dated January 8, 2002 (JM 00103);

**Ritz's response:** No objection.

**AvalonBay's response:** No objection.

Exhibit 10 – Letter Dated January 29, 2002 (RR 00119 - 00123);

**Ritz's response:** See AvalonBay's objection, below.

**AvalonBay's response:** OBJECTION on the grounds of relevance, and to the extent the exhibit contains hearsay.

**Plaintiff's claim:** The document is claimed to demonstrate the knowledge of the AutoZone Lease and the potential for AutoZone to object to the Proposed

Development by virtue of the language in its Lease.  The claim of hearsay can not reasonably be addressed at this time since the claim is too vague and does not specify the portion of the letter objected to.

Exhibit 11 – Letter Dated February 7, 2002 (RR 00135 – 00140);

**Ritz's response:**  See AvalonBay's objection, below.

**AvalonBay's response:**  OBJECTION on the grounds of relevance, and to the extent the exhibit contains hearsay.

**Plaintiff's claim:**  The document is claimed to demonstrate the knowledge of the AutoZone Lease and the potential for AutoZone to object to the Proposed Development by virtue of the language in its Lease.  The claim of hearsay can not reasonably be addressed at this time since the claim is too vague and does not specify the portion of the letter objected to.

Exhibit 12 – Memo 1/30/03 From AvalonBay To Retail Tenants;

**Ritz's response:**  No objection.

**AvalonBay's response:**  No objection.

Exhibit 13 – AvalonBay Application For Site Plan Review;

**Ritz's response:**  No objection.

**AvalonBay's response:**  No objection.

Exhibit 14 –Norwalk Approval Of Site Plan Review;

**Ritz's response:**  No objection.

**AvalonBay's response:**  No objection.

Exhibit 15 – AutoZone Maps (Oversized) (AOE 0001 – 0009);

**Ritz's response:**  See AvalonBay's objection, below.

**AvalonBay's response:** OBJECTION on the grounds of lack of foundation, hearsay, the reliability of the underlying data and process used to produce the exhibit, and relevance.

**Plaintiff's claim:** the plaintiff will offer Alex Oliphant to lay the foundation for the exhibit and to testify that it contains data typically relied upon in his field of work. He will further testify on each element required to justify the admissibility.

Exhibit 16 – Report Of Robert Blank – October 15, 2004;

**Ritz's response:** See AvalonBay's objection, below.

**AvalonBay's response:** OBJECTION as to qualifications of the expert, relevance, hearsay and the exhibit is cululative of trial testimony.

**Plaintiff's claim:** Mr. Blank is and has been for a long time prior hereto a real estate salesman with considerable experience in retail leasing for AutoZone and other national retail client. He will testify concerning his qualifications and the relevance of the report to the claims made here.

**(2) *Defendant Ritz Realty Corporation's Trial Exhibits***

See AvalonBay's Trial Exhibits, below.

**(3) *Defendant AvalonBay Communities, Inc.'s Trial Exhibits***

501.  Responses to defendant AvalonBay Communities, Inc.'s First Set of Interrogatories and Requests for Production directed to plaintiff 9-18-03.

**Plaintiff's response:** Objection to the relevance.

**AvalonBay's Brief Statement Regarding Admissibility:** Contains admissions relevant to the claims for injunctive relief and specific performance. For example, Plaintiff acknowledges several locations that it considered for a potential relocation of the Riverview Plaza store.

502.    Quitclaim Deed to the Belden Holding Company, LLC.

**Plaintiff's response:**  No objection.

503.    Drawing, Proposed Pole Sign, Belden Avenue and Cross Street (ABS0234).

**Plaintiff's response:**  No objection.

504.    Drawing, Proposed Pole Sign, Belden Avenue and Cross Street (ABS0235).

**Plaintiff's response:**  No objection.

505.    Letter from W. Robert Blank to Jim Lanzaro, dated September 19, 2002.

**Plaintiff's response:**  No objection.

506.    Site Plan Review Application for the Norwalk Curry Tire Company site, dated July 23, 2003 (JM00088 – 00090).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement

discussion and efforts by the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

for injunctive relief and specific performance.  For example, the exhibit is an

admission that Plaintiff sought zoning approval for a replacement location in

Norwalk for the Riverview Plaza store.  The exhibit does not implicate settlement

discussion and efforts because AutoZone sought approval for this alternate

location unilaterally.


507.    Letter dated August 12, 2002 from Henry Elstein to the Honorable Alex A. Knopp.

**Plaintiff's response:**  Objection to the relevance and it implicates settlement

discussion and efforts by the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

for injunctive relief and specific performance, and whether Plaintiff has an

adequate remedy at law.  For example, the exhibit is an admission that Plaintiff

acknowledges that the Riverview Plaza location can be replaced, expresses a

willingness to consider a relocation, and states that an acceptable replacement

location had been identified.  The exhibit does not implicate settlement discussion

and efforts because the letter predates Plaintiff's commencement of this action.

508.  Letter dated December 17, 2001 from Paxton Kinol to James O. McClain, enclosing plans for the proposed development (JM00486 – 00491).

**Plaintiff's response:**  No objection.

509.  Ritz Realty Corporation Riverview Plaza Parking Lot Vehicle Repairs, April-May, 2003, Photographs by Germaine Legre.

**Plaintiff's response:**  No objection.

510.  Photograph of AutoZone store front showing pylon sign (AOE0021).

**Plaintiff's response:**  No objection.

511.  Photograph of pylon sign (AOE0024).

**Plaintiff's response:**  No objection.

512.  Photograph of parking across from AutoZone (AOE0023).

**Plaintiff's response:**  No objection.

513.  Photograph of store fronts adjacent to AutoZone.

**Plaintiff's response:**  No objection.

514.  Photograph of AutoZone store front.

**Plaintiff's response:**  No objection.

515.  Photograph of oil spill in the parking lot in front of AutoZone store front.

**Plaintiff's response:**  Objection to the relevance and characterization of the

substance and implication on who is responsible therefore.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to Plaintiff's

Proposed Conclusion of Law No. 11 that "AutoZone has remained faithful to its

end of the bargain. It has paid its rent and fulfilled each and every other obligation required of it under the Lease." Also relevant to Defendants' affirmative defense of unclean hands.

516.  Photograph of oil spill in the parking lot in front of AutoZone store front.

**Plaintiff's response:**  Objection to the relevance and characterization of the substance and implication on who is responsible therefore.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to Plaintiff's Proposed Conclusion of Law No. 11 that "AutoZone has remained faithful to its end of the bargain. It has paid its rent and fulfilled each and every other obligation required of it under the Lease." Also relevant to Defendants' affirmative defense of unclean hands.

517.  E-mail from Terry McKee to David Gilmore regarding Ritz's ability to redevelop Riverview Plaza (TM000059).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance in that Plaintiff acknowledges that the Riverview Plaza store can be replaced.  The exhibit does not implicate settlement discussion and efforts because the e-mail predates Plaintiff's commencement of this action.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

518. Drawing of Ground Level Parking Distribution, Drawing No. SK-2, dated January 15, 2003 (PK0009).

   **Plaintiff's response:** No objection.

519. Profit and Loss Summary, Fiscal Year 2003, dated 9/5/03 (SS036 – 0037).

   **Plaintiff's response:** Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff. It further includes confidential and proprietary information.

   **AvalonBay's Brief Statement Regarding Admissibility:** Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law. For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development. The exhibit does not implicate settlement discussions; it is a document generated by AutoZone in the regular course of its business to monitor the financial performance of the Riverview Plaza store. Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

520. Deed of taking by the State of Connecticut of land owned by the Belden Holding Company (MM00415 – 00419).

   **Plaintiff's response:** No objection.

   Letter dated November 7, 2002 from Dick Ballard to Ritz Realty Corporation, regarding AutoZone's sales report for base growth sales for the last five years.

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  The exhibit does not implicate settlement discussions and was generated by AutoZone and transmitted to Ritz pursuant to AutoZone's obligations under its lease prior to the commencement of this action.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit was not marked confidential at the time it was transmitted to Ritz, and whether the document includes confidential or proprietary information has no bearing on its admissibility.

521.  Letter dated November 7, 2002 from Dick Ballard to Ritz Realty Corporation, regarding AutoZone's sales report for base growth sales for the last five years.

**Plaintiff's response:**  Duplicate of #521 – same objection.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's

performance following the construction of the proposed development. The

exhibit does not implicate settlement discussions and was generated by AutoZone

and transmitted to Ritz pursuant to AutoZone's obligations under its lease prior to

the commencement of this action. Plaintiff's objection on the grounds of

confidential and propriety information is misplaced because the exhibit was not

marked confidential at the time it was transmitted to Ritz, and whether the

document includes confidential or proprietary information has no bearing on its

admissibility.

522.   Letter dated November 7, 2002 from Dick Ballard to Ritz Realty Corporation,
regarding AutoZone's sales report for base growth sales for the last five years.

**Plaintiff's response**:  Duplicate of #521 – same objection.

**AvalonBay's Brief Statement Regarding Admissibility**:  Exhibits 521 and 522

are not exact duplicates in that Exhibit 522 includes a postal receipt and a date

stamp indicating receipt..

523.   Letter dated February 28, 2003 from Susan Valente to Eric Berliner regarding
notice of ownership change from AutoPalace to AutoZone.

**Plaintiff's response**:  No objection.

524.   Notice of ADAP, Inc., sale to AutoZone.

**Plaintiff's response**:  No objection.

525.   Facsimile dated June 21, 2002 from Mark Robbins to Terry McKee of drawing
for Phase III and drawing of the existing retail layout, Drawing No. SK-1, dated
May 9, 2002.

**Plaintiff's response**:  No objection.

526.   E-mail from John Newsom regarding February 26 status of AutoPalace openings
(day 8) (JM00759).

**Plaintiff's response**:  No objection.

527.   Profit and Loss Summary, Fiscal Year 2000, dated September 6, 2000.

**Plaintiff's response:**  Objection to the relevance.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

528.    Profit and Loss Summary, Fiscal Year 2001, dated September 5, 2001.

**Plaintiff's response:**  Objection to the relevance.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

529.    Profit and Loss Summary, Fiscal Year 2002, dated September 11, 2002.

**Plaintiff's response:**  Objection to the relevance.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

530.    Profit and Loss Summary, Fiscal Year 2003, dated September 9, 2003.

**Plaintiff's response:**  Objection to the relevance.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the

document includes confidential or proprietary information has no bearing on its admissibility.

531.    Profit and Loss Summary, Fiscal Year 2004, dated September 8, 2004.

**Plaintiff's response:**  Objection to the relevance.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

532.    Plaintiff's Damage Analysis, dated July 15, 2004.

**Plaintiff's response:**  Objection to the relevance.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit contains admissions that the Riverview Plaza store could be moved to a replacement location and that money damages would adequately compensate Plaintiff for any loss it might allegedly suffer from the proposed development.

533.    Letter dated October 8, 2004 from Bruce Elstein to Andrew Houlding
        withdrawing Plaintiff's damage analysis, dated July 15, 2004.

   **Plaintiff's response:**  Objection to the relevance.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

   for injunctive relief and specific performance, and whether Plaintiff has an

   adequate remedy at law.  For example, the exhibit evidences Plaintiff's election

   not to pursue money damages, but instead to pursue injunctive relief and specific

   performance.

534.    E-mail from Jessica Desrosieis to Shawn Sheikhzadeh regarding DIY, COMM,
        total sales and average tickets increase (SS0002 – 0005).

   **Plaintiff's response:**  Objection to the relevance.  It further includes confidential
   and proprietary information.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

   for injunctive relief and specific performance, and whether Plaintiff has an

   adequate remedy at law.  For example, the exhibit evidences the financial

   performance of the Riverview Plaza store, Plaintiff's close monitoring of such

   financial performance, and Plaintiff's ability to detect any change in the store's

   performance following the construction of the proposed development.  Plaintiff's

   objection on the grounds of confidential and propriety information is misplaced

   because the exhibit has been submitted under a Motion to Seal and whether the

   document includes confidential or proprietary information has no bearing on its

   admissibility.

535.    Statutory Notice of Lease, the Norwalk Curry Tire Company, Inc. (MM00545 –
        00551).

   **Plaintiff's response:**  Objection to the relevance and it implicates settlement
   discussion and efforts by the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance.  For example, the exhibit establishes that Plaintiff secured an alternate location for the Riverview Plaza store.  The exhibit does not implicate settlement discussion and efforts because AutoZone leased this alternate location unilaterally.

536.  Ground Lease between the Norwalk Curry Tire Company, Inc. and AutoZone, Inc. (MM00567 – 00598).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance.  For example, the exhibit establishes that Plaintiff secured an alternate location for the Riverview Plaza store.  The exhibit does not implicate settlement discussion and efforts because AutoZone leased this alternate location unilaterally.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

537.  One Party Listing Agreement by the Norwalk Curry Tire Company, Inc. dated August 8, 2002 (MM00612 – 00614).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance.  For example, the exhibit

establishes that Plaintiff secured an alternate location for the Riverview Plaza

store.  The exhibit does not implicate settlement discussion and efforts because

AutoZone leased this alternate location unilaterally.

538.    Letter dated September 19, 2002 from W. Robert Blank to Jim Lanzaro, regarding
the KIA dealership site (MM00604).

**Plaintiff's response:**  Duplicate of #505 – no objection.

539.    Letter dated March 7, 2002 from Eric Berliner to Jim McClain, regarding
construction phasing plan for reconfiguration of Riverview Plaza (RR00143 –
ARC0059).

**Plaintiff's response:**  Objection as the document is incomplete.

**AvalonBay's Brief Statement Regarding Admissibility:**  The cover letter is

complete and evidences the course of dealings between Ritz and AutoZone in

connection with the proposed development and the accommodation of

AutoZone's concerns.

540.    AutoZone Development Project Summary with Commercial Program for West
Avenue / Merlin Avenue, Norwalk, Connecticut (MM00523).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement

discussion and efforts by the plaintiff.  It further includes confidential and

proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

for injunctive relief and specific performance.  For example, the exhibit

establishes that Plaintiff secured an alternate location for the Riverview Plaza

store, and that it determined that the financial performance of the alternate

location would be comparable to the performance of the Riverview Plaza location.

The exhibit does not implicate settlement discussion and efforts because

AutoZone leased this alternate location unilaterally.  Plaintiff's objection on the

grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

541.  AutoZone Real Estate P&L and Capital History, dated May 19, 2003 (MM00530).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

542.  AutoZone Real Estate history P&L and Capital Comparison (Proforma Format) for Fiscal Years 1999 through 2000 (MM00435).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:** Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law. For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development. Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

543. Document beginning with "LOCATION: West Avenue / Norwalk, CT." (MM00437 – 00439).

**Plaintiff's response:** Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff. It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:** Relevant to the claims for injunctive relief and specific performance. For example, the exhibit establishes that Plaintiff secured an alternate location for the Riverview Plaza store, and that it determined that the financial performance of the alternate location would be comparable to the performance of the Riverview Plaza location. The exhibit does not implicate settlement discussion and efforts because AutoZone leased this alternate location unilaterally. Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document

includes confidential or proprietary information has no bearing on its

admissibility.

544.    Facsimile dated August 26, 2002 from Jim Lanzard to Mike Martin, attaching
information on 50 Cross Street and 30 Belden Avenue (MM00427 – 00430).

   **Plaintiff's response:**  No objection.

545.    Letter dated April 18, 2002 from Mark Robbins to James McClain, regarding the
modified site plan and attaching drawings of Phase I, Phase II, Phase III and
Proposed Pole Sign, Belden Avenue and Cross Street.

   **Plaintiff's response:**  No objection.

546.    Itemized Call Usage – Outbound Equal Access, dated January 16, 2002.

   **Plaintiff's response:**  No objection.

547.    Verified Complaint, dated February 26, 2003.

   **Plaintiff's response:**  Objection as to the relevance.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

   for injunctive relief and specific performance, and whether Plaintiff has an

   adequate remedy at law.  For example, the Verified Complaint claims money

   damages in addition to seeking injunctive relief and specific performance.  The

   Verified Complaint is also relevant to the testimony of the affiant, David Gilmore

   of AutoZone, with reference to his lack of knowledge at the time he executed it.

548.    Drawing, Typical Floor Plans Buildings One and Two, 1/8/02, and drawing First
Floor Plan, A-3, 4-11-02 (PK0052 – 0053).

   **Plaintiff's response:**  No objection.

549.    Map showing Merwin Avenue / West Street and KIA locations (B00137).

   **Plaintiff's response:**  No objection to the map generally, but objection to the

   marking of the site location as it implicates settlement discussion and efforts by

   the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance.  For example, the exhibit is acknowledgment that the Riverview Plaza location can be replaced and evidences efforts by Plaintiff to identify a relocation site prior to the commencement of this action.  The exhibit does not implicate settlement discussion and efforts because the letter predates Plaintiff's commencement of this action.

550.    Landscape Plan, Avalon Norwalk, dated November 8, 2002.

**Plaintiff's response:**  Objection as to the relevance.  This was not the plan approved by the Zoning Commission in the City of Norwalk and was not produced to the plaintiff in discovery.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief, specific performance and the unreasonableness of AutoZone's withholding of consent to the proposed development.  For example, the exhibit evidences the ongoing efforts of AvalonBay to accommodate Plaintiff's concerns regarding the proposed development.  The exhibit was prepared at or about the time that AvalonBay designated its proposed exhibits and a copy was designated and provided to Plaintiff with AvalonBay's proposed exhibits.

551.    Lease between Norwalk Merchants for Redevelopment, Inc. and Supermarkets General Corporation, dated July 28, 1971 (MW0367 – 0413).

**Plaintiff's response:**  No objection.

552.    Letter dated December 1, 2004 from Joseph Hammer to Bruce Elstein, enclosing expert reports prepared by Peter Kastl.

**Plaintiff's response:**  Objection as to the relevance and qualification of the expert proposed.  This expert did not prepare the documents offered nor is he aware of

the use of the program.  He also testified that they are inaccurate in that they omitted landscaping required pursuant to the grant of Site Plan Approval by the Zoning Commission in Norwalk.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief, specific performance and the unreasonableness of AutoZone's withholding of consent to the proposed development.  The report and associated renderings illustrate the visibility of the Riverview Plaza store after construction of the proposed development from the intersection of Belden Avenue and Cross Street.  The renderings are admissible independent of the report.  The witness will testify as to his qualifications and the process by which the renderings were prepared.  Plaintiff's objections as to the qualification of the expert go to the weight and not the admissibility of the exhibit.

553.   Purchase and Sale Agreement Between Ritz Realty Corporation and AvalonBay Communities, Inc., dated October 17, 2001 (MW0648 – 0688).

   **Plaintiff's response:**  No objection.

554.   Avalon Norwalk, a Comparative Chart (PK0081).

   **Plaintiff's response:**  Objection in that it fails to accurately set forth the preexisting parking spaces (262) and further fails to delineate between the existing open field parking lot and the proposed 2 enclosed areas.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Plaintiff's objections as to the accuracy of the exhibit go to the weight and not the admissibility of the chart.

555.   Drawing, Ground Level Parking Distribution, Drawing SK-2, dated June 10, 2003 (PK0079).

   **Plaintiff's response:**  No objection.

556.    Drawing, Existing Parking Layout, Drawing SK-1, dated June 10, 2003.

   **Plaintiff's response:**  Objection as to the relevance.  This was not the plan

   approved by the Zoning Commission in the City of Norwalk and was not

   produced to the plaintiff in discovery.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

   for injunctive relief, specific performance and the unreasonableness of

   AutoZone's withholding of consent to the proposed development.  For example,

   the exhibit evidences the ongoing efforts of AvalonBay to accommodate

   Plaintiff's concerns regarding the proposed development.  AvalonBay is

   attempting to verify whether the particular drawing was produced to Plaintiff and

   reserves the right to substitute one similar in substance that was produced, if it is

   unable to so verify.

557.    Letter dated March 7, 2002 from Eric Berliner to Jim McClain, attaching
   construction phasing plan for reconfiguration of Riverview Plaza (JM00410 –
   00413).

   **Plaintiff's response:**  No objection.

558.    Complaint, Ritz Realty Corporation vs. ADAP, Inc. a/k/a AutoPalace (JM00423 –
   00432).

   **Plaintiff's response:**  No objection.

559.    Letter dated July 23, 2002 from Mayor Alex A. Knopp to Steve Odland, regarding
   proposed development of Riverview Plaza (JM00595 – 00596).

   **Plaintiff's response:**  Objection as to relevance.

   **AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims

   for injunctive relief and specific performance and the unreasonableness of

   AutoZone's withholding of consent to the proposed development.  For example,

   the exhibit evidences the benefit of the proposed development to the public

(which must be weighed in the balance of the equities), as well as efforts to be made to accommodate AutoZone's concerns.

560.     Letter dated March 26, 1997from David L. Permut to Brooke Hillman, regarding the dismissal brought by Ritz Realty against ADAP (JM00209 – 00211).

**Plaintiff's response:**  No objection.

561.     Letter dated March 26, 1997 from David L. Permut to Brooke Hillman, regarding the dismissal brought by Ritz Realty against ADAP (JM00213 – 00215).

**Plaintiff's response:**  No objection.

562.     Letter dated January 18, 2002 from Mark Robbins to Eric Berliner, regarding tenant consents (AB00173 – 00175).

**Plaintiff's response:**  No objection.

563.     Facsimile dated January 31, 2002 from Mark Robbins to Eric Berliner and Jim McClain, attaching drawing, Parking Level P-2, Building 1, First Floor Plan – Building 2, 1/8/02, drawings, Density Study 12/7/01 (JM00588 – 00591).

**Plaintiff's response:**  No objection to the first two pages only.  Objection to the balance of the proposed document since those pages were not a part of the original document.

**AvalonBay's Brief Statement Regarding Admissibility:**  Plaintiff's objection goes to the weight and not the admissibility of the report.  The documents are in the order in which there were produced by Plaintiff during discovery.  Further, the pages at issue are admissible independently of the remainder of the document in that they were received by Plaintiff.

564.     Facsimile dated January 17, 2002 from Mark Robbins to Jim McClain and Eric Berliner, attaching Density Study, Basement Parking, 11/6/01, drawing, Density Study, Ground Level Plan, 12/17/01 (JM00585 – 00587).

**Plaintiff's response:** No objection to the first two pages only. Objection to the balance of the proposed document since those pages were not a part of the original document.

**AvalonBay's Brief Statement Regarding Admissibility:** Plaintiff's objection goes to the weight and not the admissibility of the report. The documents are in the order in which there were produced by Plaintiff during discovery. Further, the pages at issue are admissible independently of the remainder of the document in that they were received by Plaintiff.

565.    Facsimile dated June 21, 2002 from Mark Robbins to Terry McKee, attaching drawing, Phase III, drawing, Existing Retail Layout Plan, 5/9/02, drawings, Existing Retail Layout Plan, 5/9/02, drawing, Existing Site Plan, 5/17/02, drawing, Lower Parking Level w/out OTB, 5/17/02, drawing, Proposed Subdivision Plan, 5/17/02 (JM00598 – 00604).

**Plaintiff's response:** No objection to the first three pages only. Objection to the balance of the proposed document since those pages were not a part of the original document.

**AvalonBay's Brief Statement Regarding Admissibility:** Plaintiff's objection goes to the weight and not the admissibility of the report. The documents are in the order in which there were produced by Plaintiff during discovery. Further, the pages at issue are admissible independently of the remainder of the document in that they were received by Plaintiff.

566.    E-mail dated September 10, 2003 from Jessica Desrosiers to Shawn Sheikhzadeh, regarding fiscal year 2003 and 2002 DIY, COMM, and total sales and average ticket increase (SS0002 – 0005).

**Plaintiff's response:** Objection to the relevance. It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance, and whether Plaintiff has an adequate remedy at law.  For example, the exhibit evidences the financial performance of the Riverview Plaza store, Plaintiff's close monitoring of such financial performance, and Plaintiff's ability to detect any change in the store's performance following the construction of the proposed development.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

567.    Northeast AutoZone Real Estate Status – Bob Blank (TM000169 – 000178).

**Plaintiff's response:**  Objection to the relevance and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.

**AvalonBay's Brief Statement Regarding Admissibility:**  Relevant to the claims for injunctive relief and specific performance.  For example, the exhibit establishes that Plaintiff sought multiple alternate locations for the Riverview Plaza store.  The exhibit does not implicate settlement discussion and efforts because AutoZone undertook these actions unilaterally.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the exhibit has been submitted under a Motion to Seal and whether the document includes confidential or proprietary information has no bearing on its admissibility.

568.    Photographs of parking area in front of AutoZone (JM00149 – 00154).

**Plaintiff's response:** No objection.

569.  Photographs of AutoZone store front area.

**Plaintiff's response:** No objection.

570.  Letter from Mark Robbins to James McClain, dated April 18, 2002 regarding the modified site plan and attaching drawings, drawing Ground Level Plan, drawing SK-1, 4/18/02, drawing, Proposed Pole Sign Belden Avenue and Cross Street, drawing, Phase I, drawing, Phase II, drawing, Phase III (AB00070 – 00075).

**Plaintiff's response:** No objection.

571.  Drawing, Site Plan, 4/4/03 (MM00540).

**Plaintiff's response:** Objection to the relevance and it implicates settlement

discussion and efforts by the plaintiff.

**AvalonBay's Brief Statement Regarding Admissibility:** Relevant to the claims

for injunctive relief and specific performance.  For example, the exhibit is an

admission that Plaintiff secured a replacement location in Norwalk for the

Riverview Plaza store and prepared a development plan for such location.  The

exhibit does not implicate settlement discussion and efforts because AutoZone

sought approval for this alternate location unilaterally.


IX.  **DEPOSITION TESTIMONY**

(1) *Plaintiff ADAP, Inc.'s Deposition Testimony*

1.  None.

(2) *Defendant Ritz Realty Corporation's Deposition Testimony*

1.  See AvalonBay's Designations, below.

### (3) *Defendant AvalonBay Communities, Inc.'s Deposition Testimony*

1.    Shawn Sheikhzadeh, AutoZone's Regional Manager, given on October 2, 2003, at pages:lines 5:14–9:25, 23:12–24:1, 28:14–35:14, 40:5–41.21, 83:22–85:17, 87:12–89:16, 91:14–93:14, 97:13–20, 98:19–99:3, 105:4–21, 106:8–13, 120:2–123:1, 131:13–133:5, 134:14–24, 140:10–141:20, 149:1–7, 149:20–150:3, 160:13–161:11, 162:18–164:1, 170:14–173:25.

> **Plaintiff's response:** Objection to the relevance, hearsay and it implicates settlement discussion and efforts by the plaintiff. It further includes confidential and proprietary information. Further, to the extent such testimony is permitted, the plaintiff cross designates: 24:2 - 26:24, 35:15 - 36:1, 94:13 - 94:25, 133:6 - 134 - :3, 141:21 - 141:25.
>
> **AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:**
> Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay. Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the portions of the transcript that Plaintiff designated as confidential have been submitted under a Motion to Seal, and whether the testimony includes confidential or proprietary information has no bearing on its admissibility. Further, the site relocation efforts of AutoZone discussed in the testimony are unrelated to settlement discussions. In response to AutoZone's cross designations, AvalonBay further designates: 97:4–8.

2.    Ken Murray, AutoZone's District Manager, given on September 19, 2003, at pages:lines 5:19–7:25, 9:7-11:25, 13:2-13:16; 18:22–19:22, 31:25–32:14, 33:24-34:20, 72:20–

74:20, 77:8–77:24, 88:9–89:16, 90:24–92:12, 99:3–106:8,  110:8–111:1, 113:24–115:4, 117:8–117:16, 126:1–127:20, 137:10–17.

**Plaintiff's response:**  Objection to the relevance, hearsay and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.  Further, to the extent such testimony is permitted, the plaintiff cross designates: 127:21 - 128:1, 138:12 - 140:6.

**AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:**

Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the portions of the transcript that Plaintiff designated as confidential have been submitted under a Motion to Seal, and whether the testimony includes confidential or proprietary information has no bearing on its admissibility.  Further, the designated testimony is unrelated to settlement discussions.  AvalonBay objects to AutoZone's designations of 138:12–140:6 on the grounds of speculation and lack of foundation.  To the extent such testimony is permitted, AvalonBay further designates: 140:7–12.

3.     Richard Abate, AutoZone's District Manager, given on July 31, 2003, at pages:lines 6:5–11:12, 13:25–16:6, 16:24–18:2, 18:18–25, 28:19–31:15, 34:21–36:7, 53:3–7, 54:17–56:4, 60:19–62:16, 63:7–25, 65:2–17, 65:20–66:9, 67:22–68:4, 69:3–74:23, 87:11–88:2, 98:8–15, 100:22–101:12, 106:19–21, 107:25–108:10, 109:3–111:6, 112:13–113:3, 114:19–115:25, 126:5–25, 139:10-141:2.

**Plaintiff's response:**  Objection to the relevance, hearsay, lack of foundation and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.  Further, to the extent such testimony is permitted, the plaintiff cross designates: 32:22 - 33:19, 53:10 - 53:20, 146:19 - 147:9, 149:3 - 150:1.

**AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:**

Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the portions of the transcript that Plaintiff designated as confidential have been submitted under a Motion to Seal, and whether the testimony includes confidential or proprietary information has no bearing on its admissibility.  Further, the designated testimony is unrelated to settlement discussions.  In response to AutoZone's cross designations, AvalonBay further designates:  150:2–7, 150:23–25.

4.    Susan Valenti, Property Manager of RiverView Plaza, given on October 7, 2003, at pages:lines 6:2–8:9, 12:18–14:18, 15:23-25, 18:4–11, 31:8–32:10, 46:5–47:4, 67:1–5, 67:9–21, 68:13–69:8, 69:14–70:19, 75:8–21, 79:5–80:15, 101:1–10.

**Plaintiff's response**:  Objection to the relevance, hearsay and lack of foundation. Further, to the extent such testimony is permitted, the plaintiff cross designates: 12:9 - 12:17, 14:15 - 15:5, 18:12 - 18:18, 70:20 - 73:4.

**AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:**

-116-

Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay.

5.      John Michael Martin, AutoZone's Real Estate Development Manager, given on August 6, 2003, at pages:lines 7:2–18, 21:16–22:4, 25:2–26:20, 28:23–31:21, 44:1–45:1, 47:21–48:25, 49:16–21, 50:20–51:23, 52:5–54:1, 54:18–55:18, 56:9–24, 57:23–58:11, 58:18–59:9, 61:13–62:21, 69:19–70:17, 90:17–24, 100:7–101:2, 101:17–104:24, 105:5–19, 106:5–107:10, 109:22–112:9, 112:23–114:13, 114:21–115:15, 116:24–117:2, 117:16–23, 121:18–23, 123:18–23, 125:7–127:20, 132:17–133:18, 142:8–12, 149:4–9, 149:14–19, 156:15–157:16, 164:14–21, 173:21–174:12, 175:18–20, 182:6–183:10, 184:17–187:9, 189:21–190:9, 190:18–192:17, 193:17–19, 201:11–202:8, 211:13–213:8, 214:14–22, 217:8–220:21, 223:1–6, 228:14–229:10, 229:22–230:12, 237:9–238:12.

> **Plaintiff's response:**  Objection to the relevance, hearsay, lack of foundation, speculation and it implicates settlement discussion and efforts by the plaintiff.  It further includes confidential and proprietary information.  Further, to the extent such testimony is permitted, the plaintiff cross designates: 58:12 – 58:17, 62:22 – 65:7, 90:25 – 91:24, 241:14 – 242:7.
>
> **AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:**
>
> Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay.  Plaintiff's objection on the grounds of confidential and propriety information is misplaced because the portions of the transcript that Plaintiff designated as confidential have been submitted under a Motion to Seal, and whether the testimony includes confidential or proprietary information has no

bearing on its admissibility.  Further, the designated testimony is unrelated to

settlement discussions.  In response to AutoZone's cross designations, AvalonBay

further designates:  65:8–11, 242:8–243:9, 245:8–15.

6.     William David Gilmore, AutoZone's Vice-President of Store Development, given

on October 29, 2003, at pages:lines 6:2–15, 13:14–14:8, 16:23–23:21, 28:24–29:24, 37:13–18,

38:6–15, 40:16–44:17, 52:11–20, 63:16–64:4, 70:20–24, 87:23–25, 95:14–96:11, 97:25–98:16,

98:25–100:2, 101:10–102:8, 103:25–104:19, 105:1–24, 120:11–122:8, 127:12–14, 147:5–

148:21, 159:6–160:25, 164:15–22, 165:17–166:19, 167:16–19, 173:17–176:12, 183:24–184:4,

191:18–195:19, 203:15–204:3.

> **Plaintiff's response:**  Objection to the relevance, hearsay, lack of foundation,
>
> speculation and it implicates settlement discussion and efforts by the plaintiff.  It
>
> further includes confidential and proprietary information.  Further, to the extent
>
> such testimony is permitted, the plaintiff cross designates: 14:9 – 15:16, 23:22 –
>
> 24:7, 28:10 – 28:23, 38:16 – 40:15, 96:12 – 97:6, 104:20 – 104:25, 148:22 –
>
> 150:7, 165:1 – 165:16, 166:20 – 166:25, 168:20 – 170:5.
>
> **AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility**
>
> **of its Initial Designations, and Objections to Plaintiff's Cross Designations:**
>
> Plaintiff has failed to direct its objections to particular portions of the testimony
>
> designated by AvalonBay.  Plaintiff's objection on the grounds of confidential
>
> and propriety information is misplaced because the portions of the transcript that
>
> Plaintiff designated as confidential have been submitted under a Motion to Seal,
>
> and whether the testimony includes confidential or proprietary information has no
>
> bearing on its admissibility.  Further, the designated testimony is unrelated to

settlement discussions.  In response to AutoZone's cross designations, AvalonBay further designates:  170:6–22.

7.    James Edward Butler, III, AutoZone Store Manager, given on August 14, 2003, at pages:lines 5:3–8:11, 9:19–12:3, 12:23–14:7, 16:11–17:9, 18:12–23:6, 25:9–30:1, 31:16–20, 32:23–33:2, 35:7–12, 36:7–37:19, 38:1–40:17, 49:2–50:20, 51:6–52:16, 57:9–60:25, 63:22–64:7, 64:15–69:22, 71:8–25, 72:16–73:25, 83:13–85:10.

**Plaintiff's response:**  Objection to the relevance, hearsay, lack of foundation and speculation.  Further, to the extent such testimony is permitted, the plaintiff cross designates: 23:11 – 25:8, 30:9 – 31:4, 33:3 – 35:6, 61:1 – 61:9, 81:11 – 82:16, 87:1 – 89:9.

**AvalonBay's Redirect Designations, Brief Statement Regarding Admissibility of its Initial Designations, and Objections to Plaintiff's Cross Designations:** Plaintiff has failed to direct its objections to particular portions of the testimony designated by AvalonBay.

## X.    ANTICIPATED EVIDENTIARY PROBLEMS

1.    None.

PLAINTIFF
**ADAP, INC. D/B/A AUTOZONE**


By _____

Bruce L. Elstein, Esq.
Elstein & Elstein
1087 Broad Street
Bridgeport, CT  06604-4294
Telephone (203) 367-4421
Facsimile  (203) 366-8615
Fed. Bar No. ct 02150
E-mail:  belstein@snet.net


DEFENDANT
**RITZ REALTY CORP.**


By _____

Andrew L. Houlding, Esq. (CT12137)
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, CT  06103-3101
Phone: (860) 493-3468
Fax. (860) 724-3921
E-mail:  ahoulding@rms-law.com


DEFENDANT
**AVALONBAY COMMUNITIES, INC.**


By _____

Joseph L. Hammer, Esq.  (ct00446)
David M. Bizar (ct20444)
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
Tel. (860) 275-0100
Fax. (860) 275-0343
E-mail:  jlhammer@dbh.com
E-mail:  dmbizar@dbh.co